

FILED BY_____ D.C.

DEC 1 5 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. <u>18-cr-80160-DIMITROULEAS(s)</u>
18 U.S.C. § 371
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA,

vs.

RAUL GORRIN BELISARIO,
CLAUDIA PATRICIA DIAZ GUILLEN, and
ADRIAN JOSE VELASQUEZ FIGUEROA,

Defendants.

_____/

### SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Superseding Indictment, unless otherwise specified:

### RELEVANT STATUTORY BACKGROUND

1.      The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States

Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among

other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization,

or payment of money or anything of value to a foreign government official for the purpose of

assisting in obtaining or retaining business for, or directing business to, any person.

## RELEVANT ENTITIES AND INDIVIDUALS

2.      Defendant, **RAUL GORRIN BELISARIO**, was a citizen and national of Venezuela, who at various periods of the conspiracy was a resident of the United States, having maintained a residence in Coral Gables, Florida. **RAUL GORRIN BELISARIO** was a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

3.      "Company 1" was a company incorporated and registered in Panama, and was beneficially controlled by **RAUL GORRIN BELISARIO**.

4.      "Company 2" was a company incorporated and registered in Panama, and was beneficially controlled by **RAUL GORRIN BELISARIO**.

5.      "Company 3" was a company incorporated and registered in Panama, and was beneficially controlled by **RAUL GORRIN BELISARIO**.

6.       Defendant, **CLAUDIA PATRICIA DIAZ GUILLEN**, was a citizen and national of Venezuela. From in or around 2011 through in or around 2013, **CLAUDIA PATRICIA DIAZ GUILLEN** served as the National Treasurer of Venezuela, with decision-making authority and influence within the Oficina Nacional del Tesoro (the "Venezuelan National Treasury"). **CLAUDIA PATRICIA DIAZ GUILLEN** was a "foreign official" as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Sections 78dd-2(h)(2)(A) and 78dd-3(f)(2)(A).

7.      Defendant, **ADRIAN JOSE VELASQUEZ FIGUEROA**, was the spouse of **CLAUDIA PATRICIA DIAZ GUILLEN** and a citizen and national of Venezuela.

8.      Alejandro Andrade Cedeno was a citizen and national of Venezuela. From in or around 2007 through in or around 2010, Alejandro Andrade Cedeno served as the National

Treasurer of Venezuela, with decision-making authority and influence within the Venezuelan National Treasury, and thus was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-2 (h)(2)(A) and 78dd-3(f)(2)(A).

9.      Gabriel Arturo Jimenez Aray was a Venezuelan citizen and national and an owner of Banco Peravia, a bank located in the Dominican Republic.  Gabriel Arturo Jimenez Aray was a "person" and an "agent" of a person as those terms are defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

## FACTUAL BACKGROUND

10.     From in or around 2008 through in or around 2017, **RAUL GORRIN BELISARIO, CLAUDIA PATRICIA DIAZ GUILLEN, ADRIAN JOSE VELASQUEZ FIGUEROA**, and their co-conspirators engaged in a corrupt scheme in connection with foreign currency exchanges conducted for the Venezuelan government.  In total, **RAUL GORRIN BELISARIO** paid hundreds of millions of dollars in bribes to secure the rights to engage in over $1 billion in foreign currency exchange transactions that resulted in profits to **RAUL GORRIN BELISARIO** of hundreds of millions of dollars.

11.     In the scheme, **RAUL GORRIN BELISARIO**, together with others, offered, promised, authorized, and made corrupt payments to Venezuelan government officials, including two consecutive National Treasurers in Venezuela, Alejandro Andrade Cedeno and **CLAUDIA PATRICIA DIAZ GUILLEN**, in order to secure an improper advantage in obtaining and retaining the rights to conduct foreign currency exchange transactions at favorable rates.  **RAUL GORRIN BELISARIO** used both personal bank accounts and bank accounts held by companies that he beneficially owned and controlled to wire bribe payments.

3

12.     Specifically, beginning in or around 2008, **RAUL GORRIN BELISARIO** offered, promised, authorized, and paid bribes to Alejandro Andrade Cedeno in order to, among other things, influence and induce Alejandro Andrade Cedeno to permit **RAUL GORRIN BELISARIO** to conduct foreign currency exchanges for the Venezuelan government and secure an improper advantage in acquiring the right to conduct such exchange transactions.

13.     In or around 2010, **RAUL GORRIN BELISARIO** partnered with Gabriel Arturo Jimenez Aray to acquire Banco Peravia to assist in laundering bribes paid to Venezuelan officials and the proceeds of this and other schemes.

14.     In or around 2011, when **CLAUDIA PATRICIA DIAZ GUILLEN** became the National Treasurer of Venezuela, Alejandro Andrade Cedeno introduced **RAUL GORRIN BELISARIO** to **CLAUDIA PATRICIA DIAZ GUILLEN** and her spouse, **ADRIAN JOSE VELASQUEZ FIGUEROA**.

15.     Beginning in or around 2011, **RAUL GORRIN BELISARIO** offered, promised, authorized, and paid bribes to **CLAUDIA PATRICIA DIAZ GUILLEN**, including through **ADRIAN JOSE VELASQUEZ FIGUEROA**, for purposes of influencing and inducing **CLAUDIA PATRICIA DIAZ GUILLEN** to permit **RAUL GORRIN BELISARIO** to conduct foreign currency exchanges for the Venezuelan government and securing an improper advantage in acquiring the right to conduct such exchange transactions.

16.     To conceal the payments, **RAUL GORRIN BELISARIO**, together with others, used bank accounts held in the name of shell companies and disguised a number of bribe payments for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN** by making the payments to **ADRIAN JOSE VELASQUEZ FIGUEROA**, the spouse of **CLAUDIA PATRICIA DIAZ GUILLEN**, instead of to **CLAUDIA PATRICIA DIAZ GUILLEN** herself.

17.     From in or around 2011 through in or around 2013, **RAUL GORRIN BELISARIO** caused bribe payments, totaling at least approximately $65 million to be paid for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN**.  For example, in furtherance of the bribery scheme and in order to promote the illegal bribery scheme, between in or around November 2012 and in or around May 2013, **RAUL GORRIN BELISARIO** wired approximately $8.6 million from bank accounts in Switzerland to bank accounts in the Southern District of Florida for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN** and **ADRIAN JOSE VELASQUEZ FIGUEROA**.

18.     During the time that **CLAUDIA PATRICIA DIAZ GUILLEN** was the National Treasurer of Venezuela, and after, **RAUL GORRIN BELISARIO** caused bribe payments totaling at least approximately $94 million to be paid for the benefit of Alejandro Andrade Cedeno, for the purpose of, among other things, (a) completing payments that **RAUL GORRIN BELISARIO** owed Alejandro Andrade Cedeno from when Alejandro Andrade Cedeno was the National Treasurer; (b) preventing Alejandro Andrade Cedeno from interfering with or impeding the ongoing scheme involving **CLAUDIA PATRICIA DIAZ GUILLEN** and **ADRIAN JOSE VELASQUEZ FIGUEROA**; and (c) rewarding Alejandro Andrade Cedeno for introducing **RAUL GORRIN BELISARIO** to **CLAUDIA PATRICIA DIAZ GUILLEN** and promoting the continuation of the bribery scheme with **CLAUDIA PATRICIA DIAZ GUILLEN**.

19.     For example, in furtherance of the bribery scheme and in order to promote the illegal bribery scheme, between in or around December 2012 until in or around June 2013, **RAUL GORRIN BELISARIO** wired approximately $1.78 million from bank accounts in Switzerland to bank accounts in the United States, including bank accounts in the Southern District of Florida, for the benefit of Alejandro Andrade Cedeno.

20.     In addition to the bribes paid through the wiring of money to and for the benefit of Alejandro Andrade Cedeno, **CLAUDIA PATRICIA DIAZ GUILLEN**, and **ADRIAN JOSE VELASQUEZ FIGUEROA**, **RAUL GORRIN BELISARIO** also purchased and paid expenses related to private jets, yachts, mansions, champion horses, high-end watches, and a designer fashion line in the Southern District of Florida and Southern District of Texas for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN**, **ADRIAN JOSE VELASQUEZ FIGUEROA**, and Alejandro Andrade Cedeno.

21.     In furtherance of the scheme, **RAUL GORRIN BELISARIO** received invoices and corresponded via e-mail with vendors for Alejandro Andrade Cedeno, **CLAUDIA PATRICIA DIAZ GUILLEN**, and **ADRIAN JOSE VELASQUEZ FIGUEROA**, in order to pay expenses for Alejandro Andrade Cedeno, **CLAUDIA PATRICIA DIAZ GUILLEN**, and **ADRIAN JOSE VELASQUEZ FIGUEROA**, which **RAUL GORRIN BELISARIO** caused to be paid via wire transfer from bank accounts in Switzerland and elsewhere to bank accounts in the Southern District of Florida and elsewhere.

22.     **RAUL GORRIN BELISARIO** caused his employees to maintain a spreadsheet for the purpose of tracking certain of the bribe payments made to and for the benefit of Alejandro Andrade Cedeno and **CLAUDIA PATRICIA DIAZ GUILLEN**, including payments made to and through **ADRIAN JOSE VELASQUEZ FIGUEROA** for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN**, and further caused his employees to email updated spreadsheets to **RAUL GORRIN BELISARIO**, Alejandro Andrade Cedeno, and **ADRIAN JOSE VELASQUEZ FIGUEROA** reflecting the changes as certain payments were made.

23.     In furtherance of the illegal bribery scheme and in order to promote the illegal bribery scheme, **RAUL GORRIN BELISARIO** continued to provide money and other things of

value to and for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN** and **ADRIAN JOSE VELASQUEZ FIGUEROA**, and to pay expenses for their benefit, after **CLAUDIA PATRICIA DIAZ GUILLEN** left office as the National Treasurer, in exchange for her previous assistance in providing business advantages to **RAUL GORRIN BELISARIO**.

**COUNT 1**
**Conspiracy to Violate the Foreign Corrupt Practices Act**
**(18 U.S.C. § 371)**

24.     The General Allegations section of this Superseding Indictment is re-alleged and fully incorporated herein by reference as though fully set forth herein.

25.     From in or around 2008, through in or around 2017, in Miami-Dade County and Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**RAUL GORRIN BELISARIO,**

did willfully, that is, with the intent to further the purpose of the conspiracy, and knowingly combine, conspire, confederate, and agree with others, known and unknown, to commit an offense against the United States, to wit:

a.     being a domestic concern, to willfully and corruptly make use of the mails and a means and instrumentality of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offered, gifted, promised to give, and authorized the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (A)(i) influencing an act and decision of such foreign official in his official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official, and (iii) securing any improper advantage, and (B) inducing such foreign official to use his influence with a foreign government and

7

instrumentality thereof to affect and influence any act and decision of such government and instrumentality, in order to assist **RAUL GORRIN BELISARIO** in obtaining and retaining business for and with, and directing business to, **RAUL GORRIN BELISARIO** and others, in violation of Title 15, United States Code, Section 78dd-2.

b.      while in the territory of the United States, to willfully and corruptly make use of the mails and a means and instrumentality of interstate commerce and do an act in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offered, gifted, promised to give, and authorized the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (A)(i) influencing an act and decision of such foreign official in his official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official, and (iii) securing any improper advantage, and (B) inducing such foreign official to use his influence with a foreign government and instrumentality thereof to affect and influence any act and decision of such government and instrumentality, in order to assist **RAUL GORRIN BELISARIO**, and others, in obtaining and retaining business for and with, and directing business to, **RAUL GORRIN BELISARIO** and others, in obtaining and retaining business for and with, and directing business to, a person, in violation of Title 15, United States Code, Section 78dd-3.

## PURPOSE OF THE CONSPIRACY

26.      It was a purpose of the conspiracy to enrich **RAUL GORRIN BELISARIO** and his co-conspirators by making and concealing corrupt payments to foreign officials in Venezuela, including Alejandro Andrade Cedeno and **CLAUDIA PATRICIA DIAZ GUILLEN**, in order to obtain and retain contracts with the Venezuelan National Treasury in that country.

## MANNER AND MEANS OF THE CONSPIRACY

27.     The manner and means by which **RAUL GORRIN BELISARIO** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

      a.     **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, discussed in person making bribe payments to foreign government officials in Venezuela, including Alejandro Andrade Cedeno and **CLAUDIA PATRICIA DIAZ GUILLEN**, to secure their assistance in awarding contracts to **RAUL GORRIN BELISARIO**.

      b.     **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, did offer to pay, promise to pay, and authorize the payment of bribes, directly and indirectly, to and for the benefit of foreign officials in Venezuela, including Alejandro Andrade Cedeno and **CLAUDIA PATRICIA DIAZ GUILLEN**, to secure their assistance in awarding business and providing business advantages to **RAUL GORRIN BELISARIO**.

      c.     **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, did discuss in person the manner and means by which the bribe payments were to be paid.

      d.     **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, used Company 1, Company 2, and Company 3 bank accounts, and his own personal bank account at HSBC Private Bank (Suisse) SA, for the payment of bribes to foreign government officials in Venezuela, including Alejandro Andrade Cedeno and **CLAUDIA PATRICIA DIAZ GUILLEN**, to promote the illegal bribery scheme.

e.       **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, did cause to be wired certain funds from the bank accounts of Company 1, Company 2, and Company 3, as well as his own personal bank account at HSBC Private Bank (Suisse) SA, in Switzerland, for the purpose of making payments to foreign government officials, including Alejandro Andrade Cedeno and **CLAUDIA PATRICIA DIAZ GUILLEN**, in exchange for the officials' assistance in awarding business to **RAUL GORRIN BELISARIO**.

f.       **RAUL GORRIN BELISARIO**, together with others, while in the Southern District of Florida and elsewhere, did cause bribes to be paid for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN**, including through her spouse, **ADRIAN JOSE VELASQUEZ FIGUEROA**, in order to promote the illegal bribery scheme.

g.       **RAUL GORRIN BELISARIO**, together with others, caused payments to be to be made to third-party vendors to cover expenses for various luxury items on behalf of **CLAUDIA PATRICIA DIAZ GUILLEN** and **ADRIAN JOSE VELASQUEZ FIGUEROA** in the Southern District of Florida and elsewhere, in order to promote the illegal bribery scheme.

## OVERT ACTS

28.     In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed and caused to be committed in the Southern District of Florida and elsewhere:

(1)     In or around 2010, **RAUL GORRIN BELISARIO**, Gabriel Arturo Jimenez Aray, and others acquired a financial institution in the Dominican Republic for the purpose of laundering money and paying bribes to Venezuelan officials.

(2)      In or around 2012, **RAUL GORRIN BELESARIO** met with Alejandro Andrade Cedeno in the Southern District of Florida to discuss the payment of bribes.

(3)      On or about June 18, 2012, **CLAUDIA PATRICIA DIAZ GUILLEN** caused a transfer of a bond from the Venezuelan National Treasury to Company 1's bank account in Switzerland, and **RAUL GORRIN BELISARIO** was advised by the bank that the transfer was confirmed and that the "contact person is Claudia Diaz."

(4)      On or about October 25, 2012, **RAUL GORRIN BELISARIO** sent an email with the subject "485,000" to one of his employees and business partners, attaching wire instructions for a yacht company and stating: "Please make the transfer and charge it to AV."

(5)      On or about October 29, 2012, **RAUL GORRIN BELISARIO** caused a payment of $485,000 to be wired from Company 1's bank account in Switzerland to the bank account of a yacht company located in the Southern District of Florida for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN** and **ADRIAN JOSE VELASQUEZ FIGUEROA**.

(6)      On or about November 13, 2012, **RAUL GORRIN BELISARIO** caused a payment of $4.35 million to be wired from Company 1's bank account in Switzerland to the same yacht company's bank account in the Southern District of Florida in connection with the purchase of a yacht for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN** and **ADRIAN JOSE VELASQUEZ FIGUEROA**.

(7)      On or about December 11, 2012, Alejandro Andrade Cedeno emailed to **RAUL GORRIN BELISARIO** a copy of an invoice for $14,422 for veterinary services and wire instructions for making the payment.

(8)     On or about December 12, 2012, **RAUL GORRIN BELISARIO** caused a payment of approximately $15,000 to be wired from Company 1's bank account in Switzerland to a bank account in the Southern District of Florida for the veterinary services.

(9)     On or about January 29, 2013, after receiving an email with the details for the purchase of a $1,103,371 security system for Alejandro Andrade Cedeno's Caracas, Venezuela, home, **RAUL GORRIN BELISARIO** emailed the security system proposal to Alejandro Andrade Cedeno, addressing Alejandro Andrade Cedeno as "Boss," and requested his approval.

(10)    On or about January 30, 2013, **RAUL GORRIN BELISARIO** caused a payment of $1,103,371 to be wired from his personal bank account at HSBC Private Bank (Suisse) SA in Switzerland to a bank account in the Southern District of Florida for the security system.

(11)    On or about February 5, 2013, while in Wellington, Florida, Alejandro Andrade Cedeno emailed **RAUL GORRIN BELISARIO** a copy of an invoice for $174,800 from a horse transport company.

(12)    On or about February 7, 2013, **RAUL GORRIN BELISARIO** caused a payment of $174,800 to be wired from his personal bank account at HSBC Private Bank (Suisse) SA in Switzerland to a bank account in New York for the horse transport company.

(13)    On or about February 15, 2013, Alejandro Andrade Cedeno emailed **RAUL GORRIN BELESARIO** the identification of the individual who should be paid for expenses related to Alejandro Andrade Cedeno's horses.

(14)    On or about February 25, 2013, **RAUL GORRIN BELISARIO** caused a payment of $150,000 to be wired from Company 1's bank account in Switzerland to a bank account

in the Southern District of Florida for the individual to whom Alejandro Andrade Cedeno owed horse-related expenses.

(15)    On or about March 4, 2013, while in Wellington, Florida, Alejandro Andrade Cedeno emailed **RAUL GORRIN BELISARIO** a copy of wire instructions for a horse transport company.

(16)    On or about March 7, 2013, **RAUL GORRIN BELISARIO**, while in Southern District of Florida, caused a payment of $228,768 to be wired from his personal bank account at HSBC Private Bank (Suisse) SA in Switzerland to a bank account in New York for the horse transport company.

(17)    On or about March 15, 2013, **RAUL GORRIN BELISARIO** caused a payment of $281,051 to be wired from Company 1's bank account in Switzerland to a yacht company's bank account in the Southern District of Florida in connection with the purchase of a yacht for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN** and **ADRIAN JOSE VELASQUEZ FIGUEROA**.

(18)    On or about May 17, 2013, **RAUL GORRIN BELISARIO** caused a payment of $4 million to be wired from Company 2's bank account in Switzerland to a bank account in the Southern District of Florida maintained by a fashion company owned by and for the benefit of **CLAUDIA PATRICIA DIAZ GUILLEN** and **ADRIAN JOSE VELASQUEZ FIGUEROA**.

(19)    On or about May 29, 2013, Alejandro Andrade Cedeno emailed **RAUL GORRIN BELISARIO** a copy of an invoice for $117,062.15 for home improvement work on Alejandro Andrade Cedeno's home.

(20)   On or about June 6, 2013, **RAUL GORRIN BELISARIO** caused a payment of $117,087.15 to be wired from Company 2's bank account in Switzerland to a bank account in the Southern District of Florida for the home improvement company.

All in violation of Title 18, United States Code, Section 371.

### COUNT 2
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

29.   The General Allegations section of this Superseding Indictment is re-alleged and fully incorporated herein by reference as though fully set forth herein.

30.   From in or around 2008, through in or around 2017, in Miami-Dade County and Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**RAUL GORRIN BELISARIO,**
**CLAUDIA PATRICIA DIAZ GUILLEN, and**
**ADRIAN JOSE VELASQUEZ FIGUEROA,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to violate Title 18, United States Code, Section 1956(a)(2)(A), that is, to knowingly transport, transmit, and transfer a monetary instrument and funds to a place in the United States from and through a place outside of the United States with the intent to promote the carrying on of specified unlawful activity, that is, (a) a violation of the FCPA under Title 15, United States Code, Sections 78dd-2 and 78dd-3, and (b) an offense against a foreign nation, specifically Venezuela, involving bribery of a public official and the misappropriation, theft, and embezzlement of public funds by or for the benefit of a public official, in violation of Title 18, United States Code, Sections 1956(a)(2)(A) to wit, **RAUL GORRIN BELISARIO** agreed with **CLAUDIA PATRICIA DIAZ GUILLEN, ADRIAN JOSE VELASQUEZ FIGUEROA,** and others, to transport, transmit, transfer, and cause to be

14

transported, transmitted, and transferred funds from Switzerland to the United States, in furtherance of a scheme to pay and offer money and other things of value to foreign officials in Venezuela, including Alejandro Andrade Cedeno and **CLAUDIA PATRICIA DIAZ GUILLEN**, to obtain and retain business for **RAUL GORRIN BELISARIO**.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 3-11
### Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(2)(A))

31.     The General Allegations section of this Superseding Indictment is re-alleged and fully incorporated herein by reference as though fully set forth herein.

32.     On or about the dates set forth below, in Miami-Dade County and Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**RAUL GORRIN BELISARIO,**
**CLAUDIA PATRICIA DIAZ GUILLEN, and**
**ADRIAN JOSE VELASQUEZ FIGUEROA**,

as set forth below, knowingly transported, transmitted, and transferred, and aided and abetted, and caused, the transport, transmission, and transfer of, and attempted to transport, transmit, and transfer, a monetary instrument and funds to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity.

| Count | Approximate Date | Defendant (s) | Financial Transaction |
|-------|------------------|---------------|------------------------|
| 3 | November 13, 2012 | **RAUL GORRIN BELISARIO** | Wire transfer in the amount of approximately $4.35 million from an account in Switzerland to an account located in the Southern District of Florida, in the United States. |

| Count | Approximate Date | Defendant (s) | Financial Transaction |
|---|---|---|---|
| 4 | December 12, 2012 | **RAUL GORRIN BELISARIO** | Wire transfer in the amount of approximately $15,000 from an account in Switzerland to an account located in the Southern District of Florida, in the United States. |
| 5 | January 30, 2013 | **RAUL GORRIN BELISARIO** | Wire transfer in the amount of approximately $1,103,371 from an account in Switzerland to an account located in the Southern District of Florida, in the United States. |
| 6 | February 7, 2013 | **RAUL GORRIN BELISARIO** | Wire transfer in the amount of approximately $174,800 from an account in Switzerland to an account located in the Southern District of New York, in the United States. |
| 7 | February 25, 2013 | **RAUL GORRIN BELISARIO** | Wire transfer in the amount of approximately $150,000 from an account in Switzerland to an account located in the Southern District of Florida, in the United States. |
| 8 | March 7, 2013 | **RAUL GORRIN BELISARIO** | Wire transfer in the amount of approximately $228,768 from an account in Switzerland to an account located in the Southern District of New York, in the United States. |
| 9 | March 15, 2013 | **RAUL GORRIN BELISARIO, CLAUDIA PATRICIA DIAZ GUILLEN**, and **ADRIAN JOSE VELASQUEZ FIGUEROA** | Wire transfer in the amount of approximately $281,051 from an account in Switzerland to an account located in the Southern District of Florida, in the United States. |

| Count | Approximate Date | Defendant (s) | Financial Transaction |
|-------|------------------|---------------|------------------------|
| 10 | May 17, 2013 | **RAUL GORRIN BELISARIO, CLAUDIA PATRICIA DIAZ GUILLEN**, and **ADRIAN JOSE VELASQUEZ FIGUEROA** | Wire transfer in the amount of approximately $4 million from an account in Switzerland to an account located in the Southern District of Florida, in the United States. |
| 11 | June 6, 2013 | **RAUL GORRIN BELISARIO** | Wire transfer in the amount of approximately $117,087.15 from an account in Switzerland to an account located in the Southern District of Florida, in the United States. |

It is further alleged that the specified unlawful activity is: (a) a violation of the FCPA under Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (b) an offense against a foreign nation, specifically Venezuela, involving bribery of a public official and the misappropriation, theft, and embezzlement of public funds by or for the benefit of a public official.

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## FORFEITURE
## (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1))

1.      The allegations contained in this Superseding Indictment are here re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **RAUL GORRIN BELISARIO, CLAUDIA PATRICIA DIAZ GUILLEN**, and **ADRIAN JOSE VELASQUEZ FIGUEROA**, have an interest.

2.      Upon conviction of a violation of Title 15, United States Code, Sections 78dd-2 and/or 78dd-3, or conspiracy to commit such violation, as alleged in this Superseding Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or

is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Superseding Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in such offense, and/or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      If any property subject to forfeiture, as a result of any act or omission of the defendants,

      (a)    cannot be located upon the exercise of due diligence,

      (b)    has been transferred or sold to, or deposited with, a third party,

      (c)    has been placed beyond the jurisdiction of the Court,

      (d)    has been substantially diminished in value, or

      (e)    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), and such substitute property includes, but is not limited to, the following:

      (1)    140 Paloma Drive, Coral Gables, Florida 33143;

      (2)    144 Isla Dorada Boulevard, Coral Gables, Florida 33143;

      (3)    18555 Collins Avenue, Unit 4401, Sunny Isles Beach, Florida 33160;

      (4)    21055 Yacht Club Drive, Unit 2602, Aventura, Florida 33180;

      (5)    4100 Salzedo Street, Unit 804, Coral Gables, Florida 33146;

      (6)    4100 Salzedo Street, Unit 1010, Coral Gables, Florida 33146;

(7)    4100 Salzedo Street, Unit 608, Coral Gables, Florida 33146;

(8)    4100 Salzedo Street, Unit 807, Coral Gables, Florida 33146;

(9)    4100 Salzedo Street, Unit 809, Coral Gables, Florida 33146;

(10)   4100 Salzedo Street, Unit 811, Coral Gables, Florida 33146;

(11)   4100 Salzedo Street, Unit 813, Coral Gables, Florida 33146;

(12)   4100 Salzedo Street, Unit 909, Coral Gables, Florida 33146;

(13)   4100 Salzedo Street, Unit 913, Coral Gables, Florida 33146;

(14)   20 W. 53rd St, 47A, New York, New York 10019;

(15)   310 E. 53th Street, Apt 24C, New York, New York 10022;

(16)   330 E. 57th Street, Apt 12, New York, New York 10022;

(17)   60 Riverside Boulevard, PH 3702, New York, NY 10069; and

(18)   60 Riverside Boulevard, PH 3602, New York, NY 10069.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

*Daniel S. Kahn*
_____
DANIEL S. KAHN, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By: _____
KURT K. LUNKENHEIMER
ASSISTANT UNITED STATES ATTORNEY

By: _____
VANESSA SISTI, ASSISTANT CHIEF
PAUL A. HAYDEN, TRIAL ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

RAUL GORRIN BELISARIO, ET AL.,

_____Defendants._____/

CASE NO. 18-cr-80160-Dimitrouleas(s)

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

| | | |
|---|---|---|
| ___ | Miami | ___ Key West |
| ✓ | FTL | ___ WPB ___ FTP |

New defendant(s)          Yes  ✓   No  _____
Number of new defendants         2
Total number of counts           0

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:      (Yes or No)     Yes
    List language and/or dialect     SPANISH

4.  This case will take __14__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)

    | | | |
    |---|---|---|
    | I | 0 to 5 days | _____ |
    | II | 6 to 10 days | _____ |
    | III | 11 to 20 days | ✓ |
    | IV | 21 to 60 days | _____ |
    | V | 61 days and over | _____ |

    (Check only one)

    | | |
    |---|---|
    | Petty | _____ |
    | Minor | _____ |
    | Misdem. | _____ |
    | Felony | ✓ |

6.  Has this case previously been filed in this District Court?     (Yes or No)     Yes
    If yes: Judge DIMITROULEAS          Case No. 18-cr-80160
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?     (Yes or No)     No
    If yes: Magistrate Case No.         _____
    Related miscellaneous numbers:      _____
    Defendant(s) in federal custody as of   _____
    Defendant(s) in state custody as of    _____
    Rule 20 from the District of        _____

    Is this a potential death penalty case? (Yes or No)     No

7.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?     Yes _____   No ✓

8.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     Yes _____   No ✓

9.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     Yes _____   No ✓

KURT K. LUNKENHEIMER
ASSISTANT UNITED STATES ATTORNEY
Court ID # A5501535

*Penalty Sheet(s) attached

REV 6/5/2020

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: RAUL GORRIN BELISARIO

**Case No**:  18-cr-80160-Dimitrouleas(s)

Count #1:

Conspiracy to Violate the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) years' imprisonment

Count #2:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) years' imprisonment

Counts #3-11:

Laundering of Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(A)

**\*Max. Penalty:** Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: CLAUDIA PATRICIA DIAZ GUILLEN

**Case No**:  18-cr-80160-Dimitrouleas(s)

Count #2:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) years' imprisonment

Counts #9-10:

Laundering of Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(A)

**\*Max. Penalty:** Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: ADRIAN JOSE VELASQUEZ FIGUEROA

**Case No**:  18-cr-80160-Dimitrouleas(s)

Count #2:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) years' imprisonment

Counts #9-10:

Laundering of Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(A)

**\*Max. Penalty:** Twenty (20) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**