UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  18-cr-80160-DIMITROULEAS

UNITED STATES OF AMERICA

v.

CLAUDIA PATRICIA DIAZ GUILLEN,

Defendant.

_____/

## MOTION FOR PRETRIAL RELEASE ON BOND AND OPPOSITION TO GOVERNMENT'S REQUEST FOR DETENTION

Defendant, Claudia Patricia Diaz Guillen, files this opposition to the government's request for pretrial detention and moves this Court to order that she be released pending trial upon reasonable conditions to be set by the Court pursuant to 18 U.S.C. § 3142 (e) and §3142 (f)(2). In support, the Ms. Diaz Guillen states:

### INTRODUCTION

At Ms. Diaz Guillen's initial appearance, the government announced that it was seeking pretrial detention solely because of the government's belief that Ms. Diaz Guillen is a risk of flight pursuant to 18 U.S.C. Section 3142(f)(2)(a).  The government further emphasized Ms. Diaz Guillen's lack of contacts in South Florida, her decision to "fight extradition," and the monies alleged to be involved in the alleged conspiracy.

***First***, Mrs. Diaz-Guillen poses no risk of flight. Ms. Diaz Guillen is a Spanish

citizen and has been living in plain sight of the United States government in Madrid since 2016. Ms. Diaz Guillen is a mother of two children ages 3 and 13, a wife, a woman of faith, and a responsible person. Mrs. Diaz-Guillen also has ties to this community with at least one family member and several friends in South. Ms. Diaz Guillen has no criminal history anywhere in the world and the charges alleged against her are all non-violent in nature and there are no allegations of economic harm to any specific individual. *Second*, neither Mrs. Diaz nor her husband, Adrian Jose Velazquez Figueroa (who are both on the OFAC list) possess sufficient assets inside or outside the United States to run from the United States and they cannot (and would not) return to Venezuela. Doing so would be the equivalent of endangering their own lives given that, as described herein, they were forcibly expelled from Venezuela by the secret police in 2013. *Third*, Mrs. Diaz-Guillen's conduct of appearing before the Spanish tribunals in her prior extradition proceedings with stringent bond restrictions for several years more than amply demonstrates that she poses no risk of flight. *Fourth,* there are numerous district courts, including this District, which have permitted pre-trial release for similarly charged defendants with greater access to funds and who pose much more severe risks of flight than Mrs. Diaz-Guillen does in the present case. Finally, even if this Honorable Court were to conclude, on balance, that Mrs. Diaz Guillen poses a risk of flight, such a finding is insufficient to detain her as a matter of law where, as here, there are reasonable combination of conditions that may assure her appearance at

future proceedings in this case including:

- $1,000,000.00 Personal Surety Bond signed by Ms. Diaz Guillen and co-signed by her mother-in-law[1] and friend of the family[2];

- Execution of waiver of extradition;[3]

- Home confinement with electronic monitoring.

Ms. Diaz Guillen is prepared to accept any other condition the Court believes is necessary. As such, pre-trial release is warranted in this case.

<u>APPLICABLE STANDARD</u>

The Bail Reform Act establishes release as the norm, and detention as the exception. *See* 18 U.S.C. §1342; *United States v. Price,* 773. F.2d 1256 (11th Cir. 1985) (the Act was enacted with the intention of releasing defendants "under the least restrictive conditions compatible with assuring the future appearance of the defendant."); *United States v. Salerno,* 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *United States v. Byrd,* 969 F.2d 106, 109 (5th Cir.1992) ("There can be no doubt that this Act clearly favors non-detention."); *Pugh v. Rainwater,* 572

---

[1] Ms. Diaz Guillen's mother-in-law is in Spain assisting to take care of her young children but has agreed to act as a co-signor and bring the children to South Florida if Ms. Diaz Guillen is released. Ms. Diaz Guillen's mother-in-law has remotely signed bond paperwork.

[2] The name has been withheld from this public filing given the press' scrutiny of this case. Counsel will be prepared to disclose the name at the detention hearing.

[3] In two recent cases from this District, the courts included and accepted this as a condition of release. *See United States v. John Myers*, 19-cr-20739-JEM (S.D. Fla.) (ECF No. 8); *United States v. Salomon Melgen,* 15-cr-80049-KAM (S.D. Fla.) (ECF No. 63).

F.2d 1053, 1057 (5th Cir.1978) *(en banc)* ("Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning").

> Indeed, as the United States Supreme Court has said:

> In our society liberty is the norm, and detention without trial is the carefully limited exception. We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty, and we will not do so today.

*Hamdi v. Rumsfield*, 542 U.S. 507, 529-30 (2004) (internal citations and quotation marks omitted); *see also United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (Justice Kennedy states that "the Fifth and Eighth Amendment's prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected").

Beyond this, under §3142, the Government must demonstrate by a preponderance of the evidence that a defendant poses a risk of flight. In making this determination, the Bail Reform Act presumes that the defendant should be released prior to trial, and the Act directs the district court to order pretrial release of the defendant on personal recognizance, or upon execution of an unsecured appearance bond, subject to the condition that the defendant not commit any crime. 18 U.S.C. § 3142(b). Only if the court finds that these conditions will not reasonably assure the appearance of the defendant, or that release will endanger the safety of any other

person or the community, may the court then require additional conditions of release prior to trial. *Id.* If additional conditions of release are required, only the "least restrictive further condition, or combination of conditions", to assure appearance should be imposed.

Section 3142 (g) specifies the various factors that a court must consider when determining whether conditions of release may be imposed that will reasonably assure the defendant's appearance and the safety of the community. Most importantly, a court must consider the defendant's character and history including, inter-alia, his physical and mental condition, his past conduct and employment, the existence of any prior criminal record, the existence of any history of drug or alcohol abuse, the defendant's community and family ties, and his length of residence in this country. *Motamedi*, *supra* at 1047 (citing 18 U.S.C. §3142(g)). A court should consider the nature and circumstances of the Government's charges, but the weight of the Government's evidence is the least important factor in the balance. *Id.* at 1408 ("Our court has stated ... that the weight of the evidence is the least important of the various factors.")(citation omitted). Finally, when deciding whether to release a defendant pending trial, a court should err on the side of the defendant, and not the Government. *Motamedi*, *supra* at 1405 ("Doubts regarding the propriety of release should be resolved in favor of the defendant").; *see also United States v. Kaplowitz,* Case No. 14-20323-CR-Altonaga, 2014 WL 2155231, at *4 (S.D. Fla. May 22, 2014) (bond ordered although Kaplowitz's statutory maximum sentence was 85

years' imprisonment, and his advisory guideline range was life. Kaplowitz had extensive foreign travel and foreign travel he did not disclose to Pretrial Services, including travel outside the United States at least thirteen times over the last ten years. He had no children and resided alone for the past 15 years).

## MRS DIAZ GUILLEN POSES NO RISK OF FLIGHT

### A. Mrs. Diaz Guillen Has Support from Family and Ties to Community

Ms. Diaz Guillen has support from family and friends in the South Florida. Ms. Diaz Guillen' mother-in-law lives in Key Biscayne and is prepared to bring Ms. Diaz Guillen's children from Spain, so that they can join their mother.  Ms. Diaz Guillen also has a friend in the South Florida area that is prepared to act as co-signor' on the bond and welcome her into their home.

### B. There is No Country to Which Mrs. Diaz Guillen Might Flee

The government has not and cannot articulate any country to which Mrs. Diaz-Guillen might flee. This is because there is no country to which Mrs. Diaz Guillen might hypothetically flee. To understand this, it is important to highlight how Mrs. Diaz first arrived in Spain – the country from which she was extradited.

Ms. Diaz Guillen was living in Madrid Spain with her two children (ages 3 and 13) and her husband at the time she was extradited to the United States. Mrs. Diaz-Guillen became a Spanish citizen not by choice and only after she and her husband, Adrian Jose Velazaquez Figueroa, were expelled from Venezuela. Mrs. Diaz Guillen worked under President Hugo Chavez as the director of the Office of

the National Treasury and her husband worked in the presidential palace in the Department of Security. Yet, in 2013, once President Nicolas Maduro assumed control of the presidency in Venezuela, Mrs. Diaz Guillen and her family were expelled from Venezuela. Indeed, Mr. Velazquez Figueroa was told by the Venezuelan secret police that he had a week to leave Venezuela.

Accordingly, the above circumstances show that there is no risk that Mrs. Diaz Guillen would flee to Venezuela and risk further political persecution and endanger her own life. Likewise, it strains credulity to believe that Mrs. Diaz Guillen would arbitrarily flee to some random country away from her family when, as explained further, Mrs. Diaz-Guillen lacks the financial resources to do so and remains on the OFAC list. Instead, as a mother and wife, it is in fact much more likely that if Mrs. Diaz-Guillen were to flee she would flee to Spain to be with her family – a family that is willing to come here. But, Spain has already shown its commitment to extradite Mrs. Diaz-Guillen consistent with its Treaty obligations and would surely do it again if she sought safe-harbor there. Thus, the premise that Mrs. Diaz Guillen might flee to Spain to return to her family that is willing to relocate and support her here defies logic and common sense.

**C. Because the Venezuela Government Stripped Mrs. Diaz Guillen and Her Family of their Assets and Mrs. Diaz and Her Husband Remain on the OFAC list and Identified as PEP's Mrs. Diaz Guillen Lacks the Financial Resources to Flee**

Mrs. Diaz Guillen and her husband have been stripped of all their funds and

property. Accordingly, they lack the financial means to flee. *See also United States v. Khashoggi,* 717 F. Supp. 1048, 1051- 52 (S.D.N.Y. 1989) (granting release to a foreign national from Saudi Arabia even though he had "extraordinary means, means which could facilitate a hasty departure from the jurisdiction" because there were conditions of release that would assure his appearance); *United States v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007) (vacating detention order despite defendant's "ample means to finance flight" and strong foreign business and family ties).

First, in Venezuela, the government then (without due process or any judicial proceeding) confiscated Mrs. Diaz Guillen's assets (homes, bank accounts, vehicles).

Second, since that time, all of Ms. Diaz Guillen's assets outside of Venezuela were confiscated, frozen, and/or are inaccessible.  This is in large part because in early 2018 Ms. Diaz Guillen and her husband were placed on the OFAC sanction list as Specifically Designated Nationals (see link). In addition, because Mrs. Diaz-Guillen held a position as a public official in Venezuela from 2011-2013, risk and compliance departments at banks around the world identify her (and her husband) as Politically Exposed Person ("PEP"), making it virtually impossible for Mrs. Diaz Guillen or her husband to open a bank account anywhere in the world.

Finally, since the United States government has been investigating this case for at least 8 years, they surely have sufficient information related to Ms. Diaz Guillen's financial situation and know that she is financially destitute and relies on

the charity of her friends and family.

**D. Mrs. Diaz Guillen's Compliance with Each of the Bond Conditions Ordered by Two Different Spanish Tribunals During her Extradition Proceedings in Spain Supports Pre-Trial Release**

Contrary to the government's assertions that Mrs. Diaz Guillen is likely to flee because she challenged Venezuelan and American extradition requests, Mrs. Diaz Guillen's conduct in challenging those two separate extradition requests in Spain (one of which she won) demonstrates that pre-trial release is warranted. In addition, Ms. Diaz Guillen was entitled to challenge extradition and her challenge to the American request was based on a well-founded belief that the statute of limitations barred the United States from filing a superseding indictment (SSI) against her almost 8 years after the last act alleged in the SSI (May of 2013). It was also based on her meritorious contention that Mrs Diaz Guillen intends to raise that the United States government lacks jurisdiction over Ms. Diaz Guillen.  Finally, it was based on well-established Spanish precedent that forbids extradition while an investigating is pending in the requested State (*i.e.* Spain). In the present case, ***Spain has been investigating Mrs. Diaz-Guillen and Mr. Velazquez Figueroa for more than four (4) years***. Yet, as explained below, neither of them attempted to flee or evade the jurisdiction of Spain knowing that they were under investigation in Spain and knowing that the United States sought their extradition from Spain. Instead, they complied with every directive of the Spanish tribunals.

In 2018, Venezuela requested the extradition of Ms. Diaz Guillen from the

Spanish government.   Upon the request for extradition by the Venezuelan government, Ms. Diaz Guillen was arrested and detained in Madrid.   Ms. Diaz Guillen went before a judge within 24 hours and was released on conditions, which included reporting to the Spanish court every three days and to remain within the city limits of Madrid.  Ms. Diaz Guillen reported as required for over a year without incident.  Confirmation of her compliance with conditions of release are attached hereto as **Exhibit A[4]**.   Following litigation, the Spanish government denied Venezuela's extradition request, in part, because the Spanish tribunal concluded that the extradition was politically motivated

Likewise, in 2020, the United States government requested Ms. Diaz Guillen's extradition from Spain.  Once again, Ms. Diaz Guillen was arrested and immediately went before the Spanish court.  Ms. Diaz Guillen was released with conditions restricting travel outside of Spain and Ms. Diaz Guillen had to present herself to the Court every 15 days.  Ms. Diaz Guillen complied without incident for more than a year and a half.  Confirmation of her compliance with the conditions of release are attached hereto as **Exhibit B[5]**. Despite Ms. Diaz Guillen's knowledge of this prosecution, Mrs. Diaz Guillen did not attempt to flee. Instead, she reported without incident until the extradition request was granted.

---

[4] Due to time constraints the documents have not been translated, but counsel can proffer at the hearing as to their translation.
[5] Due to time constraints the documents have not been translated, but counsel can proffer at the hearing as to their translation.

In sum, Ms. Diaz Guillen's conduct during the two separate extradition proceedings illustrates that she has an extensive history of compliance with conditions of release.  There is no reason to believe that Ms. Diaz Guillen would be anything but compliant with any combination of conditions set by this Court.

### E. District Courts Have Concluded that Foreign Nationals Like Mrs. Diaz Guillen are Entitled to Pre-Trial Release

Despite the government's insistence that Ms. Diaz Guillen is a risk of flight due to her Spanish citizenship, district courts have granted pre-trial release for foreign nationals charged with similar offenses.  Indeed, foreign nationality is not a bar to bail.  *See e.g., Troung Dinh Hung v. United States*, 439 U.S. 1326, 1329 n.5 (1978) (concluding that a Vietnamese citizen, and non-permanent resident of the United States, who has close family in Vietnam, and who could not be extradited to the United States if he fled this country, should still be granted bond pending appeal after conviction on federal espionage charges); *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (rejecting Government's argument that Bail Reform Act required Iranian citizen should be detained prior to trial and stating that in this case alienage "does not tip the balance either for or against detention."). Nor is the mere possibility of flight sufficient to deny the right to bail. *United States v. Himler*, 797 F.2d 156,162 (3d Cir. 1986) (noting that the mere opportunity for flight is not sufficient grounds for pretrial detention).

In fact, this government routinely agrees to bond in cases involving similar allegations, for defendants that are foreign nationals with limited ties to South Florida, and with substantial more wealth and means to flee than Ms. Diaz Guillen. The following are few examples of these cases:

- *United States v. Cesar David Rincon Godoy*, Case No. 17-cr-514 (S.D. TX). Mr. Rincon Godoy was a foreign national accused of four counts involving money laundering of millions of dollars. Mr. Rincon Godoy had dual citizenship in Venezuela and Spain. Mr. Rincon Godoy was extradited to the United States. Mr. Rincon Godoy's only contact with the United States is that his brother-in-law kept a home in Sunrise, Florida. The government agreed that Mr. Rincon Godoy could be released on the following conditions:

    o $250,000 personal surety bond with 10% deposit;

    o Home confinement with electronic monitoring; and

    o Restricted travel to Southern District of Florida and Southern District of Texas.

- *United States v. Roberto Rincon-Fernandez*, Case No. H-15-654 (S.D.TX.). Mr. Rincon-Fernandez was accused of a wide-ranging conspiracy to bribe foreign officials and money laundering. He was also the so-called leader of the conspiracy. Mr. Rincon Fernandez had hundreds of millions of dollars in liquid assets, private planes, and yachts. He was also a foreign national. The government agreed that he should be released on the following conditions:

    o $5 million bond co-signed by wife and children and secured by a home in Texas;

    o Home confinement with electronic monitoring;

    o Surrender of passports; and

    o No access to planes.

- *United States v. Abraham Shiera-Batista*, Case No. H-15-654 (S.D.TX).  Mr. Shiera-Batista was Rincon-Fernandez's business partner facing similar accusations.  Like Rincon-Fernandez, Mr. Shiera-Batista had access to hundreds of millions of dollars in liquid assets, private planes, and yachts.  The government agreed that he should be released on the following conditions:

    o  $1 million bond secured by Shierra-Batista's Florida home;

    o  Home confinement with electronic monitoring; and

    o  No access to his private jets.

- *United States v. Arturo Murillo Prijic,* 21-cr-60340-PCH (S.D. FL).  MR. Prijic, a Bolivian citizen, was charged with conspiracy to launder proceeds of violations of Foreign Corrupt Practices Act. Mr. Prijic held a post as a public official in Bolivia, serving as the Minister of the Bolivian government. Mr. Prijics bond was awarded a corporate surety bond of Two Hundred and Fifty Thousand dollars with no other significant conditions of release. *See* ECF No. 25.

- *United States v. Jose Ramos-Castillo*, Case No. H-15-636 (S.D.TX).  Mr. Ramos-Castillo was a foreign official charged with accepting bribes.  Mr. Ramos-Castillo had recently moved to the United States when he was indicted.  He had limited ties to the United States and had citizenship in Venezuela.  The government agreed that Mr. Ramos-Castillo should be released on the following conditions:

    o  $25,000 unsecured personal surety bond; and

    o  Travel restricted to Southern District of Texas.

- *United States v. Gustavo Adolfo Hernandez Frier*, Case No. 21-20509 (S.D.FL).  Mr. Hernandez was charged with laundering hundreds of millions of dollars.  While Mr. Hernandez resided in South Florida, he had extensive travel and was arrested in Italy.  Mr. Hernandez had access to millions of dollars in liquid assets.  Mr. Hernandez fought extradition for close to a year.  The government agreed that Mr. Hernandez should be released on the following conditions:

    o  $1,500,000 with 10% Nebbia;

- o   $25 million personal surety bond; and

- o   Home confinement with electronic monitoring

- *United States v. Matthias Krull*, Case No. 18-cr-20682 (S.D.FL).  Mr. Krull was a Swiss banker, living in Switzerland, charged with laundering millions of dollars.  Mr. Krull had access to millions of dollars in liquid assets.  The government agreed that Mr. Krull should be released on the following conditions:

- o   $5,000,000 personal surety bond;

- o   $2,500,000 deposited in lawyer's trust account; and

- o   Home confinement with electronic monitoring.

## CONCLUSION

For each of these reasons, the government cannot meet its burden to prove that Mrs. Diaz Guillen is a flight risk. Mrs. Diaz-Guillen proposes that this Court impose the following conditions to assure her appearance at any future proceeding:

- $1,000,000.00 Personal Surety Bond signed by Ms. Diaz Guillen and co-signed by her mother-in-law[6] and friend of the family[7];

- Execution of waiver of extradition;

- Home confinement with electronic monitoring.

---

[6] Ms. Diaz Guillen's mother-in-law is in Spain assisting to take care of her young children, but has agreed to act as a co-signor and bring the children to South Florida if Ms. Diaz Guillen is released. Ms. Diaz Guillen's mother-in-law has remotely signed bond paperwork.
[7] The name has been withheld from this public filing given the press' scrutiny of this case.  Counsel will be prepared to disclose the name at the detention hearing.

In addition, Mrs. Diaz Guillen stands ready and willing to accept any reasonable combination of conditions this court might impose. *See* 18 U.S.C. Section 3142(c)(1)(B).

Dated: May 16, 2022.

Respectfully submitted,

TACHE, BRONIS AND DESCALZO, P.A.
150 S.E. Second Avenue, Suite 600
Miami, Florida 33131
Telephone:   (305) 537-9565
Facsimile:    (305) 537-9567

By: */s/ Marissel Descalzo*
Marissel Descalzo, Esq.
Florida Bar No. 669318
mdescalzo@tachebronis.com
service@tachebronis.com
*Counsel for Claudia Diaz Guillen*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been filed via electronic mail with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to all attorneys who have made an appearance on this 16th day of May, 2022.

By: */s/ Marissel Descalzo*
Marissel Descalzo, Esq.

16