UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>Plaintiff ) <br> )<br> )<br> )<br>v. )<br> )<br>CLAUDIA DIAZ GUILLEN )<br>Defendant )<br>_____/ | Case No. 18-cr-80160<br>Hon. William Dimitrouleas |

**REPLY TO GOVERNMENT'S OPPOSITION TO MRS. DIAZ GUILLEN'S MOTION TO DISMISS**

*/s/Marissel E. Descalzo*_____
TACHE BRONIS & DESCALZO P.A.
150 Southeast 2nd Avenue, Suite 600
Miami, Florida 33131
Office: 305.537.9565
Email: mdescalzo@tachebronis.com
FBN: 669318
*Attorney for Claudia Guillen Diaz*

1

The government's response fails to demonstrate to this court that dismissal is not warranted. Therefore, Mrs. Diaz Guillen submits that Counts 2, 9, and 10 must be dismissed with prejudice.

### A. The Government Conflates the Word "Conduct" in Section 1956(f) and the Word "Conducts" as defined by Section 1956(c)(2) to Support Counts 9-10

The government urges this court to conflate a verb with a noun and to re-define the word "conduct" in Section 1956(f) so that it has the same definition as the term "conducts" which is defined by Section 1956(c)(4) to support its allegations in Counts 9-10 that Mrs. Diaz Guillen violated Section 1956(a)(2)(A). Dkt. No. 87 at 7. There is no judicial canon or doctrine of statutory interpretation that authorizes such a strained reading of the statute.

Instead, Section 1956(f) states that the *conduct* which is prohibited by this Section of a non-U.S. citizen is punishable if it occurs *in part* in the United States. *See* 18 U.S.C. §1956(f). Here, the plain text of Section 1956(a)(2)(A) illustrates that the *conduct* prohibited by the statute (Section 1956(a)(2)(A)) is the *transportation, transmission, or transfer* of monetary instruments. Here, as alleged, Mr. Gorrin, not Mrs. Diaz Guillen and not Mr. Velazquez Figueroa, transferred, transported, or transmitted the monetary instruments from *Switzerland*[1] to a Florida account. *See* Superseding Indictment, at 13, ¶¶17-18; 16-17 (alleging Counts 9-10). Indeed, neither Mrs. Diaz Guillen nor Mr. Velazquez Figueroa participated in this extraterritorial conduct (wiring of funds from Switzerland).

Accordingly, Section 1956(f)'s extraterritoriality provision may only extend to the specific conduct prohibited by the statute it modifies (Section 1956(a)(2)(A)) which is the transmission,

---

[1] Contrary to the government's assertions, this interpretation of Section 1956(f) does not read the extraterritorial provision out of existence. *See* Dkt. No. 87 at 9. Gorrin's extraterritorial conduct (transfer/transmit/transport) of the Swiss wires to the United States is plainly covered by Section 1956(f).

transfer, or transportation of monetary instruments which, as set forth in the Superseding Indictment was executed by Mr. Gorrin, not Mrs. Diaz Guillen or Mr. Velazquez.

### B. There is No Factual Allegation in the Superseding Indictment Supporting the Premise that Mrs. Diaz Guillen Aided or Abetted the Swiss Wire Transfers Alleged in Counts 9-10.

To circumvent this problem with pleading that Mrs. Diaz Guillen (or her husband) transferred, transmitted, or transported a wire from Mr. Gorrin's Swiss bank account, the government claims, without any factual basis, that Mrs. Diaz Guillen and Mr. Velazquez Figueroa caused or aided and abetted Counts 9-10 in violation of 18 U.S.C. Section 2. *See* Superseding Indictment at 15.

The government need not allege that Mrs. Diaz Guillen "participated in every phase of the criminal venture" to show aiding and abetting, *United States v. Diecidue,* 603 F.2d 535, 557 (5th Cir. 1979), yet the government must establish that Mrs. Diaz Guillen "engaged in some affirmative conduct" and that Mrs. Diaz Guillen "committed an overt act designed to aid in the success of the venture." *United States v. Longoria,* 569 F.2d 422, 425 (5th Cir. 1978) (cleaned up). Furthermore, an indictment that merely parrots the language of the statute and fails to allege the core criminality of the offense should be dismissed. *Russell v. United States*, 369 U.S. 749 (1962) (finding indictments defective because the allegations under 2 U.S.C. § 192, which prohibits witnesses before congressional committees from "refus[ing] to answer any question pertinent to the question under inquiry," failed to identify the "question under inquiry." The Court ruled that the "core of criminality" under the statute was the pertinency to the subject under inquiry of the question a witness refused to answer); *See United States v. Cruikshank*, 92 U.S. (2 Otto) 542, 558, 23 L.Ed. 588 (1876) (an indictment is subject to dismissal unless it "inform[s] the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction ....". )

Here, the government say-so consisting of less than 10 words fails to allege such core criminality. And it fails to allege that Mrs. Diaz Guillen or her husband engaged in any affirmative act or committed any over act designed to further the discrete wire transfers alleged in Counts 9-10. *See also United States v. Wexler*, 838 F.2d 88 (3d Cir.1988) (held that the government had presented insufficient evidence to sustain the defendant's conviction for aiding and abetting possession by others with intent to distribute hashish.).[2] In fact, absent from the Superseding Indictment are any factual allegations to support any reasonable inference that Mrs. Diaz Guillen and Mr. Velazquez Figueroa caused or aided and abetted Counts 9-10. To the contrary, the Superseding Indictment alleges that Mr. Gorrin *caused* the payment of $281,051.00 and *caused* the payment of $4 million to be wired from Company 1's bank account in Switzerland, as alleged in Counts 9-10. *See* Superseding Indictment, at 13, ¶¶17-18; *see id* at 5, ¶ 17 (alleging that from November of 2012 until May of 2013 specifically Mr. Gorrin *caused* bribe payments to be made from his Swiss bank account for the benefit of Mrs. Diaz Guillen and Mr. Velazquez Figueroa).

For these reasons, the government has similarly failed to allege aiding and abetting under 18 U.S.C. § 2.

C. **The Government's Reliance on *Garcia* and *Ojedukon* and Other Assorted Federal Cases Does Not Support the Premise that Section 1956(f) Applies to Co-Defendants' Alleged Extraterritorial Conduct**

---

[2] *Compare U.S. v. Kemp*, 500 F.3d 257, 293 (3d Cir. 2007) (finding sufficient evidence to sustain aiding and abetting honest services fraud where defendant provided money to aid and abet the honest services fraud and finalized wire transfers for that purpose); *United States v. Knipp*, 963 F.2d 839, 846 (6th Cir. 1992) (affirmed the defendant's aiding and abetting bank fraud conviction where the defendant "allowed . . . [the] overdrafts to continue and that he facilitated the kite to cover them because the overdrafts amounted to huge, unauthorized loans beyond the single customer legal lending limits . . . ."); *U.S. v. Reed*, 851 F. Supp. 1296, 1308 (W.D. Ark. 1994) (finding sufficient evidence for aiding and abetting wire fraud based on among other things defendant's personal involvement in the embezzlement and deposits of funds to further the scheme).

4

The government incorrectly maintains that this Circuit's application of the extraterritoriality provision, Section 1956(f), in *Garcia* supports the prosecution of Mrs. Diaz Guillen for Counts 2, 9, and 10. *United States v. Garcia,* 533 F. App'x 967, 33-34 (11th Cir. 2013. In fact, *Garcia's* discussion of Section 1956(f) is limited to the following passage:

> Garcia also argues that the evidence of the shipments of cash to Colombia was insufficient to convict him under § 1956(h) because these activities took place largely outside the United States, and that particular subsection does not expressly state its extraterritorial effect. Be that as it may, Garcia ignores subsection (f) of the statute, which provides: "There is extraterritorial jurisdiction over the conduct prohibited by this section if—(1) the conduct is by a United States citizen, or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and (2) the transaction or series of related transactions involves funds or money instruments of a value exceeding $10,000." 18 U.S.C. § 1956(f) .
>
> ***The requirements for extraterritorial jurisdiction were met here. The evidence showed that the transferred funds originated in the United States***. Thus, a portion of each transaction occurred in the United States. Second, the evidence showed that the transactions routinely involved amounts equal to or in excess of $15 million, well above the statutory $10,000 threshold. ***Even if there was not extraterritorial jurisdiction over the cash shipments to Colombia, there is no dispute that the transactions in Miami completed by Cardona are punishable in American courts.***
>
> Therefore, Garcia is wrong in arguing that the evidence regarding money laundering activities that happened outside the United States could not support his money laundering conspiracy conviction. We affirm this conviction.

*Garcia,* 533 F. App'x 967 at 33-34. (emphasis added).

At bottom, *Garcia* never addressed whether dismissal of the indictment based on the lack of extraterritoriality was proper. Instead, *Garcia* narrowly held that evidence of funds (proceeds of drug trafficking) which ***originated*** in the US --cash shipments from the United States to Columbia – were sufficient to satisfy Section 1956(f)'s extraterritoriality requirement[3] and that

---

[3] Additional cases cited by the government support this point, including *Stein* and *$25,829,681.80 in Funds,* which both involved monies originating in the United States. Dkt No. 87 at 8-9, citing *United States v. Stein,* No. 93-cr-0375, 1994 WL 285020, at *4-5 (E.D. La. June 23, 1994) (noting that 18 U.S.C. § 1956(f) confers jurisdiction over a

evidence regarding money laundering activities that happened outside the United States could support a money laundering conspiracy conviction. *Garcia,* at 33-34. The court also noted, without any discussion or analysis, that "there is no dispute that the transactions in Miami completed by Cardona are punishable in American courts." *Id.* at 34. This conclusory statement in *Garcia* was based on the actions of a co-conspirator, Cardona, who moved to Miami to serve as the Montoya organization's "Miami operative" where he used defendant's drug money to purchase real property in Miami and multiple luxury cars in the United States to promote the organization's drug trafficking activities. *Garcia* at 12-13, 29.[4]

The government does not allege any similar conduct in this case. Importantly, there are no allegations in the Superseding Indictment that Mrs. Diaz Guillen, Mr. Velazquez Figueroa, Mr. Gorrin, or Mr. Andrade, ever engaged in any specific identifiable conduct in this District or on U.S. soil. For example, the totality of the allegations in Count 2 center on wire transfers from Switzerland and email exchanges. *See* Superseding Indictment at 14-15. Likewise, the general allegations fail to describe any conduct committed by any of the supposed co-conspirators occurring on U.S. soil and is, again, limited to wire transfers from abroad, unspecified email communications, and a variety of Venezuela-based conduct. See Superseding Indictment at 5-6. Absent from each of these allegations is any description of facts demonstrating that Mrs. Diaz

---

foreign person that causes the transfer of money from the ***U.S. to the U.K***); *United States v. Approximately $25,829,681.80 in Funds*, No. 98 Civ. 2682, 1999 WL 1080370, at *3 (S.D.N.Y. Nov. 30, 1999) ("As in *Stein*, the parties initiating the fund transfers 'acted electronically' within the United States, and such action is sufficient to constitute 'conduct' for purposes of 18 U.S.C. § 1956.").

[4] In addition, *Garcia* did not address the FCPA or violations of a yet-to-be-specified Venezuelan criminal law. *See* Superseding Indictment at 14-15. Nor did the government charge the drug traffickers in *Garcia* with the same underlying money laundering violation (here, Section 1956(a)(2)(A) in support of the conspiracy. The conspiracy in *Garcia* was premised on an agreement to violate Section 1956 (a)(1)(B)(i). That subsection targets a person (i) who conducts or attempts to conduct a financial transaction (ii) knowing that the proceeds of that financial transaction are derived from an unlawful activity and which in fact involves the proceeds of specified unlawful activity *and* (iii) knowing that the transaction is designed in whole or in part- to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" 18 U.S.C. § 1956(a)(1)(B)(i).

Guillen or Mr. Velazquez Figueroa engaged in any verbal or non-verbal conduct in the United States (emails, telephone calls, using the mails, wiring or receiving money, spending money, traveling to the United States, attending meetings, etc.).

Much like *Garcia,* the Fourth Circuit decision in *United States v. Ojedokun*, 16 F.4th 1091, 1103 (4th Cir. 2021) cannot salvage Counts 2, 9, and 10. There, the defendant raised several distinguishable challenges to the application of Section 1956(f). First, defendant argued that Section 1956(f) did not extend to conspiracy offenses asserting that the *noun* "conduct" as used in § 1956(f) should be read to carry that same definition, such that a conspiratorial agreement — which does not involve initiating or concluding a financial transaction — would not be "conduct." *Ojedokun*, at 1104. The Fourth Circuit rightly rejected this argument reasoning that Section 1956(f) does not supply a definition of the noun "conduct," and that the ordinary meaning of "conduct" must control. *Ojedokun*, at 1104. Second, defendant insisted that even if the term "conduct" as it appears in § 1956(f) carries the "broader, dictionary-definition" of that term, the conduct of a mere agreement" was narrow enough arguably to fall outside that dictionary definition. *Ojedokun*, at 1104. The Fourth Circuit likewise rejected this argument finding that it is "an axiomatic principle of the criminal law that thoughts alone may not be punished — every criminal offense must proscribe some conduct, some actus reus." *Id.* at 1104-05 (4th Cir. 2021). The court then concluded that Section 1956(f) defeats the presumption of extraterritoriality with respect to both substantive Section 1956 money laundering offenses and over 1956(h) conspiracy offenses because it "prohibits" the "conduct" of conspiring — that is, agreeing — to launder money by subjecting a conspirator to the same penalties he would face for commission of § 1956's substantive offenses. *Id.* at 1105.

In applying these principles, the court in *Ojedokun* found that the defendant's presence in Nigeria could not insulate him from the extraterritorial reach of Section 1956(f) where he made an agreement with a "resident of the United States" and where the conspiracy was "extensively carried out" in the United States. *Ojedokun* at 1108.

Mrs. Diaz Guillen has not challenged the application of Section 1956(f) to conspiracy offenses prosecuted under Section 1956(h). Mrs. Diaz Guillen instead contends that the government failed to allege that she participated in any of the conduct proscribed by 1956(h) -- *an agreement* to commit a money laundering offense -- *in part,* in the United States. By its plain terms, the government must allege sufficient "conduct" *in part* in the United States to invoke Section 1956(f)'s extraterritoriality provision against non- U.S. citizens. *See* 18 U.S.C. Section 1956(f). Yet, the Superseding Indictment fails to allege a single non-verbal or verbal act committed by Mrs. Diaz Guillen (or her husband) – let alone an agreement -- in the United States or in this District. Thus, the government falls far short of alleging that an agreement to transfer, transmit or transport monetary instruments to promote a specified unlawful activity – either an FCPA violation or a yet-to-be-revealed violation of Venezuelan criminal law. *See* Superseding Indictment at 14.

In stark contrast to *Ojedukon*, the conspiracy in Count 2, as alleged, was not "extensively carried out in the United States." Ojedukon, with others, was convicted of a sprawling money laundering conspiracy premised on an internet fraud scheme. Ojedukon and his co-conspirators preyed on elderly U.S. victims by using U.S. social media and dating websites to dupe vulnerable U.S. victims into depositing funds into U.S. accounts – accounts which were indispensable to the

8

execution of the fraud scheme. *See also U.S. v. Seun Ojedukon*, et al. 19-cr-00228-PWG (D. Md.) (Dkt. No. 79) (Superseding Indictment)[5]

Here, there are no allegations in the Superseding Indictment that Mrs. Diaz Guillen or Mr. Velazquez Figueroa engaged in any verbal or non-verbal conduct with Mr. Gorrin (or anyone else in the United States).[6] There are no U.S. victims or elderly account holders. Instead, the supposed bribery scheme targeted the Venezuelan treasury thus harming Venezuelan taxpayers and businesses. *See RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016) ((stating that "the presumption [against extra-territoriality] can be overcome only by a clear indication of extraterritorial effect" and that "Congress [must] affirmatively and unmistakably" show its intent to apply laws extraterritorially). And, the U.S. allegations related to Mrs. Diaz Guillen amount to isolated wire transfers caused by Mr. Gorrin and originating in Switzerland. *See* Superseding Indictment, at 11, ¶¶17-18; 13, at ¶¶ 17-18; 16 (counts 9-10). There are similarly no allegations or – other than government say so –that the wires were "for the benefit" of Mrs. Diaz Guillen.

The additional federal district cases cited by the government are each distinguishable. *See* Dkt. No. 87 at 8-9 (citing cases). For example, the defense in *United States v. Firtash,* 392 F. Supp. 3d 872, 886 (N.D. Ill. 2019) never raised the argument that defendants raise here. *Firtash*, 392 F. Supp. 3d at 886 ("Defendants acknowledge and do not challenge this application of Section 1956(f). "); *see also* Dkt. No. 87 at 8 citing, *United States v. All Assets Held at Bank Julius, Baer & Co. (In re Rem)*, 251 F. Supp. 3d 82, 93 (D.D.C. 2017) ("Lazarenko concedes that a transfer from a foreign account to an account in a U.S. financial institution and a transfer from a U.S.

---

[5] Mr. Ojedukon was also not charged with conspiring to violate the operative provision of the MCLA here which is Section 1956(a)(2)(A) and was instead charged with conspiracy to violate Sections 1956(a)(1)(A)(i) and (a)(1)(B)(i)

[6] The aggregate of any conduct (verbal or non-verbal) committed by Mrs. Diaz Guillen or her husband, Defendant Velazquez Figueroa is the allegation that Mrs. Diaz Guillen caused a transfer of a bond from the *Venezuelan* treasury to *Switzerland. See* Superseding Indictment, at 11, ¶3. Conduct which is plainly extraterritorial.

account to a foreign financial institution occur in part in the United States under 18 U.S.C. § 1956(f)."); *But Compare U.S. v. Daisy Rafoi, et al*, 17-cr-00514 (S.D. Tex) (Dkt. No. 255 entered 11/12/21) (dismissing money laundering charges in Indictment based on violations of FCPA as SUA)*; In Cedeno v. Intech Grp., Inc.,* 733 F. Supp. 2d 471, 472 (S.D.N.Y. 2010) (holding that use of U.S. bank accounts was insufficient to create U.S. jurisdiction over money laundering charges); *see United States v. Lloyds TSB Bank PLC*, 639 F. Supp.2d 314, 324 (S.D.N.Y. 2009) ("To meet the jurisdictional requirement of § 1956(f)(1) that the money laundering conduct of Lloyds TSB, a non-United States citizen, 'occurs in part in the United States,' the Government is reduced to relying upon the conduct in the United States of securities fraud conspirators, who transferred proceeds from the United States which were eventually deposited in Kyprianou's accounts with the Bank in Switzerland. But this will not suffice . . . ."). In *Cedeno*, the court underscored:

> Plaintiffs attempt to sidestep *Morrison* by arguing that their complaint alleges predicate acts of money laundering that involved transfers into and out of this District by U.S. banks. But as the Court noted in *Morrison,* "it is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States and the presumption against extraterritoriality "would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case.

*Cedeno,* at 473, quoting *Morrison v. National Australia Bank Ltd.*, 561 US 247, 266 (2010)

Accordingly, neither *Garcia,* nor *Ojedukon,* or the assortment of federal district court cases cited by the government counsel against dismissal of Counts 2, 9, and 10.

### D. **Absent any allegation that Defendants violated a Specific Venezuelan Law, the Government Fails to Allege a Violation of Section 1956(c)(7)(B)(iv) and Counts 2, 9, and 10 Must be Dismissed to the Extent they Rely on Such a Theory that was not Returned by the Grand Jury**

In addition, this court should reject the government's contention that it sufficiently alleges a money laundering promotion offense where, as here, the government refuses to identify that specified unlawful activity that defendants intended to promote. *See, e.g., United States v.*

*Handakas*, 286 F.3d 92, 112–13 (2d Cir. 2002) (rejecting money-laundering conviction where SUA failed), *overruled on other grounds; see also United States v. Truesdale,* 152 F.3d 443, 449 (5th Cir. 1998) (same).

Promotion and the specific intent to promote a specified unlawful activity go to the core of the criminality under the money laundering statutes alleged in Counts 2, 9, and 10 each of which include *promotion* of a specified unlawful activity as an element of the offense conduct. *United States v. Murphy,* 726 F.2d 1151 (1st Cir. 1985) (invaliding an indictment which quoted the statute and identified the threatened witnesses and the date of the threat, but which did not identify any official proceeding reasoning that the missing information went to the core of criminality under the statute and without that information, the defense did not know what proceeding the grand jury was charging the defendants with attempting to influence).

Absent notice of the specific law that was violated – or evidence that the grand jury even considered and returned an indictment based on a violation of that law – the government continues to invite speculation as to a fundamental part of the charges in Counts 2, 9, and 10. Thus, each of those Counts must be dismissed to the extent that they rely on an unspecified violation of Venezuelan law. *See United States v. Bobo,* 344 F.3d 1076, 1083-84 (11th Cir. 2003) (dismissing a health care fraud indictment and reinforcing that an indictment also fails to allege a material element of an offense when the indictment "invites speculation on a fundamental part of a charge is insufficient.").

## CONCLUSION

For each of these reasons, Mrs. Diaz Guillen respectfully request that this Court grant the Motion to Dismiss Counts 2, 9, and 10 with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been filed via electronic mail with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to all attorneys who have made an appearance on this 7th day of June, 2022.

By: */s/ Marissel Descalzo*
Marissel Descalzo, Esq.