UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cr-80160-DIMITROULEAS

UNITED STATES OF AMERICA

v.

CLAUDIA PATRICIA DIAZ GUILLEN,

    Defendant.

_____/

**<u>MOTION TO REOPEN<br>
PRETRIAL DETENTION HEARING<br>
AND REVOKE DETENTION ORDER [D.E. 73]</u>**

At the detention hearing on May 17, 2022, this Court instructed Claudia Patricia Diaz Guillen to come back to the Court if something changed. Circumstances have changed. Specifically, the current protocols and procedures at the various jails where Ms. Diaz Guillen has been held in custody make it impossible for her to effectively prepare for trial in violation of her Sixth Amendment rights.

Moreover, the government's willingness to agree to bond if Ms. Diaz Guillen cooperates is clear evidence that the government does not truly believe that Ms. Diaz Guillen is a flight risk. Instead, the request for detention is a form of punishment for her decision to proceed to trial. If Ms. Diaz Guillen's truly desired to flee, instead of clearing her name, agreement to cooperate would be the fastest route to flight. Instead, she is coming to this Court and persisting in her innocence.

As such, Ms. Diaz Guillen moves this Court to order that she be released pending trial upon strict conditions to be set by the Court pursuant to 18 U.S.C. § 3142 (e) and § 3142 (f)(2). In support, Ms. Diaz Guillen states[1]:

## Introduction

The Superseding Indictment alleges that from 2011 until early 2013, while Ms. Diaz Guillen was the treasurer of Venezuela under Hugo Chavez, Raul Gorrin paid for watches, horses[2], yachts, private jets, homes, and a designer fashion line, for the benefit of Mr. Figueroa and/or Ms. Diaz Guillen, "to secure an improper advantage in obtaining and retaining the rights to conduct foreign currency exchange transactions at favorable rate." *See* Superseding Indictment at 3-4, and 6. Like all White Collar cases, the discovery here is voluminous. The discovery essentially consists of large volumes of bank records (for accounts unrelated to Ms. Diaz Guillen), email correspondence (not involving Ms. Diaz Guillen), and loan documents (for individuals unknown to Ms. Diaz Guillen).

Ms. Diaz Guillen's involvement in her defense is imperative. Because the discovery does very little to shed any light on why she is charged or how she is involved, Ms. Diaz Guillen is integral to undersigned's ability to understand the

---

[1] Ms. Diaz Guillen incorporates the arguments made in her Opposition to the Government's Request for Detention. [D.E. ___].

[2] Each of the payments for horses were made for the benefit of Alejandro Andrade's son, Emanuel Andrade, as set forth in the Superseding Indictment. *See* Superseding Indictment at 11. Indeed, Mr. Andrade's son is a professional equestrian and the FBI seized his horses. *See* https://www.chronofhorse.com/article/emanuel-andrades-horses-seized-by-fbi

2

significance – or lack thereof – of millions of pages of material in the discovery. Moreover, Ms. Diaz Guillen was the Treasurer of a country. She held a high-level government position that involved multiple tasks, including overseeing highly technical financial transactions for an entire country. In order to prepare a defense, undersigned counsel will need to understand Ms. Diaz Guillen's position as Treasurer of Venezuela. In addition, Ms. Diaz Guillen is probably the only person that can identify what types of documents and witnesses are needed in her defense. Many of the documents are located in Venezuela and elsewhere, which create logistical hurdles, even without the added limitations created by Ms. Diaz Guillen's detention. These are documents that the government did not bother to subpoena, and undersigned counsel will need to obtain for trial.

## Current Custodial Conditions

Ms. Diaz Guillen was taken into custody on April 13, 2022. Her experience in custody is atypical. First, Ms. Diaz Guillen was in quarantine from the time of her arrival in South Florida until July 23, 2022[3]. The quarantine process is in place due to the COVID-19 pandemic. It is clear that while the world has largely returned to normalcy, the prisons have not. Quarantine protocols keep Ms. Diaz Guillen inside her cell and locked up for twenty-three hours a day. Phone calls must be made

---

[3] Ms. Diaz Guillen was out of quarantine for a couple of days in May 2022, but was put back in quarantine following attendance at the hearing on her Motion to Dismiss the Indictment for lack of jurisdiction.

during the brief time she is outside of the cell.

Since being taken into custody, Ms. Diaz Guillen has been transferred multiple times to multiple prisons in Palm Beach County and Broward County. Each time she is moved, undersigned counsel loses contact with her for 24 to 48 hours. Sometimes in-person legal visits are planned, only for undersigned counsel to show up at the prison for an appointment to learn that Ms. Diaz Guillen has been moved without prior notice to counsel.

This week is a perfect example of this situation. Ms. Diaz Guillen and undersigned counsel met in person at the Paul Rein Detention Center[4] in Pompano Beach, Florida on Monday, August 8, 2022, to execute a waiver of her appearance at the hearing scheduled on August 22, 2022 on the government's motion for a protective order. Counsel had a 30-minute video session scheduled with Ms. Diaz Guillen the following day, August 9, 2022. When counsel signed on for the video, Ms. Diaz Guillen did not appear. Counsel spent 30 minutes calling around to the various detention facilities and searching online to try to find Ms. Diaz Guillen. No one could tell counsel where Ms. Diaz Guillen had been taken and why. At approximately 10:00PM, on August 9, 2022, undersigned counsel received a call from Ms. Diaz Guillen and learned that she was now at the Main Jail in West Palm

---

[4] Undersigned counsel asked federal agents, the prosecutors, and the US Marshals to please house Ms. Diaz Guillen at the Paul Rein Detention Center. Despite the difficulties with visitation described, Paul Rein provides the best accessibility to Ms. Diaz Guillen.

4

Beach, Florida. Counsel further learned that Ms. Diaz Guillen was taken from Paul Rein Detention Center at midnight on August 8, 2022, and transported to Broward Main Jail. Ms. Diaz Guillen was not permitted to take any of her belongings, including her legal mail. On August 9, 2022, at 5:00AM, Ms. Diaz Guillen was taken to the US Marshals at the Broward Federal Courthouse and informed she had Court. This made Ms. Diaz Guillen extremely anxious. She had no previous notice of any Court hearing, and she could not contact undersigned counsel to find out what was happening. Ms. Diaz Guillen grew more concerned as the day went on because undersigned counsel always visits her at the US Marshals' office before any court hearing, but undersigned had not shown up that day. At approximately 4:00PM, on August 9, 2022, Ms. Diaz Guillen was told she did not have Court, and she was transported to the Main Jail in West Palm Beach, Florida and processed. Ms. Diaz Guillen was placed in quarantine again at the Main Jail. Ms. Diaz Guillen will have to restart the entire quarantine process when, and if, she makes it back to Paul Rein Detention Center. The unnecessary transfers to various facilities, the excessive time in quarantine, and lack of adequate access to counsel is unwarranted, unjust, and unconstitutional.

      Of note, undersigned counsel was able to arrange a one hour in-person legal

visit at the Main Jail in West Palm Beach on Friday, August 12, 2022 at 7:30AM.[5]

While attorney visits are permitted during the quarantine process, in person visits are difficult. At the Paul Rein Detention Center, for example, undersigned counsel must arrive at the prison at 7:30AM in hopes of being the first legal visitor. Male and female prisoners are not permitted in the legal visitation room at the same time. As such, if undersigned counsel arrives and a male prisoner is receiving a legal or clergy visit, she must wait, sometimes for over an hour. There have been times undersigned counsel cannot wait due to scheduled court hearings and commitments on other cases. Visitations are often cut short because someone is waiting for a male prisoner.

Visiting Ms. Diaz Guillen at the Broward Main Jail when she is incarcerated there is impossible. This is mostly due to Ms. Diaz Guillen being "lost" in the system or being moved unexpectedly and without notice. This has caused undersigned to make the hour drive from Miami to downtown Fort Lauderdale, only to learn that Ms. Diaz Guillen was moved without notice or explanation to counsel.

### Review of Discovery in Custody

Reviewing discovery in the current environment at the Bureau of Prisons is

---

[5] Undersigned counsel lives approximately an hour and forty-five minutes from the Main Jail and will have to begin driving to the prison tomorrow around 5:00AM. This is less than ideal, but undersigned counsel feels compelled to attend any legal visit the prison schedules for fear that later access to her client will be difficult, if not impossible.

close to impossible. Counsel has two options to provide Ms. Diaz Guillen with the discovery: (1) mail it[6] or (2) personally take it to the prison for review during in person visits. Despite undersigned counsel sending legal mail to Ms. Diaz Guillen on a consistent basis, the first time Ms. Diaz Guillen received a piece of legal mail was August 4, 2022. It is unclear where the legal mail was kept and why it was held from Ms. Diaz Guillen. Ms. Diaz Guillen was also informed that some legal mail was held because it was "personal". It is unclear what was deemed by prison personnel to be "personal," as undersigned counsel has only mailed legal materials. Unfortunately, the victory of finally receiving legal mail was short lived. Ms. Diaz Guillen was not permitted to take her legal mail when she was transferred on Monday, August 8, 2022.

When undersigned counsel visits Ms. Diaz Guillen, she can bring printed copies of discovery, but cannot leave anything with Ms. Diaz Guillen. At Paul Rein Detention Center, undersigned counsel is permitted to bring her computer, but no hard drives or USBs are permitted. Moreover, internet access and a plug to charge the computer are prohibited. As such, undersigned counsel downloads the discovery to her hard drive and attempts to show it to Ms. Diaz Guillen by holding up her computer to a plexiglass. Ms. Diaz Guillen is not permitted to touch the computer.

---

[6] If the government's motion for protective order is granted, legal mail will no longer be an option for transmitting discovery as it would violate the proposed order.

7

In order to search for documents that Ms. Diaz Guillen thinks might be helpful, undersigned counsel has to write down complicated instructions, return to her office, and hope she properly spelled the titles of the documents and websites where she might find things in Spanish.

This is no way to prepare for a complicated trial that is two months away. The protocols in place following the pandemic at the prisons do not allow for the effective preparation of a defense in a complicated White Collar criminal case.

### **Ms. Diaz Guillen has the Right To Effective Assistance of Counsel**

The inability to regularly meet and work with counsel and experts and review voluminous, electronic discovery calls for special consideration of available strict non-jail forms of confinement (such as those permitted by the Department of Justice, including home confinement with 24-hour electronic and video monitoring, and other restrictions).

The Sixth Amendment guarantees not simply the presence of lawyer at trial, but the effective assistance of that lawyer at trial:

> That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. For that reason, the Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *McMann* v. *Richardson*, 397 U.S. 759, 771, n. 14 (1970).

*Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). This Court has the authority under the Bail Reform Act to release a pretrial detainee to ensure that this mandate is carried out, even when the Court has previously found a basis to detain the defendant. Under § 3142(i):

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary for preparation of the person's defense* or for another compelling reason.

*Id.* (emphasis added).

Courts have recognized that the pandemic has debilitated the attorney-client relationship and ability to prepare for trial and as a result have granted pre-trial release. For instance, in *United States v. Kennedy,* a narcotics case where the defendant was detained on allegations that he had absconded from pre-trial supervision for nine months and had tested positive for fentanyl and heroin, in violation of his bond conditions, the Court granted release for medical reasons and because "even if Defendant did not have a heightened susceptibility to COVID-19, the public health crisis—and its impact on Defendant's ability to present a defense— nonetheless satisfies [the Bail Reform Act under] § 3142(i)." *See Kennedy,* Case No. 5:18-cr-20315 (ECF#77). The Court also found that because Kennedy and his lawyer were not able to meet to prepare for an upcoming bond hearing and subsequent

sentencing, "release is necessary in order to allow Defendant to adequately prepare and consult with defense counsel for these proceedings." *Id.* at 12-13.

In *United States v. Davis*, No. 1:20-cr-9-ELH (ECF#21) (D. Md. Mar. 30, 2020), the Court released the defendant over government objection in a narcotics case, in part because of "the disruption to the attorney-client relationship caused by this public health crisis," including the inability of counsel to meaningfully meet with the detained defendant to prepare for trial. *Id.* at 14; *see also United States v. Chandler,* Case No. 19-cr-867-PAC (ECF#19) (S.D.N.Y. Mar. 31, 2020) ("The extraordinary burdens imposed by the coronavirus pandemic, in conjunction with Chandler's right to prepare for his defense, certainly constitute a 'compelling reason' that permits this Court to order the temporary release of Chandler pursuant to 18 U.S.C. § 3142(i)").

### The Government is aware that Ms. Diaz Guillen is not a flight risk

This Court found that Ms. Diaz Guillen poses a flight risk due to undisclosed wealth. Following the detention hearing, the government has conceded that Ms. Diaz Guillen has little, if any, information about the monies that are the subject of the Superseding Indictment. Not only does Ms. Diaz Guillen lack knowledge about these monies, she does not have access to any wealth. Since 2018, Ms. Diaz Guillen and her husband are on the OFAC list. Placement on the OFAC list is financial suicide. Bank accounts are frozen around the world, credit cards cannot be used, no

online purchases can be made, no Uber rides can be take, etc. Any economic transaction must be completed in cash. Ms. Diaz Guillen does not have the means to flee. More importantly, Ms. Diaz Guillen has no intention or desire to flee. She wants to clear her name.

Ms. Diaz Guillen cannot hide. For the past four years, Ms. Diaz Guillen's face and name have been reported in local, national, and foreign newspapers. Her face and name have been part of TV media reports that reach national and international audiences. Anyone that has read a newspaper or watched the news knows Ms. Diaz Guillen as "President Hugo Chavez's nurse" accused in the United States. The publicity associated with this case and Ms. Diaz Guillen's involvement is another reason she is not a flight risk.

There is no greater evidence of Ms. Diaz Guillen's desire to clear her name and not flee than the fact that the government has repeatedly offered to agree to bond if she cooperates. Ms. Diaz Guillen has refused because she believes in her innocence, and she does not have any relevant information to provide. Nothing would stop Ms. Diaz Guillen from fleeing following an agreement to cooperate. The truth is that the government does not believe she is a flight risk; instead, it is using pre-trial detention as a form of punishment and coercion to force Ms. Diaz Guillen to pled guilty and not exercise her constitutional right to trial.

## Proposed Conditions of Pre-Trial Release

- Execution of waiver of extradition;[7]

- 24-hour video monitoring and phone recognition monitoring;

- Home confinement with electronic monitoring;

- Stay away order from airports;

- Daily physical reporting to probation until the first day of trial;

- Report to probation by phone three times a day (morning, afternoon, and evening);

- Execution of personal surety bond;

- Reside at Courtyard Marriott located at 200 SE Second Avenue, Miami, Florida 33134, which is across the street from undersigned counsel's office, from now until trial; and

- Reside at Element Hotel located at 299 North Federal Highway, Fort Lauderdale, Florida with undersigned counsel for the duration of trial in this matter.

---

[7] In two recent cases from this District, the courts included and accepted this as a condition of release. *See United States v. John Myers*, 19-cr-20739-JEM (S.D. Fla.) (ECF No. 8); *United States v. Salomon Melgen,* 15-cr-80049-KAM (S.D. Fla.) (ECF No. 63).

Ms. Diaz Guillen is prepared to accept any other condition the Court believes is necessary. As such, pre-trial release is warranted in this case.

## Conclusion

The solution her is not a trial continuance because it will only serve to prolong the hardships described in this motion. The solution is not to move Ms. Diaz Guillen to FDC Miami. The protocols in place at FDC Miami create far greater access to client issues than problems at the various state jails where Ms. Diaz Guillen has been housed. Namely, FDC Miami does not have video conference capabilities and in person visits on is limited to five hours Monday to Friday by appointment. Moreover, any stay at FDC Miami is short lived because her trial will take place in Broward County, Florida. The current operational procedures at the jails are simply not equipped to allow for effective preparation of a defense in a complicated money laundering case. The only solution here is for Ms. Diaz Guillen to be released.

Ms. Diaz Guillen further requests that if the Court decides to hold a hearing on this matter that the hearing be scheduled on August 22,2022 to avoid further jail transfers.

Dated: August 12, 2022.

                                      Respectfully submitted,

                                      TACHE, BRONIS AND DESCALZO, P.A.
                                      150 S.E. Second Avenue, Suite 600

                        Miami, Florida 33131
                        Telephone:   (305) 537-9565
                        Facsimile:     (305) 537-9567

By: */s/ Marissel Descalzo*
      Marissel Descalzo, Esq.
      Florida Bar No. 669318
      mdescalzo@tachebronis.com
      service@tachebronis.com
      *Counsel for Claudia Diaz Guillen*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been filed via electronic mail with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to all attorneys who have made an appearance on this 12th day of August, 2022.

                        By: */s/ Marissel Descalzo*
                              Marissel Descalzo, Esq.