UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cr-80160-DIMITROULEAS

UNITED STATES OF AMERICA

v.

CLAUDIA PATRICIA DIAZ GUILLEN,

    Defendant.
_____/

**REPLY IN FURTHER SUPPORT OF MOTION FOR BILL OF PARTICULARS**

TACHE, BRONIS AND DESCALZO, P.A.
150 S.E. Second Avenue, Suite 600
Miami, Florida 33131
Telephone:  (305) 537-9565
Facsimile:  (305) 537-9567

By: */s/ Marissel Descalzo*
    Marissel Descalzo, Esq.
    Florida Bar No. 669318
    mdescalzo@tachebronis.com
    service@tachebronis.com
    *Counsel for Claudia Diaz Guillen*

The government objects to producing a bill of particulars on the ground that it cannot be forced to disclose its "legal theory of the case and to outline the evidence that will be put forth at trial via witness testimony and documents." Government's Opposition to Motion for Bill of Particulars, [D.E. 112] ("Opposition") at 8. That is not what Ms. Diaz Guillen seeks through her motion.

Ms. Diaz Guillen is seeking basic information that the government routinely provides – either voluntarily or under court order. Here, the government is seeking to block all access to information. Not only is the government refusing to clarify its vague allegations in the Superseding Indictment, but it is also refusing to comply with the Standing Discovery Order and its *Giglio* obligations until a protective order is in place. Opposition at 8. These are unnecessary roadblocks designed to inhibit Ms. Diaz Guillen's preparation for trial and her ability to understand the charges against her and why she stands accused of serious federal crimes in a country to which she has not traveled since 2011.

The government should have the answers to the particulars at its fingertips. Fairness and the law dictate that it should share these particulars with Ms. Diaz Guillen. The only explanation for why the government is refusing to act in a transparent manner here is because it does not have the evidence it claims.

In its Opposition, the government claims that the information provided in discovery is sufficient. Opposition at 8. The government also attaches five exhibits,

2

which it notes it is not required to provide, but is doing so to "assuage any concerns this Court may have regarding jurisdiction." *Id.* at 11. Yet, the Opposition and attached exhibits do nothing to explain why this Court has jurisdiction over Ms. Diaz Guillen. These exhibits are the same exhibits the government provided to the defense in a so called "reverse proffer.[1]" These documents do nothing to explain why Ms. Diaz Guillen is before this Court. Significantly, only three documents contain Ms. Diaz Guillen's name. Two documents appear to be official documents from the National Treasury of Venezuela confirming that the Treasury accepted Peter Valero's offer to purchase a bond on behalf of Bellsite, a Swiss company. *See* Opposition at Exhibit 3. The document is signed in Ms. Diaz Guillen's official capacity as the Treasurer of Venezuela. The bond is in pounds and the payment is in Bolivars. There is nothing on the face of the bond that reflects a preferential price. The purchase price is 17% above the value of the bond. Moreover, there is nothing on the face of these transactions that reflect a nexus to the United States. The third document is an email from Raul Gorrin to his Swiss bank requesting funds be deposited in Venezuela from his Swiss account for the purchase of a bond. *See* Opposition at Exhibit 4. The transaction referenced in Exhibit 4 is not the same as

---

[1] The Opposition claims that the government has repeatedly offered a limited reverse proffer, which the Defendant declined. Opposition at 8. This is not true. The government provided the documents attached, except for Exhibit 3 to the Opposition to undersigned counsel. The Parties participated in a zoom call to discuss the documents. The emails scheduling the Zoom call are attached hereto as Exhibit 1. The Zoom call and the documents did nothing to enlighten Ms. Diaz Guillen as to why she is charged here. This was the only offer for a reverse proffer.

that in Exhibit 3. Moreover, the movement of monies referenced in Exhibit 4 are going from Switzerland to Venezuela. Again, there is no United States nexus in relation to these transactions.

The government's jurisdictional hook to which it clings, and which it claims is obvious, appear to be based on two transactions, a spreadsheet, and one corporation.

First, the United States based Patric Love Holding, Inc. The government claims that jurisdiction exists because a corporate document pulled from sunbiz.org includes Ms. Diaz Guillen's husband's name – but not Mrs. Diaz Guillen --- . Mr. Velazquez Figueroa appears as a director of the United States based company on paperwork filed on Sunbiz.org[2]. Even though Mr. Velazquez Figueroa's name is printed on the document, his signature is not included in the document. Instead, Mercedes Torres appears to have signed that document. The document also lists a Hallandale Beach Florida Penthouse address – an address which has no discernible connection to Mrs. Diaz Guillen or her husband. To claim jurisdiction based on this lone corporate document borders on absurdity.

Second, on May 16, 2013, a wire in the amount of $4,000,000 was wired by Raul Gorrin to a Patric Love Holding, Inc.'s account in the United States. The government concludes that: of course, why else would Raul Gorrin wire funds to Patric Love Holdings, Inc., if not for the benefit of Ms. Diaz Guillen and her

---

[2] Interestingly, anyone can go on Sunbiz.org pay a fee and attach a name to a corporation. *See* Sunbiz.org Corporation application attached hereto as Exhibit 2.

husband?  Interestingly, Ms. Diaz Guillen was no longer the Treasurer of Venezuela in May 2013.  Neither Ms. Diaz Guillen nor her husband traveled to the United States on or after May 2013. The government has not provided any evidence that Ms. Diaz Guillen or her husband received any wires from the United States on or after May 2013.  Most importantly, and something the government omits, is that the Patric Love Holding, Inc's. bank account was opened and controlled by one person – Mercedes Torres.  *See* Patric Love Holding, Inc. Bank Account Opening Paperwork attached hereto as Exhibit 3.  Raul Gorrin has also publicly pronounced that this transfer was for the benefit of Mercedes Torres.



    These attenuated circumstances are a far cry from obvious, critical facts establishing jurisdiction.  Moreover, based on the discovery, a lot of which relates to Raul Gorrin and not Ms. Diaz Guillen, Mr. Gorrin is a very wealthy individual.

Mr. Gorrin was sending money all over the world to lots of people for reasons unknown to the defense, but which have no connection to Ms. Diaz Guillen.

The next jurisdictional hook is a spreadsheet with the initials "AV", which the government claims is a reference to Ms. Diaz Guillen's husband – Adrian Velazquez Figueora. The spreadsheet seems to track expenditures in Bolivars – not dollars. Again, these transactions occur completely outside the United States. There is no nexus to the United States.

The last so called jurisdictional hook is a transfer to Interglobal Yachts, a United States based company, that the government claims was "for the benefit of" Ms. Diaz Guillen and her husband for the purchase of a yacht. Raul Gorrin, himself, has affirmatively refuted this claim.



It is unclear why the government persists in attributing this transfer to Ms. Diaz Guillen and her husband.

Additionally, the government has affirmatively responded in response to a request for *Brady* that the government has not identified an email account associated with Ms. Diaz Guillen, any bank account associated with Ms. Diaz Guillen, and that her name does not appear on any spreadsheets purportedly prepared by Raul Gorrin and his assistants to track distributions of money. There is absolutely no trace of Ms. Diaz Guillen here.

The Superseding Indictment, the discovery, the government's response to *Brady*, and the government's Opposition leave Ms. Diaz Guillen in the same place she was following this Court's hearing on her Motion to Dismiss the Indictment for Lack of Jurisdiction – absolutely bewildered as to why she is standing accused in the United States.

In opposing the request for a bill of particulars, the government criticizes Ms. Diaz Guillen for failing to cite to Eleventh Circuit law. Ms. Diaz Guillen did provide several Eleventh Circuit cases discussing the instances when a bill of particulars are required. Motion for Bill of Particulars, [D.E. 110] at 4-5. It bears repeating that a bill of particulars serves to "[1] inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense… [2] minimize surprise at trial… and [3] to enable him to plead double jeopardy in the event of a later

prosecution for the same offense." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting *United States v. Cole,* 755 F.2d 748, 760 (11th Cir.1985).

In fact, it is not unusual for Courts in this district to require much more than what is requested in Ms. Diaz Guillen's Motion.  In *United States v. Ramamurthy*, et al, Case No. 18-cr-20710, Chief Judge Cecilia Altonaga required the government to lay out its trial plan, including requiring the government to describe "how you plan to try it and how they would be present or not present, ad I want you to give me and them a road map of how to do that." *See* [D.E. 185-1] at 17.  And when the government failed to provide an adequate roadmap, the Court provided further instructions and required further detail.  Specifically, the Court required the government to provide an Excel spreadsheet showing each day of trial, identifying name of witness per trial day, name of defendant and count the witness applied to, and generally what the witness is going to testify too.  *See United States v. Ramamurthy, et al*, Case No. 18-cr-20710, [D.E. 193] at 22.  The Court's rulings in the Ramamurthy case make clear that Ms. Diaz Guillen is not requesting anything unusual, or even burdensome for the government.

Finally, the government, in its Opposition, refuses to identify the foreign law and/or Venezuelan criminal statute that was allegedly violated. [D.E. 112] at 10.  At the hearing on Ms. Diaz Guillen's Motion to Dismiss for Lack of Jurisdiction the government stated:

```
 2        MR. HAYDEN:  Your Honor, the specified unlawful
 3   activity, if you look at the very -- I think it's -- well, it's
 4   paragraph 32, but it's at the very end of it after the listed
 5   counts.  You'll see that we list the specified unlawful
 6   activities as a violation of the Foreign Corrupt Practices Act
 7   under Title 15, 78dd-2 and dd-3.  And then also the other is an
 8   offense against a foreign nation, specifically Venezuela,
 9   involving bribery of a public official and the
10   misappropriation, theft, and embezzlement of public funds by or
11   for the benefit of that public official.
12        THE COURT:  So that bribery of a public official is a
13   crime in Venezuela?
14        MR. HAYDEN:  Yes, Your Honor.  And we intend to
15   notice, you know, a foreign -- a determination of foreign law
16   under 26.1 at a date in the near future.
```

[D.E. 97] July 12, 2022 Hearing on Motion to Dismiss, Transcript at 9 It is inexplicable why the government won't identify the law[3]. Instead, it wants Ms. Diaz Guillen to look to open sources. Opposition at 10. Again, the government brought this case. Identifying the Venezuelan criminal statute[4] that was allegedly violated is

---

[3] The government's claim that it will identify a foreign law expert and issue a foreign law determination under Fed.R.Crim.P. 26.1 is insufficient in terms of complying with the law. The undersigned has not uncovered a single reported decision (and the government has not cited one) which permits the government to file a post-indictment notice of a law which should have been part of an indictment. The true mechanism for doing so is to file a superseding indictment. Moreover, to date, the defense has not received any expert disclosures.

[4] What is equally as concerning is that the government continues to describe the offense conduct of Mr. Gorrin as conduct that was *for the benefit of* Mrs. Diaz Guillen and her husband. *See* Opposition at 7 ("Specifically, an answer to requests 1, 2 and 3 can be found, in part, in Paragraph

essential to the Superseding Indictment and it fails and is subject to dismissal without it. *See Keck v. United States,* 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 (1899), the Supreme Court held that an indictment charging the defendant with the importation of diamonds contrary to law was insufficient:

> The allegations of the count were obviously too general, and did not sufficiently inform the defendant of the nature of the accusation against him. The words, "contrary to law," contained in the statute, clearly relate to legal provisions not found in Section 3082 itself; but we look in vain in the count for any indication of what was relied on as violative of the statutory regulations concerning the importation of merchandise. The generic expression "import and bring into the United States," did not convey the necessary information, because importing merchandise is not per se contrary to law, and could only become so when done in violation of specific statutory requirements.

*Keck,* at 437, 19 S.Ct. at 455; *see also Babb v. United States,* 218 F.2d 538, 541 (5th Cir. 1955) (holding that the "indictment should have alleged some fact or facts showing that the cattle in question were imported or brought in contrary to some law; and that it is not enough to say that they were imported or brought in `contrary

---

21, noting that co-defendant Gorrin would send wires to vendors for her and Velasquez's benefit. But for Defendant's or Velasquez's instruction, those wires would not have been transmitted for Defendant's benefit."). Nowhere in the charging statutes (the money laundering statutes or the FCPA) will this Court find the words "for the benefit." Instead, that language is taken directly from 18 U.S.C. Section 1956(c)(7)(B)(iv), the other alleged specified unlawful activity (SUA) in this case. *Id.* (listing the types of offenses against a foreign nation that form the SUA "with respect to a financial transaction occurring in whole or in part in the United States" as " bribery of a public official, or the misappropriation, theft, or embezzlement of public funds *by or for the benefit of a public official."*). Thus, not only is this language premised entirely on the yet-to-be specified Venezuelan law but the government appears to misconstrue the plain language of that statute. Only the misappropriation, theft or embezzlement of public funds "by or for the benefit of a public official" language qualifies as an SUA pursuant to Section 1956(c)(7)(B)(iv). Here, there are no facts which indicate or even suggest that Mr. Gorrin or Mrs. Diaz Guillen embezzled, misappropriated, or have stolen public funds for the benefit of Mrs. Diaz Guillen.

to law'"). In none of these cases did the indictment specify the statute defendant's actions were contrary to, or the actions defendant had taken that were sufficient to constitute a violation of law. *See also Steiner v. United States,* 229 F.2d 745, 748 (9th Cir. 1956) (holding indictments to be defective, because they "failed to state what law . . . the importation [of psittacine birds] was contrary to, or in what respect such importation was contrary to law").

A dismissal of this charge is the appropriate remedy given that, at this late date less than 70 days from trial, the government still has not provided Mrs. Diaz Guillen with notice of the law she supposedly violated and which law was the supposed linchpin of the bribery promotion scheme alleged in the Superseding Indictment. *Stirone v. United States*, 361 U.S. 212, 215-16 (1960) ("Ever since *Ex parte Bain*, 121 U.S. 1. was decided in 1887 it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself.").

## CONCLUSION

Ms. Diaz Guillen is no closer today than she was on the date of her arraignment to understanding why she has been extradited to a foreign country, pretrial detained to face charges for conduct that purportedly occurred over 9 years ago, in a country that she has not stepped foot in since 2011. The minimum the government can do is act in a transparent manner that justice requires and provide responses to the following particulars:

(1) Identify any conduct committed by Mrs. Diaz Guillen which demonstrates that Ms. Diaz Guillen caused the wires identified as Transfers 1-4. [5]

(2) Identify any acts which demonstrate that Ms. Diaz Guillen aided and abetted in the transmission, transportation, or transfer of wires identified as Transfers 1-4.

(3) Identify the specific benefit Ms. Diaz Guillen or her husband, Mr. Figueroa Velazquez, received from the wires identified as Transfers 1-4.

(4) Identify by date, time, location, and transaction identification number the specific foreign currency exchange transactions that Mrs. Diaz Guillen authorized for co-defendant Raul Gorrin or his companies at a favorable rate as alleged in Counts 1-2 of the Superseding Indictment.

(5) Identify by date, time, and location the alleged bribes paid by Raul Gorrin to Ms. Diaz Guillen to obtain the supposed favorable rates, *i.e.* the alleged "improper advantage" (Superseding Indictment at 3-4) and identify each foreign currency exchange transaction to which each alleged bribe to Mrs. Diaz Guillen was paid.

(6) Identify, by date, time, and location the alleged bribes, expenses, or things of value paid by Gorrin to Mrs. Diaz Guillen and/or Mr. Figueroa Velazquez to promote the supposed illegal bribery scheme and/or to

---

[5] *See* Dkt. No. 77 at 8 and *supra* (identifying Transfers 1-4).

"obtain and retain business for Raul Gorrin." (Superseding Indictment at 4-11, 13-15).

(7) Identify the Venezuelan criminal law(s) that was supposedly violated and which gave rise to the allegations in Counts 2, 9, and 10 that Mrs. Diaz Guillen promoted violations of a specified unlawful activity pursuant to 18 U.S.C. Section 1956 (c)(7)(B)(iv), to wit violations of Venezuelan criminal law, in violation of 18 U.S.C Sections 1956(h) and 1956(a)(2)(A).

Because the government refuses this basic request, Ms. Diaz Guillen moves this Court to grant its motion and order the government to immediately provide the requested particulars in order for Ms. Diaz Guillen to effectively prepare for trial scheduled for October 17, 2022.

Respectfully submitted,

TACHE, BRONIS AND DESCALZO, P.A.
150 S.E. Second Avenue, Suite 600
Miami, Florida 33131
Telephone:   (305) 537-9565
Facsimile:    (305) 537-9567

By: /s/ Marissel Descalzo
　　　Marissel Descalzo, Esq.
　　　Florida Bar No. 669318
　　　mdescalzo@tachebronis.com
　　　service@tachebronis.com
　　　*Counsel for Claudia Diaz Guillen*

13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been filed via electronic mail with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to all attorneys who have made an appearance on this 22nd day of August, 2022.

                                                By: */s/ Marissel Descalzo*
                                                      Marissel Descalzo, Esq.