U.S. DISTRICT COURT E.D.N.Y.

★ FEB 0 4 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FEDERAL DEFENDERS OF NEW YORK, INC.,
on behalf of itself and its clients detained at the
Metropolitan Detention Center – Brooklyn,

*Plaintiff*,

v.

FEDERAL BUREAU OF PRISONS and
WARDEN HERMAN QUAY, in his official
capacity,

*Defendants*.

No. CV 19- 

BRODIE, J.

GOLD, M.J.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Federal Defenders of New York, Inc. (the "Federal Defenders"), by and through its undersigned counsel, for its Complaint against Defendants Federal Bureau of Prisons ("BOP") and Warden Herman Quay, alleges as follows:

### INTRODUCTION

1. There is a humanitarian crisis taking place at the main federal detention facility in this District. The conditions at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), are inhumane, violate the constitution, and are causing irreparable harm to both MDC detainees and the Federal Defenders.

2. On Sunday, January 27, 2019, there was a fire at the MDC. The fire affected the power source for the MDC's West Building, which houses male inmates, and resulted in what the BOP has characterized as a "partial power outage."

3. Defendants' response to the fire has been woefully inadequate. They have been slow to acknowledge the problem and have not taken sufficient steps to obtain temporary supplies of electricity or heat, or to repair the damage.

4. Critically, since January 27, there has been near-total cancellation of legal and family visiting for male inmates at the MDC. Defendants cancelled legal visiting each day between January 27 and February 2, and substantially curtailed visiting on February 3.

5. Further, Defendants have issued misleading statements to the public and to the courts about the significantly deleterious conditions facing MDC inmates.

6. Defendants' misstatements were made manifest when a Federal Defenders attorney was given access to the MDC—access which Defendants granted only following the issuance of an administrative order by the Chief Judge of this District. That visitation revealed that the Defendants' response to the fire has caused significant and serious deprivations of the constitutional rights of the MDC detainees.

7. The Defendants' deprivation of MDC detainees' constitutional rights has caused and is causing irreparable harm to the Federal Defenders and its clients.

### THE PARTIES

8. Plaintiff Federal Defenders of New York, Inc. is a New York not-for-profit corporation with offices in Brooklyn, Central Islip, Manhattan, and White Plains, New York. Federal Defenders is dedicated to offering public defense services to indigent persons in federal criminal cases in the Eastern and Southern Districts of New York.

9. Defendant BOP is a component of the United States Department of Justice. It is the federal agency that administers federal jail and prison facilities. It is responsible for the custody and care of more than 180,000 inmates nationwide.

10. Defendant Herman Quay is the Warden of the MDC in Brooklyn.

2

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702. The Federal Defenders seek declaratory and injunctive relief pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) and (e)(1) because a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred within this District, the Federal Defenders reside in this District, and Defendants are officers, employees, or agencies of the United States acting in their official capacity.

## BACKGROUND

**A. The MDC**

13. The MDC is the principal federal pre-trial detention facility in this District. It is operated by Defendant BOP and led by Defendant Herman Quay, the warden of the facility.

14. The vast majority of the more than 1,600 detainees held at the facility are being held prior to trial and thus are presumed innocent of the crimes for which they may ultimately be tried.

15. The MDC is located in the Sunset Park neighborhood of Brooklyn, New York. It consists of two buildings, the West Building, which houses male inmates, and the East Building, which houses female inmates. BOP regulations, and an Institution Supplement for MDC issued by Defendant Quay, set forth specific and detailed rules for legal and social visitation.

16. The MDC's standard practice is to allow for attorney visitation from 8:00 a.m. to 8:00 p.m. seven days per week.

17. MDC inmates rely heavily on electricity beyond just the basic services related to heating, ventilation, and air conditioning. For example, inmates rely on CorrLinks, the BOP's e-

3

mail system, to communicate with counsel and family, and also use electronic platforms to submit medical requests, prescription refills, and administrative grievances.

**B.     The Fire at the MDC**

18.     On January 27, 2019, a power source in the switch gear room in the West Building of the MDC caught fire, leading to partial yet wide-ranging power outages.

19.     Following the fire, MDC inmates reported to attorneys at the Federal Defenders that there was little or no heating, no or limited hot water, minimal access to electricity, and near total lack of access to certain medical services, telephones, televisions, computers, laundry, or commissary. Inmates also reported that they smelled noxious fumes; some reported seeing BOP officers wearing masks. No masks were supplied to inmates.

20.     Further, the BOP cancelled both legal and social visiting in the aftermath of the fire.

21.     Legal and social visiting were cancelled entirely on January 28, January 29, January 30, January 31, February 1, and February 2.

22.     On February 2, 2019, the BOP informed the Federal Defenders that legal visiting would resume at MDC the next day. On February 3, however, less than four hours after legal visiting resumed, visiting attorneys began to smell a strong chemical scent, and started coughing, when pepper spray was dispersed in the visiting room. Legal visits were then abruptly cut short, and the visiting attorneys were escorted out of the MDC. Public reports indicate that BOP officials pepper sprayed individuals that had assembled in the lobby of the MDC.

23.     As a result, for each day since the fire, up to the date of this Complaint, the people housed at MDC were prevented from meeting with the attorneys that were representing them in pending criminal proceedings.

4

C.   **The BOP's Stonewalling and False Statements**

24.   During the week following the fire, attorneys at the Federal Defenders sought to engage with BOP officials regarding troubling reports they had received from people held at MDC.

25.   BOP officials were largely non-responsive. They refused to provide detailed or accurate information about the conditions at MDC or the reasons that legal visitations were cancelled.

26.   Specifically, BOP officials frequently did not respond to certain inquiries by attorneys at the Federal Defenders, and, when they did respond, they offered explanations that were inconsistent with the conditions that had been described by the MDC inmates. For example, one BOP attorney represented to a Federal Defenders attorney on two separate occasions that he was "informed that the power outage did not impact the heating in the institutions" and that "the heat is operational." As discussed below, however, the power outage following the fire had a significant impact on the MDC's heating system.

27.   On January 30, 2019, a BOP official informed an attorney at the Federal Defenders that legal visitation rights would resume "as soon as [the visiting room in the West Building] is usable," but represented that "if visitation is not returned to normal by next week, a temporary procedure will be implemented to allow for legal visits to take place in the east visiting room." The BOP has never explained why that temporary procedure was not put in place immediately. That procedure is, in fact, routinely used for co-defendant meetings.

28.   On February 1, 2019, Defendant Quay, the warden of the MDC, provided a purported update as to the conditions at the MDC to the United States District Court for the Southern District of New York. Defendant Quay reported the following:

5

Inmates have not been confined to their cells and are still allowed leisure/recreational activities. There is currently no TV/Internet. Inmates still have access to Public Defender Phones which are working. Heat has never been impacted and is monitored regularly due to the cold weather. Heat is in the high 60s and low 70s. Hot water has not been impacted as it is on the same system as the heat. There are no problems with meals, prisoner are still receiving hot meals. There is no problem with medical, medications are still delivered twice daily. The only issue related to medication is that the computers are not working so you can not request medical through the computers. Medical still can be requested through their units and also during the twice daily medical runs. The visiting room is without power which is why there was no visitations. The staff has temporary wiring in place and should have attorney visiting up today.

29. Later that day, following an order from Chief Judge Irizarry, Deirdre von Dornum, Attorney-in-Chief of the Federal Defenders for the Eastern District, visited the MDC. As set forth in detail in her declaration accompanying the Federal Defender's application for a temporary restraining order, filed contemporaneously herewith and incorporated by reference herein, von Dornum discovered that much of what Defendant Quay told the Southern District was materially false and/or misleading. For example, the attorney at Federal Defenders witnessed the following:

    a.    the facility was very cold (including one unit in which cold air was blowing from facility vents), such that BOP officers were wearing multiple layers and scarves around their heads, yet many inmates were wearing only short-sleeved shirts and light cotton pants;

    b.    the lights were not functioning in individual cells, leaving the cells in total darkness;

    c.    inmates widely reported that they had been unable to fill medical prescriptions or request new medical care because the medical computer

system was not in operation, leading to numerous instances in which serious medical conditions were not receiving necessary treatment;

d. inmates were unable to submit administrative grievances;

e. inmates had not received clean clothing or bedding since the fire, forcing one inmate, for example, to sleep on bedding that was made bloody due to his ulcerative colitis;

f. large fluctuations in water temperature and potability;

g. one MDC official reported that certain inmates had not been allowed outside of their cells at all since the date of the fire; and

h. certain inmates received only cold food for the several days following the fire.

30. Despite what was witnessed by von Dornum, the BOP issued a press release the following day, February 2, 2019, which repeated certain of the materially false or misleading statements made by Defendant Quay. Most notably, the BOP press release represented that "medical services continue to be provided," even though numerous inmates reported not receiving needed medical care.

31. On February 3, 2019, the BOP updated its press release, including three principal additions. *First*, that heating to the building "was not affected by the power outage." *Second*, that "[m]edical staff have checked and continue to check each inmate cell-by-cell periodically and continue to dispense required medications and address the medical needs of the inmate population." *Third*, that "[l]egal visits will be available today." Of course, those first two representations wholly contradict what von Dornum learned and observed during her visit two days earlier. As for the third, as noted above, limited legal visits were permitted in the morning

7

before legal visitation was abruptly cut short and the visiting attorneys were escorted out of the MDC.

**D.     The Harm to the Federal Defenders and Their Clients**

32.     The events described above have significantly impacted the Federal Defenders' ability to achieve the organization's principal objectives. The Federal Defenders have been unable to meet with or speak privately with their clients detained at the MDC, which has impaired client representation in several ways.

33.     For example, the Federal Defenders have been unable to review discovery files with clients who are deciding whether to go to trial, how to plead, and how to frame a sentencing strategy. Additionally, presentence interviews with Federal Defenders' clients, as well as expert interviews, have been cancelled, which will significantly delay these clients' access to justice. Meeting cancellations also have lengthened Federal Defenders' clients' stays at MDC because clients being considered for reentry programs could not be interviewed and thus released into those programs.

34.     The events described above have caused a significant drain on the Federal Defenders' resources. The Federal Defenders have been forced to spend significant time, focus, and resources in addressing the issues at the MDC and attempting to visit clients there.

35.     The Federal Defenders (and their clients at MDC) will be irreparably harmed if the above conduct is not preliminarily and permanently enjoined.

## CLAIMS

### FIRST CAUSE OF ACTION
### (Violation of the Sixth Amendment Right to Counsel)

36.     The Federal Defenders incorporate all of the preceding paragraphs as if fully set forth herein.

37. The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Actions that substantially interfere with the right to counsel constitute a violation of the Sixth Amendment.

38. Defendants have cancelled nearly all legal visiting in the West Building of the MDC since January 27 until the date of this Complaint. Their refusal to provide detailed information about these cancellations to defense counsel, as well as the dire conditions in which MDC inmates find themselves, have only made it more difficult for inmates to access their attorneys.

39. These actions constitute substantial interference with Federal Defender clients' right to counsel, in violation of the Sixth Amendment.

## SECOND CAUSE OF ACTION
### (Violation of the Administrative Procedure Act)

40. The Federal Defenders incorporate all of the preceding paragraphs as if fully set forth herein.

41. BOP regulations require wardens to "provide the opportunity for pretrial inmate-attorney visits on a seven-days-a-week basis." 28 C.F.R. § 551.117(a).

42. BOP regulations also prohibit any limitation of "the frequency of attorney visits" for all inmates, and obligate wardens to "make every effort to arrange for a visit" even when an attorney is unable to provide prior notification. 28 U.S.C. § 543.13(b), (d).

43. The BOP's failure to follow its own regulations is arbitrary and capricious and contrary to the law, and thus a violation of the Administrative Procedure Act. 5 U.S.C. § 706(2).

## REQUEST FOR RELIEF

44.     WHEREFORE, Plaintiff respectfully requests that the Court:

   a.     Declare that Defendants' denial of legal visiting violates the Sixth Amendment to the U.S. Constitution by improperly interfering with the right to counsel;

   b.     Declare that Defendants' denial of legal visiting arbitrarily and capriciously fails to comply with the BOP's own regulations, in violation of the Administrative Procedure Act;

   c.     Preliminarily and permanently enjoin Defendants and their officers, agents, servants, employees, and attorneys, and all persons acting in concert or participation with them, from taking any actions to prevent legal visiting from taking place on a daily basis at the MDC, and from taking any action to prevent social visiting for all inmates from occurring in accordance with the MDC's normal schedule and procedures for such visits;

   d.     Hold a hearing to evaluate the conditions of confinement that are infringing the constitutional rights of inmates at the MDC and require the Defendants to supply information about those conditions;

   e.     Appoint a special master to inspect the MDC and undertake the factfinding necessary to determine whether Defendants are protecting the constitutional rights of inmates in their custody;

   f.     Award Plaintiff's attorneys' fees, costs, and other expenses to the extent permitted by law; and

   g.     Award such other and further relief as the Court determines to be just and proper.

Dated: Brooklyn, New York
February 4, 2019

Respectfully submitted,

*Sean Hecker* (signature)

Sean Hecker
Jenna M. Dabbs
Joshua Matz
Derek Wikstrom
Matthew J. Craig
Benjamin D. White (*admission pending*)
KAPLAN, HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883
shecker@kaplanhecker.com
jdabbs@kaplanhecker.com
jmatz@kaplanhecker.com
dwikstrom@kaplanhecker.com
mcraig@kaplanhecker.com
bwhite@kaplanhecker.com

*Counsel for Plaintiff Federal Defenders of New York, Inc.*