UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  18-cr-80160-DIMITROULEAS

UNITED STATES OF AMERICA

v.

CLAUDIA PATRICIA DIAZ GUILLEN
ADRIAN JOSE VELAZQUEZ FIGUEROA

                    Defendants.
_____/

**MEMORANDUM IN SUPPORT OF *GARCIA* HEARING TO PERMIT ANDREW S
FELDMAN, ESQ. TO SERVE AS CO-COUNSEL FOR MRS. CLAUDIA DIAZ
GUILLEN AT TRIAL**

> */s/Andrew S. Feldman*
> FELDMAN FIRM PLLC
> Florida Bar No. 60325
> Email: afeldman@feldmanpllc.com
> **FELDMAN FIRM PLLC**
> 150 S.E. 2nd Avenue, Suite 600
> Miami, Florida 33131
> Direct: (305) 714-9474

## INTRODUCTION

The undersigned entered a notice of temporary appearance on behalf of Mr. Velazquez Figueroa on June 27, 2022. Dkt. No. 83. The purpose of the appearance was to move to dismiss the Superseding Indictment. See Dkt. No.77. The government then moved to strike Mr. Velazquez-Figueroa from the pending joint Motion to Dismiss based on the fugitive disentitlement doctrine. The court granted that Motion. Dkt. No. 96.

Approximately two months later, with Mrs. Diaz-Guillen's trial rapidly approaching, the undersigned entered a permanent appearance on behalf of Mrs. Diaz-Guillen. Dkt. No. 123. Given that Mrs. Diaz Guillen's trial is 41 days away and she has demanded a speedy trial, it is critical that Mrs. Diaz Guillen be permitted to have counsel of her choice pre-trial and counsel of her choice at trial. The undersigned is in a unique position to occupy that role. Counsel is familiar with the facts of this case, the potential witnesses in this case, and the legal and evidentiary issues in this case. The undersigned has also tried cases with Mrs. Descalzo as co-counsel in multi-week trials. [1]

To this end, your Honor issued an Order (Dkt. No. 130) and requested that the parties submit memoranda regarding the issue of whether defendant Adrian Velazquez Figueroa may "appear" in federal court for purposes of a *Garcia* hearing pursuant to Federal Rule of Criminal Procedure 44 or any other authority. In court on August 31, 2022, the government did not provide any basis for their objection other than Mr. Velazquez-Figueroa is a "fugitive" and therefore he presumably has no rights until he appears in the United States to face the Superseding Indictment. The government, without any basis, has now taken that position again. The government's Notice

---

[1] Both the undersigned and Mrs. Descalzo picked a jury in *U.S. v. Jessica Palacio*, 21-cr-20301-DPG (S.D. Fla.) on September 2 in Miami, Florida. That trial is scheduled to last until September 16, 2022.

relies heavily on a 3-page D.C. Court of Appeals decision, *United States v. Campbell,* 352 F.2d 359, 360 (D.C. Cir. 1965) which pre-dated Rule 44, and in which one lawyer represented two defendants at a joint trial in a case involving stolen property. In short, the Notice seeks the extraordinary relief that no federal court (of which the undersigned is aware) has granted.

The government also does not take a clear position on whether they would object to Velazquez-Figueroa's appearance via Zoom or any other virtual platform for purposes of a Rule 44 hearing. Undoubtedly, such a hearing would be the most efficient, expeditious, and logical way to comply with the personal advisement language in Rule 44 and to protect each defendant.

In addition to coordinating a virtual hearing via any of the numerous virtual platforms that federal courts now regularly use, the court has the discretion to fashion alternate ways to comport with Rule 44 including:

- Obtain signed and executed waivers from Mrs. Diaz Guillen and Mr. Velazquez Figueroa and personally advise Mrs. Diaz Guillen of her rights under Rule 44.

- Obtain written and executed conflict waivers from each defendant with the precise language required by the Court and personally advise Mrs. Diaz Guillen of her rights under Rule 44.

- Submit a transcript to your Honor from a court reporter reflecting Mr. Velazquez-Figueroa's waiver where the waiver and the language in the waiver would be provided by the court, then translated by a certified Spanish translator, and then provided to Mr. Figueroa. In addition, conduct a Rule 44 hearing where Mrs. Diaz Guillen is personally advised of her rights under Rule 44.

- Submit a video- recording to your Honor of Mr. Velazquez-Figueroa being advised of his rights, waiving his rights, and executing the conflict waiver.  In addition, conduct a Rule 44 hearing where Mrs. Diaz Guillen is personally advised of her rights under Rule 44.

**ARGUMENT**

A.  **Joint Representation in Consecutive Trials**

Claudia Patricia Diaz Guillen is *married* to Adrian Jose Velazquez Figueroa ("Defendants"). Defendants are nationals of Venezuela and dual citizens of Venezuela and Spain.

 Mr. Velazquez Figueroa remains in Spain where extradition is still pending. Mrs. Diaz Guillen, on the other hand, was extradited to the United States and has been detained since May of this year. Mrs. Diaz Guillen is scheduled to begin trial on October 17, 2022. The undersigned intends to represent Mrs. Diaz Guillen at her trial which is scheduled for October 17, 2022, and then to represent Mr. Velazquez-Figueroa at his separate trial.[2] Accordingly, the contemplated joint representation is not the same as joint representation of a husband and wife in the same trial with the same jurors and the same witnesses.[3] For these reasons, the contemplated joint representation is more akin to dual representation in separate proceedings.

In the dual representation setting, conflicts may still arise, and a Rule 44 inquiry may become necessary. The threshold question is whether there is an actual – not hypothetical -- conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 346–48, 100 S.Ct. 1708, 1717–18, 64 L.Ed.2d

---

[2] There is of course a chance – depending on the outcome of Mrs. Diaz Guillen's trial – that the government would not seek Mr. Velazquez-Figueroa's extradition and/or that Spain would lawfully reject the final delivery of Mr. Velazquez-Figueroa to the authorities of the United States pursuant to its Extradition Treaty.

[3] Even in those cases, it is well settled in this district that joint representation of husband and wife is permissible. *See e.g., U.S. v. Reidy Gonzalez*. 16-CR-20464-MGC (S.D. Fla.); *U.S. v. Hernandez and Villavicencio*, 18-CR-20146-DPG (S.D. Fla.) (husband and wife and no hearing conduct); *U.S. v. Rodolfo Gonzalez Garcia*, 19-CR-20005-UNGARO (S.D. Fla.) (husband and wife); *U.S. v. Valdez*. 12-CR-20275-KMM (S.D. Fla.) (husband and wife); *United States v. Robaina*, No. 13-20346-CR-UNGARO/TORRES, at *23 (S.D. Fla. June 26, 2013) ( husband and wife accepting waivers at Garcia hearing); *see also U.S. v. Guillermo Delgado, et al.* 14-cr-20359 (S.D. Fla) (brothers).

4

333 (1980) (multiple representation at separate trials where there appeared to be no conflicting defense strategies did not give rise to duty to inquire); *U.S. v. Aiello*, 814 F.2d 109, 112 (2d Cir. 1987) (no duty to inquire attached when trial judge was aware of dual representation in separate proceedings – defendant and witness against defendant at trial -- and there was no indication of divergent interests or defenses); *United States v. Valois,* 915 F. 3d 717, 727-28 (11th Cir. 2019) (affirming conviction for defendant claiming a conflict of interest based on attorney's representation of two drug conspiracy defendants in separate proceedings); *see also United States v. Stantini,* 85 F. 3d 9 (2d. Cir. 1996) (rejecting habeas challenge to conviction by client-defendant where same lawyer jointly represented clients in separate but related proceedings).

In *Cuyler,* three defendants were all represented by the same two privately retained attorneys in a murder prosecution. One defendant was represented by those same attorneys at the first trial and the remaining co-defendants were tried separately and acquitted but were represented by those same attorneys. One of the convicted defendants petitioned for a habeas corpus based on the supposed conflict. The Supreme Court rejected that challenge. In doing so, the Court reinforced that "trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. "An `attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.'" *Cuyler,* 446 U.S. at 447, quoting *State* v. *Davis*, 110 Ariz. 29, 31, 514 P.2d 1025, 1027 (1973).

*United States v. Mers,* 701 F.2d 1321 (11th Cir. 1983) is also instructive. There, the trial court did not conduct a *Garcia* hearing where defense counsel represented 4 co-defendants at the *same trial.* On appeal, defendant sought reversal of the conviction because of the trial court's failure to conduct *Garcia.*  This Circuit, however, affirmed the conviction finding that failure to

conduct a *Garcia* hearing was harmless error reasoning that there was no actual conflict of interest.

*Mers,* at 1321.In so affirming, this Circuit underscored that:

> We will not find an actual conflict unless appellants can point to "specific instances in the record to suggest an actual conflict or impairment of their interests." Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.

*Id.* at 1328.

Here, just as in the dual representation cases, there is no actual or potential conflict of interest that is likely to arise between Mr Velazquez Figueroa and Mrs. Diaz Guillen by virtue of counsel's representation of Mrs. Diaz Guillen at trial. The central defenses are the same – the government cannot prove its case beyond a reasonable doubt. The legal defenses are the same – the government has not properly established jurisdiction and will not do so at trial and the superseding indictment is time-barred. And, despite the government's insinuations and speculation that one spouse might flip against the other spouse, neither defendant-spouse is interested in cooperating or pleading guilty.

Therefore, the reasoning in these cases supports the conclusion that this Court may satisfy the Rule 44 requirement to implement "appropriate measures to protect each defendant's right to counsel" by accepting the signed and executed waivers from Mrs. Diaz Guillen and Mr. Velazquez Figueroa and by personally advising Mrs. Diaz Guillen of her rights under Rule 44(c). Acceptance of the written waivers combined with a follow-up colloquy with Mrs. Diaz-Guillen is appropriate where, as here, there is good cause to believe there is no conflict of interest that is likely to arise from the successive representation of each spouse in successive trials. *See* Fed. R. Crim. P. 44(c).

In the alternative, this Court may adequately protect each defendant under Rule 44 without *personally* advising Mr. Velaquez-Figueroa as follows:

- Obtain signed and executed waivers from Mrs. Diaz Guillen and Mr. Velazquez Figueroa and personally advise Mrs. Diaz Guillen of her rights under Rule 44.

- Obtain written and executed conflict waivers from each defendant with the precise language required by the Court and personally advise Mrs. Diaz Guillen of her rights under Rule 44.

- Submit a transcript to your Honor from a court reporter reflecting Mr. Velazquez-Figueroa's waiver where the waiver and the language in the waiver would be provided by the court, then translated by a certified Spanish translator, and then provided to Mr. Figueroa. In addition, conduct a Rule 44 hearing where Mrs. Diaz Guillen is personally advised of her rights under Rule 44.

- Submit a video- recording to your Honor of Mr. Velazquez-Figueroa being advised of his rights, waiving his rights, and executing the conflict waiver.  In addition, conduct a Rule 44 hearing where Mrs. Diaz Guillen is personally advised of her rights under Rule 44.

### B. <u>An in-person hearing is not Required – the Court has Inherent Discretion to Fashion Alternative Ways to Comply with Rule 44</u>

The court maintains the inherent and equitable discretion to comply with Rule 44 as set forth above. Courts in this Circuit regularly exercise their inherent discretion in multiple contexts. *U.S. v. Michael*, 729 F. Supp. 95, 98 (S.D. Fla. 1989) ("We have carefully considered the principles expressed therein, and nonetheless reach the same conclusion. This decision is a "call" by the district judge employing our inherent discretion, and we have made it."); *U.S. v. Snipes*, 751 F. Supp. 2d 1279, 1288 (M.D. Fla. 2010) ("To the extent that the Court has inherent discretion to grant bail pending an application for certiorari and/or an appeal from denial of a post-affirmance motion for a new trial, the Court would, and does, exercise that discretion against granting any further delay in the execution of the judgment entered over two and a half years ago."); *Angora Enterprises v. Condominium Ass'n*, 796 F.2d 384, 387 (11th Cir. 1986) ("the district court could properly have refused to address the merits of the claim by resort to its inherent discretion to

decline to entertain a declaratory action"); *Nowia-Pahlavi v. Haverty Furniture Companies, Inc.*, No. 6:08-cv-36-Orl-19DAB, at *4 (M.D. Fla. Aug. 21, 2008) ("Judge Baker's recommendation is prudent and an appropriate use of the Court's inherent discretion to manage its own docket").

Courts also wield inherent discretion in interpreting multiple rules of criminal procedure including Rule 16(d) (discovery orders); Rule 32 (sentencing proceedings); Rule 11 (plea hearings); Rule 16.1 (pre-trial discovery conferences); and Rule 17.1 (pretrial conferences). Perhaps the best example of how courts wield and continue to wield discretion and flexibility with respect to hearings and proceedings was the pandemic. How courts elected to protect parties, court personnel, and jurors against COVID was discretionary. No two districts were alike and, many times, no two judges were alike in how they treated certain COVID protocols.

The advisory committee notes to Rule 44(c) further support a broad view of the court's discretion in Rule 44(c) proceedings:

> **Under rule 44(c), the court is to take appropriate measures to protect each defendant's right to counsel** unless it appears "there is good cause to believe no conflict of interest is likely to arise" as a consequence of the continuation of such joint representation. A less demanding standard would not adequately protect the Sixth Amendment right to effective assistance of counsel or the effective administration of criminal justice….
>
> **Rule 44(c) does not specify what particular measures must be taken. It is appropriate to leave this within the court's discretion, for the measures which will best protect each defendant's right to counsel may well vary from case to case.**

*See* Advisory Committee Notes, Rule 44(c) (1979) (emphasis ours); *see also U.S. v. Marmolejo*, 1:10CR268-1 1:10CR268-2 1:10CR268-3, at *8 (M.D.N.C. Aug. 18, 2010) ("Few guideposts exist to aid the Court in dealing with this dilemma. *See* Fed.R.Crim.P. 44 advisory comm. notes, 1979 Amend. ("Rule 44(c) does not specify what particular measures must be taken. It is appropriate to leave this within the court's discretion, for the measures which will best protect

each defendant's right to counsel may well vary from case to case."). "One possible course of action is for the court to obtain a knowing, intelligent and voluntary waiver of the right to separate representation, for, . . . `a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests.'")

Finally, permitting this Court to fashion specific measures to comply with Rule 44 is wholly consistent with the directive in Federal Rule of Criminal Procedure 2 which mandates that the Rules – including Rule 44- be interpreted "to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Here, any of the proposed measures. including a virtual appearance, would promote a just determination of this proceeding, would secure simplicity in procedure and fairness in administration, and would eliminate the unjustifiable delay the government seeks to prolong in this case.

### C. **This Court should not apply the Fugitive Disentitlement Doctrine to Strip Mr. Velazquez Figueroa and Mrs. Diaz-Guillen of A Rule 44 Hearing**

Based upon the undersigned's research, no federal court has ever extended the fugitive entitlement doctrine to Rule 44 hearings. This is consistent with the objectives of that doctrine because the fugitive disentitlement doctrine operates to strip "fugitives" of the right to assert certain pre-trial challenges, to file appeals, and to make claims against forfeiture. A Rule 44 hearing is not an attempt to enforce a right, to appeal a ruling, or to assert a pre-trial challenge. Such a hearing is instead designed to safeguard against potential post-conviction Sixth Amendment claims arising from joint representation.

In fact, contrary to the government's limitless view of the fugitive disentitlement doctrine, it emerged from the inherent power to manage appeals at the end of the 19th century when it was applied to prevent fugitives from making unfair use of the judicial system. *United States v.*

*$40,877.59 in U.S. Currency*, 32 F.3d 1151, 1152 (7th Cir. 1993) (stating the Supreme Court's aversion to ruling on a motion when a favorable decision benefits the fugitive defendant and an unfavorable decision can be avoided by the fugitive defendant). It was developed as a rule of criminal appellate procedure when it was invoked to dismiss the appeal of a convicted criminal who escaped from jail during the pendency of his appeal. *See Smith v. United States*, 94 U.S. 97, 97 (1876) (exercising the Court's inherent authority to dismiss an appeal of a criminal who escaped from prison); Gary P. Naftalis & Alan R. Friedman, *Fugitive Disentitlement in Civil Forfeiture Proceedings*, N.Y.L.J., Dec. 19, 2002, at 1 (explaining that the doctrine initially arose as a mechanism of judicial construction granting appellate courts the power to dismiss appeals of defendants who remained fugitives at the time of their appeal).[4]

Disentitlement also arises in the context of civil forfeiture claims. *See* 28 U.S.C. § 2466 (2012). A judicial officer may forbid an individual from using the U.S. court system in furtherance of a claim if, after the individual has knowledge that a warrant has been issued for his apprehension, such individual flees the jurisdiction in order to avoid prosecution. Id. § 2466(a)(1)(A). The individual may be forbidden from using the court system for failing to enter

---

[4] *See also Bonahan* v. *Nebraska*, 125 U.S. 692 (1887) (same); *In re Assets of Martin*, 1 F.3d 1351, 1356 (3d Cir. 1993)("that doctrine involves a discretionary refusal by an appellate court to entertain an appeal on behalf of a party who has been convicted of a crime but who has become a fugitive subsequent to conviction. The rationale for dismissing fugitives' appeals usually is explained as a principle of mutuality — if a defendant is not willing to suffer the penalties of the crime, then an appellate court should not afford the defendant an opportunity to improve his or her position by challenging the validity of the conviction."); *see also Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970) ("No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims") *United States v. Shalhoub*, 855 F.3d 1255, 1259 (11th Cir. 2017) (denying an interlocutory appeal based on lack of jurisdiction finding that order prohibiting filing of motions to dismiss under fugitive disentitlement doctrine was not a final order and did not meet exceptions to final order rule).

or reenter the United States in order to submit to its jurisdiction. Id. § 2466(a)(1)(B). An individual

who is in custody in another jurisdiction for illegal conduct in that jurisdiction is not a fugitive for

purposes of this law. Id. § 2466(a)(2).

In *United States of America v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1997), this

Circuit has extended this doctrine, most critically to reach the concept of "constructive flight":

> "The defendant need not leave the jurisdiction, but — while legally outside
> the jurisdiction — may constructively flee by deciding not to return. *Id.*
> ***Larry Barnette knew of the forfeiture judgment, the show cause order, the***
> ***contempt order, and bench warrant; but by hiding, he has refused to***
> ***surrender himself to the jurisdiction of this court. So, he is, for the law's***
> ***purposes, a fugitive from justice.***
>
> The requisite nexus exists between Larry Barnette's fugitiveness and this
> appeal. Both Appellants filed motions to stay the enforcement of the
> contempt orders against them; and both of their motions were denied both
> by the district court and this court. But, ***their fugitive status, in reality,***
> ***effects a stay of that enforcement by making such enforcement impossible***
> — in direct contravention of this court's holding as to the appropriateness
> of a stay.

*Barnette,* 129 F. 3d at 1184; *But see See U.S. v. Public Warehousing Company*

*K.S.C*, CRIMINAL FILE No. 1:09-CR-490-TWT, at *10 (N.D. Ga. Mar. 28, 2011) ("the

Government argues that Agility Logistics has constructively fled the Court's jurisdiction.

Agility Logistics, however, has never maintained an office in the United States. Thus,

Agility Logistics never fled the Court's jurisdiction. Further, like PWC, the Government

has not shown that Agility Logistics remains outside the United States for the purpose of

avoiding prosecution. Thus, the fugitive disentitlement doctrine does not apply to Agility

Logistics").

*Barnette,* unlike this case, was a case in which defendant and his wife *defied a civil*

*contempt order after the government repeatedly sought to collect on a forfeiture order*

*arising from a criminal case*. *United States of America v. Barnette*, 129 F.3d 1179, 1185

(11th Cir. 1997). The court said "[w]e stress that both Appellants have disobeyed court

orders, have acted to effect a stay of the contempt judgments against them (a stay denied

by this court), and have continued to evade arrest pursuant to the warrants issued by the

district court." *Barnette*, 129 F.3d at 1182-83 (11th Cir. 1997).

      Addressing its concerns with permitting Mr. Barnette to use the judicial system, this Circuit

said:

> No good reason exists to think that any decision in this case adverse to Mr.
> Barnette would affect the satisfaction of his forfeiture judgment. Mr.
> Barnette only wishes to use this court in an attempt to receive a favorable
> judgment — the only judgment by which, it appears, he will abide. We
> decline to participate. "He who offends against the law seeks in vain the
> help of the law" is a very old legal maxim.

*Barnette*, 129 F.3d at 1184.

      In *Barnette*, this Circuit also recognized that "[u]nder certain circumstances the

disentitlement doctrine may be even more applicable to civil than criminal cases: because a

defendant-appellant's liberty is not at stake, less harm can come from the refusal to entertain the

appeal." *Barnette*, 129 F.3d at 1183.

      In a recent decision, *United States v. Bescond*, 24 F.4th 759, 771-72 (2d Cir. 2021), the

Second Circuit rejected the application of this doctrine in the pre-trial motion context where the

defendant, a French banker living openly in France, filed a motion to dismiss the indictment based

on extraterritoriality and due process concerns. The court first found that it could review the denial

of the motion to dismiss and the finding of fugitivity based on the collateral order doctrine.

*Bescond,* at 770. After so finding, the court then concluded that defendant was not fugitive

reasoning that "Bescond has neither fled nor concealed herself. Nor is Bescond a constructive-

flight fugitive: a person "who allegedly committed crimes while in the United States but who w[as]

outside the country—for whatever reason—when [she] learned that [her] arrest[ ] w[as] sought and who then refused to return to the United States in order to avoid prosecution." *Bescond,* at 771-72.

Similarly, the Seventh Circuit has not applied the doctrine as broadly as the government prefers in this case. *In re Hijazi*, 589 F.3d 401, 408 (7th Cir. 2009), the Court granted a writ of mandamus requesting that the district court rule on the petitioner's pre-appearance motion to dismiss. The petitioner was in Kuwait where there was no extradition and he sought dismissal based on due process and extraterritoriality concerns. In finding that the disentitlement doctrine did not strip petitioner of his right to move to dismiss, the court reinforced the importance of mutuality and that Hijazi "did not flee from the jurisdiction or from any restraints placed upon him" *In re Hijazi*, 589 at 412. The court also emphasized that "[w]e think that the district court took too narrow a view of the adverse consequences that Hijazi would suffer if he loses on his motion to dismiss. Such a decision would, as he points out, make it very risky for him ever to leave Kuwait, which is not his native country." *Id.* at 413.

In short, the fugitive disentitlement doctrine was not intended to apply to Rule 44 hearings. Further, neither this Circuit nor any other Circuit Court of Appeals case (or district court case) that the undersigned could identify supports the relief that the government seeks in this case.

**D. <u>The Government's Own Position Strongly Suggests that no *Garcia* Hearing is Required to Protect Mr. Velazquez-Figueroa</u>**

The government insists that Mr. Velazquez-Figueroa has no rights as a fugitive and should therefore be disentitled to even a Rule 44 *Garcia* hearing. The irony of the government's position is that, if Mr. Velazquez-Diaz truly is "disentitled" then there is no reason that Mr. Velazquez-Diaz should be entitled to the benefit of a Rule 44 hearing until he arrives in the United Stated and appears to face the charges in the Superseding Indictment. Therefore, traveling under the

government's own distorted logic, Mrs. Diaz Guillen should be entitled to the protections of a Rule 44 hearing and to the protection of "personal advisement," *but* Mrs. Velazquez-Figueroa is *not* deserving of those protections until he arrives in the United States.

Ultimately, the government's position is meritless. The government's request is not motivated by any desire to protect the rights of the defendants. It is motivated by a desire to have Mr. Velazquez-Figueroa surrender to the United States. Their insistence on his appearance however cannot override the Sixth Amendment rights of Mrs. Diaz Guillen or Mr. Velazquez-Figueroa. Nor can it override the court's interest in conduct a fair proceeding with the benefit of a Rule 44 hearing

### E.  On Balance, the government's objection amounts to a deprivation of Mrs. Diaz Guillen's Sixth Amendment Right to Counsel of her Choice.

On balance, the government's objection to a virtual appearance or any alternative measure to protect the rights of the defendants consistent with Rule 44 – short of a personal live appearance by Mr. Velazquez-Figueroa – amounts to a deprivation of Mrs. Diaz Guillen's Sixth Amendment right to counsel. *See Opinion and Order Following Garcia* Hearing, (Dkt, No. 72 at 10) (granting Mrs. Diaz Guillen the right to counsel of her choice after *Garcia* hearing); *United States v. Braun*, Case No.: 19-80030-CR-DIMITROULEAS/MATTHEWMAN, at *8 (S.D. Fla. Apr. 29, 2019) (granting law firm the right to represent joint defendants despite two separate conflicts raised by the government); *United States v*. *Urbana*, 770 F. Supp. 1552, 1555 (S.D. Fla. 1991). (""The sixth amendment right to counsel is perhaps the most precious of constitutional rights a criminal defendant possesses. It ensures that an accused has an advocate, skilled in the art of trial advocacy, to test the evidence offered and challenge the allegations levied by the government The "choice of counsel may be the most pivotal decision an accused will make.""); *United States v.*

*Garcia*, 447 F.3d 1327, 1337 (11th Cir. 2006) (explaining that there is a presumption in favor of a defendant's right to counsel of his choice).

Indeed, the blanket refusal to entertain other methods of conducting *Garcia* and complying with Rule 44 based on Mr. Velazquez-Figueroa's supposed "fugitive" status is a plain deprivation of Mrs. Diaz Guillen's right to have counsel of her choice appear on her behalf at trial. The natural consequence of the government's position is that Mrs. Diaz Guillen is not entitled to even have a Rule 44 hearing regarding whether she may retain counsel of her choice until Mr. Velazquez Figueroa – who is lawfully challenging extradition and has lived in plain sight in Madrid since at least 2018--- appears in federal court.

Mrs. Diaz Guillen has a constitutional right to counsel of her choice and a constitutional right to demand a speedy trial. The government's position clearly undermines both of those rights in one-fell-swoop, and therefore, the government's request should be denied.

**CONCLUSION**

For the reasons stated herein, the Government's objection to a *Garcia* hearing based on an unfounded and unprecedented application of the fugitive disentitlement doctrine should be denied. The Court wields adequate discretion to conduct a *Garcia* hearing in compliance with Rule 44(c) in any of the ways proposed herein.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been filed via CM/ECF and served on all counsel of record authorized to receive service.

*/s/ Andrew S. Feldman*
Andrew S. Feldman