**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.   18-cr-80160-DIMITROULEAS/MATTHEWMAN**

**UNITED STATES OF AMERICA**

> **v.**

**CLAUDIA PATRICIA DIAZ GUILLEN,**

> **Defendant.**

_____ /

## UNITED STATES' NOTICE OF INTENT TO INTRODUCE INEXTRICABLY INTERTWINED/RULE 404(B) EVIDENCE AND MEMORANDUM OF LAW IN SUPPORT OF ITS ADMISSION AND MOTION *IN LIMINE* TO ADMIT EVIDENCE PURSUANT TO RULE 404(B)

The United States, by and through the undersigned counsel, hereby files this notice of its intent to introduce inextricably intertwined and potential Federal Rule of Evidence 404(b) ("Rule 404(b)") evidence of Defendant, Claudia Patricia Diaz Guillen's ("Defendant['s]"), concerning her acceptance of bribes in exchange for authorizing the ability to conduct foreign currency exchange contracts to certain individuals/entities while she was the Venezuelan National Treasurer, which acts demonstrate Defendant's intent, knowledge, modus operandi, and absence of mistake (if argued by the Defendant) with respect to the charged money laundering offenses. The United State also moves *in limine* to introduce this evidence as intrinsic to the charged offenses or pursuant to Rule 404(b).

> **A.     Introduction**

As part of its responses to the Standing Discovery Order ("Response") [ECF No. 75 ], the United States previously provided the Defendant with notice that all evidence made available to Defendant through discovery, including evidence of Defendant's prior bad acts, might be offered

and relied upon pursuant to Rule 404(b). (See Resp. at 2 ).

Moreover, evidence of another bribery scheme similar to the one charged which the United States seeks to introduce, including reports of interviews of a witness concerning that bribery scheme, was produced to Defendant on September 9, 2022, via an internet-based file sharing system.   In addition, upon inquiry by counsel for the Defendant, notice via e-mail was provided to defense counsel for Defendant on September 20, 2022, that the government intended to introduce 404(b) evidence.   This Notice is intended to provide additional notice and explanation as to the specific nature of the evidence the United States seeks to introduce either as intrinsic or pursuant to Rule 404(b), as well as the legal basis for its admission.

**B.     The Instant Offense**

The money laundering charges in the Superseding Indictment arose from Defendant and Adrian Jose Velasquez Figueroa's ("Velasquez['s]") role in a bribery and money laundering scheme, along with others, including co-conspirator, Raul Gorrin Belisario ("Gorrin"). [1]  In furtherance of the scheme, Defendant and Velasquez sought to unlawfully enrich themselves and their co-conspirators by accepting bribe payments, as Defendant was a Venezuelan government official (National Treasurer), to ensure that co-conspirators were able to obtain improper business advantages, including the approval to conduct foreign currency exchanges on behalf of the Venezuelan Treasury.   Gorrin and his co-conspirators were able to make a substantial profit, and they agreed to pay a portion of that profit as bribe payments to Diaz through Velasquez because the foreign currency exchange was based on the fixed currency exchange rate as set by the Venezuelan government.   For example, if the official rate of exchange was six bolivars (the

---

[1]  Velasquez and Gorrin are both co-defendants and charged in the same Superseding Indictment as Diaz. [ECF No. 44].

official currency of Venezuela) to one U.S. Dollar and the parallel market was 12 bolivars to one U.S. Dollar this would allow the individual approved to conduct the exchange to double his holdings by buying from the government at six and selling on the parallel market at 12.

The bribes paid to the Defendant and Velasquez were made by Gorrin by either paying invoices for the Defendant and/or Velasquez, making payments to individuals or entities at the direction of the Defendant and/or Velasquez, and by making payments into bank accounts controlled by Diaz and/or Velasquez.   These payments were made via cash payments or via wire transfer from one bank account controlled by Gorrin to an account controlled by the Defendant and/or Velasquez or to a bank account at the direction of the Defendant and/or Velasquez.   Some of the wire transfers of the illicit proceeds were transferred to bank accounts in the Southern District of Florida.   The bribe monies paid to the Defendant and/or Velasquez were the illicit proceeds from violations of the Foreign Corrupt Practices Act of 1977 ("FCPA") under Title 15, United States Code, Sections 78dd-2 and 78dd-3, and an offense against a foreign nation, specifically Venezuela, involving bribery of a public official and the misappropriation, theft, and embezzlement of public funds by or for the benefit of a public official, in violation of Title 18, United States Code, Sections 1956(a)(2)(A).

C.     **The Proposed Inextricably Intertwined/404(b) Evidence**

The government seeks to introduce evidence that from in or around 2011 into 2012, the Defendant and Velasquez agreed to accept bribes from another individual ("Witness 1"), in violation of the FCPA and Venezuelan law.   She and Velasquez agreed to accept these bribes from Witness 1 in order for her to award Venezuelan foreign currency exchange contracts to

Witness 1 and his entities.[2]   In addition to the proffered 404(b) evidence, the Government notes that Witness 1 will also testify about his knowledge of the Defendant's role and participation in the charged money laundering offenses and the assistance he provided to the Defendant and Velasquez in receiving and moving the illicit bribe money that they received from fugitive co-defendant Gorrin.

The circumstances surrounding the prior bribery scheme, which will be outlined in greater detail at trial, were as follows:   The Government expects that Witness 1 will testify that he was introduced to Velasquez in order to propose and come to an agreement to pay bribes to Velasquez and the Defendant in order for the Defendant, in her position as Venezuelan National Treasurer, to award him and his entities foreign currency exchange contracts.   As discussed above, due to the difference between the fixed currency exchange rate for the U.S. Dollar to the Venezuelan Bolivar that was in place during former Venezuelan President Chavez's regime and the true market foreign currency exchange rate for the U.S. Dollar and the Venezuelan Bolivar, Witness 1 was able to make a substantial profit from being awarded the ability to conduct these exchanges.   As part of the bribery agreement, Witness 1 agreed to split the profit he made with the Defendant and Velasquez.   According to Witness 1, the bank conducting the foreign currency exchanges would receive 30% of the profit.   From the remaining 70% of the profit, Witness 1 would pay 70% to the Defendant and Velasquez, and he would retain 30% of the profit.   Witness 1 agreed to pay the bribes to and through the Defendant's husband, Velasquez, or by making payments to individuals or entities at the Defendant and/or Velasquez's direction.

---

[2]  Due to witness security issues, undersigned counsel will provide the name of Witness 1 to counsel of the Defendant via email on the date of this filing.   If this issue is litigated, the United States will provide the name of Witness 1 to the Court prior to any motions hearing on the issue, unless the Court would like the United States to provide notice of the identity of Witness 1 sooner under seal.

The proposed evidence is comprised of the testimony of Witness 1, who agreed to pay the bribes to the Defendant and Velasquez for the awarding to him and his entities the foreign currency exchange contracts and actually paid the bribes to the Defendant through Velasquez and entities he controlled or by paying monies to individuals at his or Velasquez's direction.   He will identify the Defendant as the former Venezuelan National Treasurer who he agreed to pay bribes to through her husband Velasquez in exchange for her authorizing him the ability to conduct foreign currency exchange contracts.

### D.      The Proposed Evidence is Inextricably Intertwined

The United States submits that the proposed evidence should be admitted as inextricably intertwined with the direct evidence that Witness 1 will testify to concerning his knowledge of the Defendant's involvement in the charged money laundering conspiracy and acceptance of bribes from Gorrin.   "[I]ntrinsic evidence is admissible if it is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'"   United States v. Troya, 733 F.3d 1125, 1731 (11th Cir. 2013) (citing United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (internal quotation marks omitted)).   In Troya, the Eleventh Circuit went on to further cite Edouard, and state that "'[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.'"   Id. (internal quotation marks omitted).   In United States v. Foster, the Eleventh Circuit that evidence can be found to be inextricably intertwined when the evidence is an 'integral and natural part of the witness's accounts of the circumstances surrounding the

offenses for which the defendant was indicted." 889 F.2d 1049, 1053 (11th Cir. 1989) (internal quotation marks omitted).   Here, the government expects that Witness 1 will testify that he opened companies and bank accounts for Defendant and Velasquez in order to pay them bribes, and that these same companies and bank accounts were used to receive the bribe payments that Gorrin was paying Diaz and Velasquez in the charged money laundering conspiracy.   As such, this testimony explains the chain of events that set up part of the crime charged against the Defendant and is integral to Witness 1's account of the how he came to open bank accounts for the Defendant and Velasquez in order to receive bribe payments.   Accordingly, the proffered evidence is intrinsic to the charged money laundering scheme and should be admitted on that basis. If the Court finds that the testimony is not inextricably intertwined, the United States intends to bifurcate the testimony so that the two parts of the witness' testimony are not intermingled and a limiting instruction can given before the 404(b) testimony.

###### E.      Admissibility of Rule 404(b) Evidence

Rule 404(b) provides "[e]vidence of other crimes, wrongs, or acts" may be admitted "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" with respect to the charged offense.   FED. R. EVID. 404(b).   Rule 404(b) is a rule of "inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity." United States v. Stephens, 365 F.3d 967, 975 (11th Cir. 2004) (internal quotation marks omitted) (quoting United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989)); see United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003) ("Rule 404(b) is a rule of inclusion, and . . . accordingly 404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case.").

The test for admissibility of Rule 404(b) evidence is as follows: (1) the evidence must be

relevant to an issue other than the defendant's character; (2) the act must be established by sufficient proof to permit a jury finding the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by its undue prejudice under Rule 403. See, e.g., United States v. Miller, 959 F.2d 1535, 1538 (11th Cir. 1992).

    1.  Relevance

    The facts surrounding the Defendant's acceptance of bribes to award foreign currency contracts by the Venezuelan National Treasury will be offered to demonstrate Defendant's knowing participation in the charged money laundering conspiracy to knowingly transport, transmit, and transfer a monetary instrument and funds to a place in the United States from and through a place outside of the United States with the intent to promote the carrying on of specified unlawful activity as charged in Count 2 of the Superseding Indictment and the two substantive counts of money laundering, Counts 9 and 10, in the Superseding Indictment.   [ECF No. 44]. "The law in this circuit is that, in the context of a conspiracy case, the mere entry of a not guilty plea sufficiently raises the issue of intent to justify the admissibility of extrinsic offense evidence." United States v. Kopituk, 690 F.2d 1289, 1334 (11th Cir. 1982) (emphasis in original).   The Eleventh Circuit has previously held that prior instances of participation in prior money laundering conspiracies is properly admitted as Federal Rule of Evidence 404(b) in order to motive opportunity, plan, knowledge, and absence of mistake or accident.   United States v. Eirin, 778 F.2d 722, 731-732 (11th Cir. 1985); see also United States v. Sanchez, 790 F.2d 1561, 156 (11th Cir. 1986).   This has also been the case in prior drug cases.   See, e.g., United States v. Diaz-Lizaraza, 981 F.2d 1216, 1224 (11th Cir. 1993) (noting "[t]he intent elements of the [defendant's] two offenses were identical: possession with intent to distribute"); United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997) ("Ample precedent exists in this circuit finding that a not guilty

plea in a drug conspiracy case . . . makes intent a material issue and opens the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of a defendant's intent.").   This is especially true where, as here, the prior bad acts and the charged conduct are similar or identical in nature.   See Eirin, 778 F.2d at 731-731; see also United States v. McCrary, 304 F. App'x 760, 761 (11th Cir. 2008) (citing United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) ("Since [the defendant] previously pled guilty to possession of cocaine with intent to distribute, and now again was charged with the same offense, his prior conduct was similar to his instant offense and therefore highly probative.")).

In this case, Defendant pled not guilty, thereby putting her intent at issue.   Thus, Defendant's prior involvement in a bribery scheme is relevant to the issue of her knowing participation in the money laundering conspiracy and substantive money laundering counts charged in the Superseding Indictment and her modus operandi.   Put differently, Defendant's prior acceptance of bribes to award government contracts, which, as in the criminal case at hand, involved awarding foreign currency exchange contracts, is important evidence of Defendant's state of mind, an element that is notoriously difficult to establish.   See United States v. Manoocher Nostari–Shamloo, 255 F.3d 1290, 1292 (11th Cir.) ("A defendant's intent is often difficult to prove and often must be inferred from circumstantial evidence."), cert. denied 534 U.S. 1030, 122 S.Ct. 566 (2001).

   2.   Proof of Prior Bad Acts

The second prong of the Rule 404(b) test requires that the prior act be "proved sufficiently to permit a jury determination that the defendant committed the act."   United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000).   The Government need not prove the prior act beyond a reasonable doubt.   Rather, the Government need only prove the prior act by a preponderance of

the evidence.   See United States v. Bowe, 221 F.3d 1183, 1192 (11th Cir. 2000) (citing Huddleston v. United States, 485 U.S. 681, 689 (1988)).   The Eleventh Circuit has held that a witness's testimony about a prior act is legally sufficient to establish that the Defendant committed the act.   See United States v. Pessefall, 27 F.3d 511, 516 (11th Cir. 1994). Here, Witness 1's testimony about Defendant's prior involvement in a bribery scheme and acceptance of bribe monies through companies and entities controlled by her and her husband, if credited by the jury, is sufficient to establish the prior acts by a preponderance of evidence.

      3.   Rule 403 Balancing

Lastly, the probative value of the United States' proffered evidence is not substantially outweighed by the risk of unfair prejudice.   Regarding this third prong, "[f]actors to be considered include whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." United States v. Edouard, 485 F.3d 1324, 1345 (11th Cir. 2007).   As stated, by pleading not guilty, Defendant has placed her *mens rea* at issue.   Her state of mind with respect to the bribery scheme and the receipt of the bribe monies via wire transfers into bank accounts controlled by her and Velasquez as alleged in the Superseding Indictment is the central issue in this case.   Thus, the United States' need to use this evidence is great and, as the Eleventh Circuit has emphasized, such evidence is highly probative of Defendant's knowledge and intent at the time of the charged offenses.   See Ramirez, 426 F.3d at 1354.   Defendant's prior bad acts bear sufficient similarity to the facts charged to make them relevant.   Defendant's acceptance of other bribes to award government contracts under her control and how she accepted that bribe money are highly suggestive of Defendant's knowledge about the bribery scheme and money laundering conspiracy charged in the Superseding

Indictment.

Finally, any prejudice that would arise from admitting this evidence against Defendant can be cured by a limiting instruction.    Rather than exclude relevant evidence, the Court can instruct the jury to consider the government's evidence for its limited use and presume that the jury will follow that instruction.    See Diaz–Lizaraza, 981 F.2d at 1225 (11th Cir.1993) (concluding prejudice could be mitigated by giving a cautionary instruction on the limited use of such evidence); Eirin, 778 F.2d at 732 ("Moreover, the district court's cautionary instruction, which it repeated several times during the presentation of evidence and included in the jury instruction, mitigated any prejudice…").

**F.      Conclusion**

For the foregoing reasons, the United States gives notice of its intent to introduce at trial evidence of Defendant's prior acceptance of bribes in violation of foreign law in order to award foreign currency exchange contracts while she was the Venezuelan National Treasurer, and moves *in limine* for the Court to allow such testimony.    The United States has conferred with counsel for the Defendant and they oppose the filing of this motion *in limine*.

Respectfully submitted,

| | |
|---|---|
| GLENN S. LEON<br>CHIEF, FRAUD SECTION | JUAN ANTONIO GONZLEZ<br>UNITED STATES ATTORNEY |
| By:    */s/ Paul A. Hayden*<br>Paul A. Hayden<br>Trial Attorney<br>Criminal Division, Fraud Section<br>U.S. Department of Justice<br>1400 New York Ave. NW<br>Washington, DC 20005<br>TEL (202) 353-9370<br>Paul.hayden2@usdoj.gov | By:    */s/ Kurt K. Lunkenheimer*<br>Kurt K. Lunkenheimer<br>Assistant U.S. Attorney<br>Court ID No. A5501535<br>99 N.E. 4th Street<br>Miami, Florida 33132-2111<br>TEL (305) 961-9008<br>Kurt.Lunkenheimer@usdoj.gov |

10