916

UNITED STATES–SWITZERLAND:  TREATY ON MUTUAL ASSISTANCE
IN CRIMINAL MATTERS*
[Done at Bern, May 25, 1973]

TREATY BETWEEN THE UNITED STATES OF AMERICA
AND THE SWISS CONFEDERATION
ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

The President of the United States of America
and
the Swiss Federal Council,

Desiring to conclude a treaty on mutual assistance
in criminal matters,

Having appointed for that purpose as their Pleni-
potentiaries:

The President of the United States of America:

Walter J. Stoessel, Jr.
Assistant Secretary of State for European Affairs

Shelby Cullom Davis
Ambassador Extraordinary and Plenipotentiary
of the United States of America to Switzerland

---

*[Reproduced from the text provided to International Legal Ma-
terials by the U.S. Department of State.]

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

The Swiss Federal Council:

Dr. Albert Weitnauer
Swiss Ambassador to Great Britain

who, having exchanged their respective full powers, which were found in good and due form, have agreed as follows:

INDEX

Chapter I
Applicability

Article 1          Obligation to Furnish Assistance
Article 2          Non-Applicability
Article 3          Discretionary Assistance
Article 4          Compulsory Measures
Article 5          Limitations on Use of Information

Chapter II
Special Provisions Concerning Organized Crime

Article 6          General Requirements
Article 7          Extent of Assistance
Article 8          Applicable Procedure

Chapter III
Obligations of Requested State in Executing Requests

Article 9          General Provisions for Executing Requests
Article 10         Duty to Testify in Requested State
Article 11         Locating Persons
Article 12         Special Procedural Provisions

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

918

## Chapter IV
### Obligations of Requesting State

Article 13      Restrictions on Use of Testimony
Article 14      Exclusion of Sanctions
Article 15      Protection of Secrecy

## Chapter V
### Documents, Records and Articles of Evidence

Article 16      Court and Investigative Documents
Article 17      Completeness of Documents
Article 18      Business Records
Article 19      Official Records
Article 20      Testimony to Authenticate Documents
Article 21      Rights in Articles of Evidence

## Chapter VI
### Service for Requesting State and Related Provisions

Article 22      Service of Documents
Article 23      Personal Appearance
Article 24      Effect of Service
Article 25      Compelling Testimony in Requesting State
Article 26      Transfer of Arrested Persons
Article 27      Safe Conduct

## Chapter VII
### General Procedures

Article 28      Central Authority
Article 29      Content of Requests
Article 30      Language
Article 31      Execution of Requests

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

Article 32        Return of Completed Requests
Article 33        Inability to Comply
Article 34        Costs of Assistance
Article 35        Return of Articles of Evidence

### Chapter VIII
### Notice and Review of Determinations

Article 36        Notice
Article 37        Review of Determinations

### Chapter IX
### Final Provisions

Article 38        Effect on Other Treaties and
                 Municipal Laws
Article 39        Consultation and Arbitration
Article 40        Definition of Terms
Article 41        Entry into Force and Termination

### Schedule
### Offenses for Which Compulsory
### Measures are Available

### Chapter I
### APPLICABILITY

### Article 1

### Obligation to Furnish Assistance

1. The Contracting Parties undertake to afford each other, in accordance with provisions of this Treaty, mutual assistance in:

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

920

a.    investigations or court proceedings in respect
      of offenses the punishment of which falls or
      would fall within the jurisdiction of the
      judicial authorities of the requesting State
      or a state or canton thereof;

b.    effecting the return to the requesting State,
      or a state or canton thereof, of any objects,
      articles or other property or assets belonging
      to it and obtained through such offenses;

c.    proceedings concerning compensation for damages
      suffered by a person through unjustified deten-
      tion as a result of action taken pursuant to
      this Treaty.

2.  For the purposes of this Treaty, an offense in the
requesting State is deemed to have been committed if there
exists in that State a reasonable suspicion that acts have
been committed which constitute the elements of that offense.

3.  The competent authorities of the Contracting Parties
may agree that assistance as provided by this Treaty will
also be granted in certain ancillary administrative pro-
ceedings in respect of measures which may be taken against
the perpetrator of an offense falling within the purview
of this Treaty. Agreements to this effect shall be con-
cluded by exchange of diplomatic notes.

4.  Assistance shall include, but not be limited to:

a.    ascertaining the whereabouts and addresses of
      persons;

b.    taking the testimony or statements of persons;

c.    effecting the production or preservation of
      judicial and other documents, records, or
      articles of evidence;

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

d.   service of judicial and administrative documents; and

e.   authentication of documents.


### Article 2

#### Non-Applicability

1.   This Treaty shall not apply to:

a.   extradition or arrests of persons accused or convicted of having committed an offense;

b.   execution of judgments in criminal matters;

c.   investigations or proceedings:

   (1)   concerning an offense which the requested State considers a political offense or an offense connected with a political offense;

   (2)   concerning offenses in violation of the laws relating to military obligations;

   (3)   concerning acts by a person subject to military law in the requesting State which constitute an offense under military law in that State but which would not constitute an offense in the requested State if committed by a person not subject to military law in the requested State;

   (4)   for the purpose of enforcing cartel or anti-trust laws; or

   (5)   concerning violations with respect to taxes, customs duties, governmental monopoly charges or exchange control regulations other than the offenses listed in items 26 and 30 of the Schedule to this Treaty (Schedule) and the related offenses in items 34 and 35 of the Schedule.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

922

2. Nevertheless, assistance shall be granted if a request concerns an investigation or proceeding referred to in sub-paragraphs c. (1), (4) and (5) of paragraph 1, if made for the purpose of investigating or prosecuting a person described in paragraph 2 of Article 6 and

    a.    in the case of subparagraphs c. (1) and (4), the request relates to an offense committed in furtherance of the purposes of an organized criminal group des-cribed in paragraph 3 of Article 6, or

    b.    in the case of subparagraph c. (5), any applicable conditions of Article 7 are satisfied.

3. Contributions to social security and governmental health plans, even if levied as taxes, shall not be considered as taxes for the purpose of this Treaty.

4. If the acts described in the request contain all the elements of an offense for the investigation or prosecution of which assistance is required to be or may be granted as well as all the elements of an offense for which such assistance cannot be granted, assistance shall not be granted if under the law of the requested State punishment could be imposed only for the latter offense unless it is listed in the Schedule.

<u>Article 3</u>

Discretionary Assistance

1. Assistance may be refused to the extent that:

    a.    the requested State considers that the execution of the request is likely to prejudice its sovereign-ty, security or similar essential interests;

    b.    the request is made for the purpose of prosecuting a person, other than a person described in para-graph 2 of Article 6, for acts on the basis of which

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

he has been acquitted or convicted by a final judg-
ment of a court in the requested State for a sub-
stantially similar offense and any sentence has been
or is being carried out.

2.  Before refusing any request pursuant to paragraph 1, the
requested State shall determine whether assistance can be
given subject to such conditions as it deems necessary. If it
so determines, any conditions so imposed shall be observed in
the requesting State.

## Article 4

### Compulsory Measures

1.  In executing a request, there shall be employed in the
requested State only such compulsory measures as are provided
in that State for investigations or proceedings in respect of
offenses committed within its jurisdiction.

2.  Such measures shall be employed, even if this is not
explicitly mentioned in the request, but only if the acts
described in the request contain the elements, other than
intent or negligence, of an offense:

    a.    which would be punishable under the law in the
        requested State if committed within its juris-
        diction and is listed in the Schedule;
        or

    b.    which is described in item 26 of the Schedule.

3.  In the case of such an offense not listed in the Schedule,
the Central Authority of the requested State shall determine
whether the importance of the offense justifies the use of
compulsory measures.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

924

4. A decision as to whether the conditions of paragraph 2 have been met shall be made by the requested State only on the basis of its own law. Differences in technical designation and constituent elements added to establish jurisdiction shall be ignored. The Central Authority of the requested State may ignore other differences in constituent elements which do not affect the general character of the offense in that State.

5. In those cases where the conditions of paragraph 2 or 3 have not been met, assistance shall be granted to the extent that it can be furnished without the use of compulsory measures.


## Article 5

### Limitations on Use of Information

1. Any testimony or statements, documents, records or articles of evidence or other items, or any information contained therein, which were obtained by the requesting State from the requested State pursuant to the Treaty shall not be used for investigative purposes nor be introduced into evidence in the requesting State in any proceeding relating to an offense other than the offense for which assistance has been granted.

2. Nevertheless, the materials described in paragraph 1 may, after the requested State has been so advised and given an opportunity to make its views known as to the applicability of subparagraphs a, b and c of this paragraph, be used in the requesting State for the investigation or prosecution of persons who:

    a.    are or were suspects in an investigation or defendants in a proceeding for which assistance was granted and who are suspected or accused of having committed another offense for which assistance is required to be granted;

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

b.  are suspected or accused of being participants in, or accessories before or after the fact to, an offense for which assistance was granted; or

c.  are described in paragraph 2 of Article 6.

3.  Nothing in this Treaty shall be deemed to prohibit governmental authorities in the requesting State from:

a.  using the materials referred to in paragraph 1 in any investigation or proceeding concerning the civil damages connected with an investigation or proceeding for which assistance has been granted; or

b.  using information or knowledge educed from the materials referred to in paragraph 1 in continuing any criminal investigation or proceeding, provided that:

(1)  for such investigation or proceeding assistance may be given;

(2)  prior to the date of the request for assistance referred to in paragraph 1 inquiries have already been carried out for the purpose of establishing an offense; and

(3)  the materials referred to in paragraph 1 are not introduced into evidence.

Chapter II

SPECIAL PROVISIONS CONCERNING ORGANIZED CRIME

Article 6

General Requirements

1.  The Contracting Parties agree to assist each other in the fight against organized crime as provided in this Chapter and

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

with all means otherwise available under this Treaty and other provisions of law.

2.   This Chapter shall apply only to investigations and proceedings involving a person who, according to the request, is or is reasonably suspected to be:

   a.   knowingly involved in the illegal activities of an organized criminal group, described in paragraph 3, and who is:

   (1)  a member of such a group; or

   (2)  an affiliate of such a group performing supervisory or managerial functions or regularly supporting it or its members by performing other important services; or

   (3)  a participant in any important activity of such a group; or

   b.   a public official who has violated his official responsibilities in order to knowingly accomodate the desires of such a group or its members.

3.   For the purposes of this Chapter the term "organized criminal group" refers to an association or group of persons combined together for a substantial or indefinite period for the purposes of obtaining monetary or commercial gains or profits for itself or for others, wholly or in part by illegal means, and of protecting its illegal activities against criminal prosecution and which, in carrying out its purposes, in a methodical and systematic manner:

   a.   at least in part of its activities, commits or threatens to commit acts of violence or other acts which are likely to intimidate and are punishable in both States; and

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

   b.     either:

     (1)   strives to obtain influence in politics or commerce, especially in political bodies or organizations, public administrations, the judiciary, in commercial enterprises, employers' associations or trade unions or other employees' associations; or

     (2)   associates itself formally or informally with one or more similar associations or groups, at least one of which engages in the activities described under subparagraph b (1).

## Article 7

### Extent of Assistance

1. Compulsory measures referred to in Article 4 shall also be employed in the requested State even if the investigation or proceeding in the requesting State concerns acts which would not be punishable under the law in the requested State, or which are not listed in the Schedule, or neither. This paragraph is subject to the limitations of paragraph 2.

2. Assistance under this Chapter shall be rendered in investigations or proceedings involving violations of provisions on taxes on income referred to in Article I of the Convention of May 24, 1951, for the Avoidance of Double Taxation with Respect to Taxes on Income only if, according to the information furnished by the requesting State:

   a.    the person involved in the investigation or proceeding is reasonably suspected by it of belonging to an upper echelon of an organized criminal group or of participating significantly, as a member, affiliate or otherwise, in any important activity of such a group;

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

b.   the available evidence is in its opinion insufficient, for the purpose of a prosecution which has a reasonable prospect of success, to link such person with the crimes committed by the organized criminal group with which he is connected in the sense of paragraph 2 of Article 6; and

c.   it has been reasonably concluded by it that the requested assistance will substantially facilitate the successful prosecution of such person and should result in his imprisonment for a sufficient period of time so as to have a significant adverse effect on the organized criminal group.

3.   Paragraphs 1 and 2 apply only if the requesting State reasonably concludes that the securing of the information or evidence is not possible without the cooperation of the authorities in the requested State, or that it would place unreasonable burdens on the requesting State or a state or canton thereof.

## Article 8

## Applicable Procedure

1.   In all cases where this Chapter requires a reasonable suspicion or a reasonable conclusion, or the opinion of the requesting State, that State shall furnish to the requested State information in its possession on the basis of which such suspicion, conclusion, or opinion has been arrived at. However, this shall not oblige the requesting State to identify the persons who have provided such information. Upon application of the requesting State, the Central Authority of the requested State shall treat any information furnished in the request as confidential.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

2.  The Central Authority of the requested State shall have the right to review the determination of the requesting State as to the applicability of this Chapter. It need not accept such determination where the suspicion, conclusion or opinion underlying such determination has not been made credible.

3.  In rendering assistance pursuant to paragraph 2 of Article 7, all courts and authorities in the requested State shall apply such investigative measures as are provided for in its rules of criminal procedure.

4.  Provisions in municipal law which impose restrictions on tax authorities concerning the disclosure of information shall not apply to disclosure to all authorities engaged in the execution of a request under paragraph 2 of Article 7. This paragraph shall not limit the applicability of provisions for disclosure otherwise provided by municipal laws in the Contracting States.

## Chapter III
### OBLIGATIONS OF REQUESTED STATE IN EXECUTING REQUESTS

### Article 9

General Provisions for Executing Requests

1.  Except as otherwise provided in this Treaty, a request shall be executed in accordance with the usual procedure under the laws applicable for investigations or proceedings in the requested State with respect to offenses committed within its jurisdiction.

2.  The requested State may, upon application by the requesting State, consent to apply the procedures applicable in that State for:

a.  investigations or proceedings; and

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

b.      certification and transmission of documents,
        records or articles of evidence;

to the extent that such procedures are not incompatible with
the laws in the requested State. A search or seizure may only
be made in accordance with the law of the place where the re-
quest is executed.

3.  The appropriate judicial officers and other officials in
each of the two States shall, by all legal means within their
power, assist in the execution of requests from the other State.


## Article 10

### Duty to Testify in Requested State

1.  A person whose testimony or statement is requested under
this Treaty shall be compelled to appear, testify and produce
documents, records and articles of evidence in the same manner
and to the same extent as in criminal investigations or pro-
ceedings in the requested State. Such person may not be so com-
pelled if under the law in either State he has a right to re-
fuse.  If any person claims that such a right is applicable in
the requesting State, the requested State shall, with respect
thereto, rely on a certificate of the Central Authority of
the requesting State.

2.  The Swiss Central Authority shall, to the extent that a
right to refuse to give testimony or produce evidence is not
established, provide evidence or information which would dis-
close facts which a bank is required to keep secret or are
manufacturing or business secrets, and which affect a person
who, according to the request, appears not to be connected
in any way with the offense which is the basis of the request,
only under the following conditions:

a.      the request concerns the investigation or prosecution
        of a serious offense;

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

b.   the disclosure is of importance for obtaining or proving facts which are of substantial significance for the investigation or proceeding; and

c.   reasonable but unsuccessful efforts have been made in the United States to obtain the evidence or information in other ways.

3.   Whenever the Swiss Central Authority determines that facts of the nature referred to in paragraph 2 would have to be disclosed in order to comply with the request, it shall request from the United States information indicating why it believes that paragraph 2 does not prevent such disclosure. Where, in the opinion of the Swiss Central Authority, such belief has not been made credible, it need not accept the determination of the United States.

4.   Any acts of a witness or other person, in connection with the execution of a request, which would be punishable if committed against the administration of justice in the requested State shall be prosecuted in that State in accordance with the laws and enforcement policies therein, regardless of the procedure applied in executing the request.

## Article 11

### Locating Persons

If in the opinion of the requesting State information as to the location of persons who are believed to be within the territory of the requested State is of importance in an investigation or proceeding pending in the requesting State, the requested State shall make every effort to ascertain the whereabouts and addresses of such persons in its territory.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

## Article 12

Special Procedural Provisions

1. Upon express application of the requesting State that the testimony or statement of a person be under oath or affirmation, the requested State shall comply with such request even in the event no provisions therefor exist in its procedural laws. In that event, the time and form of the oath or affirmation shall be governed by the procedural provisions applicable in the requesting State. Where an oath is incompatible with law, an affirmation may be substituted, even though an oath has been requested, and testimony or a statement so obtained shall be admitted in the requesting State as though given under oath.

2. The presence of the suspect or defendant, his counsel or both, at the execution of a request will be permitted whenever the requesting State so requests.

3. (a)  Where the presence of representatives of an authority in the requesting State at the execution of a request is required by its law in order to obtain admissible evidence, the requested State shall permit such presence.

(b)  Where the requested State agrees that the complexity of the matter involved or other special factors described in the request for assistance indicate that such presence is likely to substantially facilitate a successful prosecution, it shall also permit such presence.

(c)  In other cases the requested State may also permit such presence upon application by the requesting State.

(d)  Nevertheless, if such presence would result in providing to the United States facts which in Switzerland a bank is required to keep secret, or facts which are manufacturing

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

or business secrets therein, Switzerland shall permit such presence only where the requirements for disclosure in paragraph 2 of Article 10 have been met.

(e)    Switzerland may, furthermore, at any time in the course of the execution of a request, exclude such representatives until it has been determined whether such requirements for disclosure are met.

4.  Any person whose presence is permitted under paragraph 2 or 3 shall have, in accordance with the procedures in the requested State, the right to ask questions which are not improper under the laws of either State.

5.  If in the requested State testimony or statements are sought in accordance with the procedures in the requesting State, persons giving such testimony or statements shall be entitled to retain counsel who may assist them during the proceeding. Such persons shall be expressly advised at the beginning of the proceeding of their right to counsel. After consent has been given by the Central Authority of the requesting State, counsel may be appointed, if necessary.

6.  If the requesting State expressly requests that a verbatim transcript be taken, the executing authority shall make every effort to comply.

Chapter IV

OBLIGATIONS OF REQUESTING STATE

Article 13

Restrictions on Use of Testimony

Any testimony obtained pursuant to this Treaty from a citizen of the requested State, interrogated as a witness and

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

not advised of his right to refuse testimony under paragraph 1 of Article 10, may not be introduced as evidence against such witness in a criminal proceeding in the requesting State unless the prosecution is for an offense against the administration of justice.

## Article 14

### Exclusion of Sanctions

No citizen of the requested State who has refused to give non-compulsory testimony or information or against whom compulsory measures had to be applied in the requested State pursuant to this Treaty shall be subjected to any legal sanction in the requesting State solely because he has exercised such rights as permitted under this Treaty.

## Article 15

### Protection of Secrecy

Evidence or information disclosed by the requested State pursuant to paragraph 2 of Article 10 shall, if in the opinion of that State its importance so requires and an application to that effect is made, be kept from public disclosure to the fullest extent compatible with constitutional requirements in the requesting state

## Chapter V
### DOCUMENTS, RECORDS AND ARTICLES OF EVIDENCE

## Article 16

### Court and Investigative Documents

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

1.  Upon request, the requested State shall make available to the requesting State on the same conditions and to the same extent as they would be available to authorities performing comparable functions in the requested State the following documents and articles:

    a.    judgments and decisions of courts; and

    b.    documents, records, and articles of evidence, including transcripts and official summaries of testimony, contained in the files of a court or an investigative authority, whether or not obtained by grand juries.

2.  Items specified in subparagraph b of paragraph 1 shall be furnished only if they relate solely to a closed case, or to the extent determined by the Central Authority of the requested State in its discretion.

## Article 17

### Completeness of Documents

All documents and records to be furnished, whether originals or copies thereof or extracts therefrom, shall be complete and in unedited form except to the extent paragraph 1 of Article 3 applies or the documents or records would disclose facts described in paragraph 2 of Article 10 and the requirements of subparagraphs a, b and c thereof are not met. Upon application of the requesting State, the requested State shall make every effort to furnish original documents and records.

## Article 18

### Business Records

1.  If the production of a document, including a book, paper, statement, record, account or writing, or extract therefrom,

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

936

other than an official document provided for in Article 19, of whatever character and in whatever form is requested, the official executing the request shall, upon specific request of the requesting State, require the production of such document pursuant to a procedural document. The official shall interrogate under oath or affirmation the person producing such document and examine it in order to determine if it is genuine and if it was made as a memorandum or record of an act, transaction, occurrence, or event, if it was made in the regular course of business and if it was the regular course of such business to make such document at the time of the act, transcation, occurrence or event recorded therein or within a reasonable time thereafter.

2.  The official shall cause a record of the testimony taken to be prepared and shall annex it to the document.

3.  If the official is satisfied as to the matters set forth in paragraph 1, he shall certify as to the procedure followed and his determinations and shall authenticate by his attestation the document, or a copy thereof or extract therefrom, and the record of the testimony taken. Such certification and attestation shall be signed by the official and state his official position. The seal of the authority executing the request shall be affixed.

4.  Any person subsequently transmitting the authenticated document shall certify as to the genuineness of the signature and the official position of the attesting person or, if there are any prior certifications, of the last certifying person. The final certification may be made by:

    a.    an official of the Central Authority of the requested State;

    b.    a diplomatic or consular official of the requesting State stationed in the requested State; or

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

    c.    a diplomatic or consular official of the requested State stationed in the requesting State.

5.  Where a request under this Article pertains to a pending court proceeding, the defendant, upon his application, may be present or represented by counsel or both, and may examine the person producing the document as to its genuineness and admissibility. In the event the defendant elects to be present or represented, a representative of the requesting State or a state or canton thereof may also be present and put such questions to the witness.

6.  Any document, copy thereof, entry therein or extract therefrom authenticated in accordance with this Article, and not otherwise inadmissible, shall be admissible as evidence of the act, transaction, occurrence or event in any court in the requesting State without any additional foundation or authentication.

7.  In the event that the genuineness of any document authenticated in accordance with this Article is denied by any party to a proceeding, he shall have the burden of establishing to the satisfaction of the court before which the proceeding is pending that such document is not genuine in order for the document to be excluded from evidence on such ground.

<u>Article 19</u>

Official Records

1.  Upon request, the requested State shall obtain a copy of an official record, or an entry therein, and shall have it authenticated by the attestation of an authorized person. Such attestation shall be signed by, and state the official position of, the attesting person. The seal of the authority

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

executing the request shall be affixed thereto. The procedures for certification set forth in paragraph 4 of Article 18 shall be followed.

2. In addition to any provision therefor in the municipal law of the requesting State, a copy of any official record in the requested State, or entry therein, shall be admissible in evidence without any additional foundation or authentication if authenticated and certified as provided in paragraph 1 and otherwise admissible.

## Article 20

### Testimony to Authenticate Documents

1. The Central Authority of the requested State shall have the authority to summon persons to appear in that State before representatives of the requesting State or a state or canton thereof in order to produce documents, records or articles of evidence supplied or to be supplied by the requested State and give testimony with respect thereto, whenever, under the applicable law in the requesting State, that is necessary for their admissibility in evidence in a criminal proceeding and such State makes a request to that effect.

2. The Central Authority of the requested State shall have the right to designate a representative to be present at the proceeding under paragraph 1. He shall be entitled to object to questions which either:

    a.   are incompatible with the law and practices in the requested State; or

    b.   go beyond the scope of paragraph 1.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

## Article 21

### Rights in Articles of Evidence

If the requested State, a state or canton thereof, or a third party claims title or other rights in documents, records or articles of evidence, the production of which was requested or effected, such rights shall be governed by the law of the place where they have been acquired. An obligation for production or surrender under this Treaty shall take precedence over the rights referred to in the preceding sentence. These rights, however, remain otherwise unaffected.

### Chapter VI
### SERVICE FOR REQUESTING STATE
### AND RELATED PROVISIONS

## Article 22

### Service of Documents

1. The competent authority in the requested State shall effect service of any procedural document, including a court judgment, decision or similar document, which is transmitted to it for this purpose by the requesting State. Unless service in a particular form is requested, it may be effected by registered mail. The requested State shall, upon application, effect personal service or, if consistent with the law in the requested State, service in any other form.

2. The requested State may refuse to effect service of legal process on a person, other than a national of the requesting State, calling for his appearance as a witness in that State if the person to be served is a defendant in the criminal proceeding to which the request relates.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

3. A request must be received by the Central Authority of the requested State not later than 30 days before the date set for any appearance. This time limit must be taken into consideration when setting the date for the appearance and forwarding the request. This period may be shortened by the Central Authority of the requested State in very urgent cases.

4. Proof of service shall be made by a receipt dated and signed by the person served or by a declaration specifying the form and date of service and signed by the person effecting it.

## Article 23

### Personal Appearance

1. When the personal appearance of a person, other than a defendant in the criminal proceeding to which the request relates, is considered especially necessary in the requesting State, such State shall so indicate in its request for service and shall state the subject matter of the interrogation. It will also indicate the kind and amount of allowances and expenses payable.

2. The executing authority shall invite the person served to appear before the appropriate authority in the requesting State and ask whether he agrees to the appearance. The requested State shall promptly notify the requesting State of the answer.

3. If requested by the requesting State, the requested State may grant an advance payment to the person agreeing to appear. This shall be recorded on the document calling for his appearance and taken into consideration by the requesting State when making payment.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

## Article 24

### Effect of Service

1. A person, other than a national of the requesting State, who has been served with legal process calling for his appearance in the requesting State, pursuant to Article 22, shall not be subjected to any civil or criminal forfeiture, other legal sanction or measure of restraint because of his failure to comply therewith, even if the document contains a notice of penalty.

2. The effect in the proceeding to which any procedural document served pursuant to Article 22 relates, arising from a refusal to accept it or comply therewith, shall be governed by the law in the requesting State.

3. Service of a procedural document pursuant to Article 22 on a person, other than a national of the requesting State, does not confer jurisdiction in the requesting State.

## Article 25

### Compelling Testimony in Requesting State

1. A person appearing before an authority in the requesting State pursuant to a legal process served under this Treaty may not be compelled to give testimony, make a statement or produce a document, record or article of evidence if under the law in either State he has a right to refuse, or if paragraph 2 below is applicable. Such a right shall be deemed to exist in the requested State to the extent that it could be invoked there if the acts which are the subject of the investigation or proceeding had been committed within its jurisdiction.

https://doi.org/10.1017/S002078290044016 Published online by Cambridge University Press

2.  Such a person appearing before an authority in the United States may only be compelled to give testimony, make a statement or produce a document, record or article of evidence which would disclose facts described in paragraph 2 of Article 10 to the extent that the requirements of subparagraphs a, b and c thereof are met.

3.  If any person claims that a right to refuse, pursuant to paragraph 1, exists in the requested State, or invokes the restrictions of paragraph 2, the requesting State shall in that regard rely on a certificate of the Central Authority of the requested State except that, after due consideration of the certificate, the requesting State may make its own determination as to the applicability of subparagraphs a, b and c of paragraph 2 of Article 10.

## Article 26

### Transfer of Arrested Persons

1.  A request pursuant to Article 22 may also be made if a person held in custody by an authority in the requested State is needed as a witness or for purposes of confrontation before an authority in the requesting State.

2.  The person in custody shall be made available to the requesting State if:

    a.    he consents;

    b.    no substantial extension of his custody is anticipated; and

    c.    the Central Authority of the requested State determines that there are no other important reasons against the transfer.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

3.   Execution of the request may be postponed for as long as the presence of the person is necessary for a criminal investigation or proceeding in the requested State.

4.   The requesting State shall have authority, and be obligated, to keep the person in custody unless the requested State authorizes his release. The requesting State shall return the person to the custody of the requested State as soon as circumstances permit or as otherwise agreed. That person, however, shall have the right to use such remedies and recourses as are provided by the law in the requesting State to assure that his custody or return is consistent with this Article and the Constitution of that State.

5.   The requesting State shall not decline to return a person transferred solely because such person is a national of that State.

## Article 27

### Safe Conduct

1.   A person appearing before an authority in the requesting State pursuant to legal process served under this Treaty shall not be prosecuted or, except as provided in paragraph 4 of Article 26, be detained or subjected to any other restriction of his personal liberty in that State with respect to any act or conviction which preceded his departure from the requested State.

2.   The restrictions of paragraph 1 shall not apply as to a person of whatever nationality appearing for the purpose of answering a criminal charge with respect to any act or conviction which is mentioned in the document calling for his appearance, or a lesser included offense.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

3. The safe conduct provided in this Article shall cease if ten days after the person appearing has been officially notified that his appearance is no longer required he has not used the opportunity to leave the requesting State or, after having left it, has returned.

Chapter VII
GENERAL PROCEDURES

Article 28

Central Authority

1. Requests for assistance shall be handled by a Central Authority. For the United States, the Central Authority shall be the Attorney General or his designee. For Switzerland, the Central Authority shall be the Division of Police of the Federal Department of Justice and Police in Bern.

2. Such requests which are approved by the Central Authority of the requesting State shall be made by that Authority on behalf of federal, state or cantonal courts or authorities which by law have been authorized to investigate or prosecute offenses.

3. The Central Authorities of the two States may communicate with each other directly for the purpose of carrying out the provisions of this Treaty.

Article 29

Content of Requests

1. A request for assistance shall indicate the name of the authority conducting the investigation or proceeding to which the request relates and insofar as possible shall also indicate:

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

a. the subject matter and nature of the investigation or proceeding and, except in cases of requests for service, a description of the essential acts alleged or sought to be ascertained;

b. the principal need for the evidence or information sought; and

c. the full name, place and date of birth, address and any other information which may aid in the identification of the person or persons who are at the time of the request the subject of the investigation or proceeding.

2. Such requests, to the extent necessary and insofar as possible, shall include:

a. information described under subparagraph c of paragraph 1 concerning any witness or other person who is affected by the request;

b. a description of the particular procedure to be followed;

c. a statement as to whether sworn or affirmed testimony or statements are required;

d. a description of the information, statement or testimony sought;

e. a description of the documents, records or articles of evidence to be produced or preserved as well as a description of the appropriate person to be asked to produce them and the form in which they should be reproduced and authenticated; and

f. information as to the allowances and expenses to which a person appearing in the requesting State will be entitled.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

## Article 30

### Language

1.  Requests for assistance and all accompanying documents shall be accompanied by a translation into French in the case of a request to Switzerland, and into English in the case of a request to the United States. The Swiss Central Authority may, whenever necessary, request a translation into German or Italian instead of French.

2.  The translation of all transcripts, statements, or documents made, or documents or records obtained, in executing the request shall be incumbent upon the requesting State.

## Article 31

### Execution of Requests

1.  If, in the opinion of the Central Authority of the requested State, a request does not comply with the provisions of this Treaty, it shall immediately so advise the Central Authority of the requesting State, giving the reasons therefor. The Central Authority of the requested State may take such preliminary action as it may deem advisable.

2.  If the request complies with the Treaty, the Central Authority of the requested State shall transmit the request for execution to the federal, state or cantonal court or authority having jurisdiction or selected by the Central Authority as appropriate. The court or authority to which a request is transmitted shall have all of the jurisdiction, authority and power in executing the request which it has in investigations or proceedings with respect to an offense committed within its jurisdiction. In the case of a request by

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

Switzerland, this paragraph shall authorize the use of grand juries to compel the attendance and testimony of witnesses and the production of documents, records and articles of evidence.

3.   The court or authority to which a request is transmitted pursuant to paragraph 2 shall, when necessary, issue a procedural document in accordance with its own procedural law to require the attendance and statement or testimony of persons, or the production or preservation of documents, records or articles of evidence.

4.   With the consent of the Central Authority of the requesting State, execution of a request may be entrusted to an appropriate private party, if circumstances so require.

5.   A request shall be executed as promptly as circumstances permit.


## Article 32

### Return of Completed Requests

1.   Upon completion of a request, the executing authority shall return the original request together with all information and evidence obtained, indicating place and time of execution, to the Central Authority of the requested State. The latter shall forward it to the Central Authority of the requesting State.


2.   The delivery of documents, records or articles of evidence may be postponed if they are needed in an official action pending in the requested State and, in case of documents or records, copies have been offered to the requesting State.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

## Article 33

### Inability to Comply

The requested State shall promptly inform the requesting State with a brief statement of the reasons when a request cannot be fully complied with because:

    a.    of the limitations of this Treaty;

    b.    after diligent search, the person whose testimony or statement is sought or who is to be served cannot be located or is believed to be dead;

    c.    after diligent search, the evidence cannot be located; or

    d.    of other physical impediments.

## Article 34

### Costs of Assistance

1.  The following expenses incurred by an authority in the requested State in carrying out a request shall, upon application, be paid or reimbursed by the requesting State: travel expenses; fees of experts; costs of stenographic reporting by other than salaried government employees; costs of interpreters; costs of translation; and fees of private counsel appointed with the approval of the requesting State for a person giving testimony or for a defendant.

2.  No reimbursement shall be claimed for any other expenses.

3.  All expenses incurred in relation to a request pursuant to Article 26 shall be borne by the requesting State.

4.  No bond, guarantee, or other security for the expected costs shall be required.

https://doi.org/10.1017/S0020782890044016 Published online by Cambridge University Press

## Article 35

### Return of Articles of Evidence

Any original documents, records or articles of evidence, delivered in execution of a request, shall be returned by the requesting State as soon as possible, unless the requested State declares that return will not be required. However, an authority in the requesting State shall be entitled to retain articles for disposition in accordance with its law if such articles belong to persons in that State and if no title or other rights are claimed in such articles by a person in the requested State, or if any claims with respect to such rights have been secured.

Chapter VIII
NOTICE AND REVIEW OF DETERMINATIONS

### Article 36

### Notice

Upon receipt of a request for assistance, the requested State shall notify:

a.   any person from whom a statement or testimony or documents, records, or articles of evidence are sought;

b.   any suspect or defendant in a criminal investigation or proceeding in the requesting State who resides in the requested State if the municipal law in the requesting State generally or for admissibility of evidence so requires, and that State so requests; and

c.   any defendant in a criminal proceeding in the requesting State, where the law in the requested State requires such notice.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

## Article 37

### Review of Determinations

1.  The existence of restrictions in this Treaty shall not give rise to a right on the part of any person to take any action in the United States to suppress or exclude any evidence or to obtain other judicial relief in connection with requests under this Treaty, except with respect to paragraph 2 of Article 9; paragraph 1 of Article 10; Article 13; paragraph 7 of Article 18; paragraph 1 of Article 25; and Articles 26 and 27.

2.  The right to and procedures for appeal in Switzerland against decisions of Swiss authorities in connection with requests under this Treaty shall be regulated in accordance with this Treaty by domestic legislation.

3.  In the case of any claim that a State, either as the requesting State or the requested State, has failed to comply with obligations imposed by this Treaty and as to such claim a remedy is not provided by paragraph 1 or 2, the claimant may inform the Central Authority of the other State. Where such claim is deemed by that other State to require explanation, an inquiry shall be put to the first-mentioned State; if necessary, the matter shall be resolved under Article 39.

### Chapter IX
### FINAL PROVISIONS

## Article 38

### Effect on Other Treaties and Municipal Laws

1.  Whenever the procedures provided by this Treaty would facilitate assistance in criminal matters between the Contracting Parties provided under any other convention or under the

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

law in the requested State, the procedure provided by this Treaty shall be used to furnish such assistance. Assistance and procedures provided by this Treaty shall be without prejudice to, and shall not prevent or restrict, any available under any other international convention or arrangement or under the municipal laws in the Contracting States.

2.  This Treaty shall not prevent the Contracting Parties from conducting investigations and proceedings in criminal matters in accordance with their respective municipal laws.

3.  The provisions of this Treaty shall take precedence over any inconsistent provisions of the municipal laws in the Contracting States.

4.  The furnishing of information for use in cases concerning taxes which come under the Convention of May 24, 1951, for the Avoidance of Double Taxation with Respect to Taxes on Income, shall be governed exclusively by the provisions thereof, except for investigations or proceedings described in Chapter II of this Treaty to the extent that the conditions in paragraph 2 of Article 7 are satisfied.

<u>Article 39</u>

Consultation and Arbitration

1.  When it appears advisable, representatives of the Central Authorities may exchange views in writing or meet together for an oral exchange of opinions on the interpretation, application or operation of this Treaty generally or as to a specific case.

2.  The Central Authorities shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of this Treaty. Any dispute

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

between the Contracting Parties as to the interpretation or application of the present Treaty, not satisfactorily resolved by the Central Authorities or through diplomatic negotiation between the Contracting Parties, shall, unless they agree to settlement by some other means, be submitted, upon request of either Contracting Party, to an arbitral tribunal of three members. Each Contracting Party shall appoint one arbitrator who shall be a national of that State and these two arbitrators shall nominate a chairman who shall be a national and resident of a third State.

3.  If either Contracting Party fails to appoint its arbitrator within three months from the date of the request for the submission of the dispute to arbitration, he shall be appointed, at the request of either Party, by the President of the International Court of Justice.

4.  If both arbitrators cannot agree upon the choice of a chairman within two months following their appointment, he shall be appointed, at the request of either Contracting Party, by the President of the International Court of Justice.

5.  If, in the cases specified under paragraphs 3 and 4, the President of the International Court of Justice is prevented from acting or is a national of one of the Parties, the appointments shall be made by the Vice-President. If the Vice-President is prevented from acting or is a national of one of the Parties, the appointments shall be made by the next senior Judge of the Court who is not a national of either Party.

6.  Unless the Contracting Parties decide otherwise, the tribunal shall determine its own procedure.

7.  The decisions of the tribunal shall be binding on the Contracting Parties.

Article 40

Definition of Terms

1.  In this Treaty:

    a.    the terms "requesting State" and "requested State" shall be deemed to mean the United States of America or the Swiss Confederation, as the context requires;

    b.    the term "state" or "states" shall be deemed to mean any one or more of the states of the United States of America, its territories and possessions, the District of Columbia and the Commonwealth of Puerto Rico, as the context requires;

    c.    the term "canton" or "cantons" shall be deemed to mean any one or more of the cantons of the Swiss Confederation;

    d.    in any place where the word "in" precedes "requesting State" or "requested State", the phrase is used to refer to all of the territory under the jurisdiction of the United States including its states as defined in subparagraph b, and subdivisions thereof, or to the territory of Switzerland, including its cantons, as, and to the extent, the context requires; and

    e.    references to law or procedure in the requesting State or law or procedure to be used in executing requests, are, respectively, intended to refer to the law or procedure which is applicable to the investigation or proceeding being conducted or which would ordinarily be used in comparable investigations or proceedings by the authority executing the request.

2.  Where a provision of this Treaty requires the use of a seal by an authority, other than the Central Authority, that

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

954

authority may employ a hand stamp in lieu thereof, if that authority customarily uses such a stamp in connection with its own matters of like importance. The imprint of such stamp shall be treated as a seal for the purposes of this Treaty and the admissibility of evidence.

3.  The expression "articles of evidence" shall not be construed to exclude items which may not be admissible in evidence.

4.  Provisions in this Treaty as to admissibility of evidence shall not affect the principle of free consideration of evidence insofar as the courts of Switzerland are concerned.

5.  References to assistance required to be, or which may be, furnished pursuant to this Treaty shall be deemed to include assistance of a compulsory as well as noncompulsory nature.

6.  References to a "request" or "request for assistance" shall be deemed to include any attachments and supplements thereto.

7.  References to "acts" in connection with offenses shall be deemed to include omissions.

8.  The term "defendant" shall, unless the context otherwise indicates, be deemed to include a suspect who is a subject of an investigation.

9.  The term "counsel" shall be deemed to mean counsel admitted in either State.

10. The term "antitrust laws", as applied to laws in the United States, refers to those provisions compiled in

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

Chapter 1, Title 15, United States Code, and Chapter 2 of the same Title up to but not including Section 77a, et seq.

## Article 41

### Entry into Force and Termination

1.  This Treaty shall be ratified and the instruments of ratification shall be exchanged at Washington as soon as possible.

2.  This Treaty shall enter into force 180 days after the date of the exchange of the instruments of ratification and apply with respect to acts committed before or after entry into force of this Treaty.

3.  This Treaty may be terminated by either Contracting Party at any time after five years from entry into force, provided that at least six months prior notice of termination has been given in writing.

IN WITNESS WHEREOF the Plenipotentiaries have signed this Treaty.

DONE at Bern, in duplicate, in the English and German languages, the two texts being equally authoritative, this 25th of May, 1973.

For the President of the
United States of America:

For the Swiss Federal Council:

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

## SCHEDULE

## OFFENSES FOR WHICH COMPULSORY MEASURES ARE AVAILABLE

1. Murder.

2. Voluntary manslaughter.

3. Involuntary manslaughter.

4. Malicious wounding; inflicting grievous bodily harm intentionally or through gross negligence.

5. Threat to commit murder; threat to inflict grievous bodily harm.

6. Unlawful throwing or application of any corrosive or injurious substances upon the person of another.

7. Kidnaping; false imprisonment or other unlawful deprivation of the freedom of an individual.

8. Willful nonsupport or willful abandonment of a minor or other dependent person when the life of that minor or other dependent person is or is likely to be injured or endangered.

9. Rape; indecent assault.

10. Unlawful sexual acts with or upon children under the age of sixteen years.

11. Illegal abortion.

12. Traffic in women and children.

13. Bigamy.

14. Robbery.

15. Larceny; burglary; house-breaking or shop-breaking.

16. Embezzlement; misapplication or misuse of funds.

17. Extortion; blackmail.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

18. Receiving or transporting money, securities or other property, knowing the same to have been embezzled, stolen or fraudulently obtained.

19. Fraud, including:

    a. obtaining property, services, money or securities by false pretenses or by defrauding by means of deceit, falsehood or any fraudulent means;

    b. fraud against the requesting State, its states or cantons or municipalities thereof;

    c. fraud or breach of trust committed by any person;

    d. use of the mails or other means of communication with intent to defraud or deceive, as punishable under the laws of the requesting State.

20. Fraudulent bankruptcy.

21. False business declarations regarding companies and cooperative associations, inducing speculation, unfaithful management, suppression of documents.

22. Bribery, including soliciting, offering and accepting.

23. Forgery and counterfeiting, including:

    a. the counterfeiting or forgery of public or private securities, obligations, instructions to make payment, invoices, instruments of credit or other instruments;

    b. the counterfeiting or alteration of coin or money;

    c. the counterfeiting or forgery of public seals, stamps or marks;

    d. the fraudulent use of the foregoing counterfeited or forged articles;

    e. knowingly and without lawful authority, making or having in possession any instrument, instrumentality, tool or machine adapted or intended for the counterfeiting of money, whether coin or paper.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

24. Knowingly and willfully making, directly or through another, a false, fictitious or fraudulent statement or representation in a matter within the jurisdiction of any department or agency in the requesting State, and relating to an offense mentioned in this Schedule or otherwise falling under this Treaty.

25. Perjury, subornation of perjury and other false statements under oath.

26. Offenses against the laws relating to bookmaking, lotteries and gambling when conducted as a business.

27. Arson.

28. Willful and unlawful destruction or obstruction of a railroad, aircraft, vessel or other means of transportation or any malicious act done with intent to endanger the safety of any person travelling upon a railroad, or in any aircraft, vessel or other means of transportation.

29. Piracy; mutiny or revolt on board an aircraft or vessel against the authority of the captain or commander of such aircraft or vessel; any seizure or exercise of control, by force or violence or threat of force or violence, of an aircraft or vessel.

30. Offenses against laws (whether in the form of tax laws or other laws) prohibiting, restricting or controlling the traffic in, importation or exportation, possession, concealment, manufacture, production or use of:

    a.   narcotic drugs, cannabis sativa-L, psychotropic drugs, cocaine and its derivatives;

    b.   poisonous chemicals and substances injurious to health;

    c.   firearms, other weapons, explosive and incendiary devices;

when violation of such laws causes the violator to be liable to criminal prosecution and imprisonment.

31. Unlawful obstruction of court proceedings or proceedings before governmental bodies or interference with an investigation of a violation of a criminal statute by the influencing, bribing, impeding, threatening, or injuring of any officer of the court, juror, witness, or duly authorized criminal investigator.

32. Unlawful abuse of official authority which results in deprivation of the life, liberty or property of any person.

33. Unlawful injury, intimidation or interference with voting or candidacy for public office, jury service, government employment, or the receipt or enjoyment of benefits provided by government agencies.

34. Attempts to commit, conspiracy to commit, or participation in, any of the offenses enumerated in the preceding paragraphs of this Schedule; accessory after the fact to the commission of any of the offenses enumerated in this Schedule.

35. Any offense of which one of the above listed offenses is a substantial element, even if, for purposes of jurisdiction of the United States Government, elements such as transporting, transportation, the use of the mails or interstate facilities are also included.


Bern, May 25, 1973

His Excellency
    Dr. Albert Weitnauer,
       Ambassador of Switzerland,
         Bern.


Excellency:

    I have the honor to refer to the Treaty between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters signed on May 25, 1973, and in particular to Articles 18 and 20 thereof.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

It is the understanding of the United States Government that questions which may be asked by representatives of the requesting State under Article 20 do not go beyond the scope of paragraph 1 of that Article insofar as they relate to genuineness and the admissibility of the documents or records. Such questions would include those relating to (1) the responsibility of the witness with respect to the making and maintaining of the documents or records; (2) whether the documents or records were made as memoranda or records of the acts, transactions, occurrences or events they purport to record; (3) whether the documents or records were made in the regular course of business; (4) whether it was the regular course of business to make the documents or records at the time of the act, transaction, occurrence or event recorded therein or within a reasonable time thereafter; (5) the meaning of the entries in the documents or records; and (6) the procedure for making and maintaining the documents or records and obtaining the information recorded therein.

The above also applies to the scope of questions under paragraph 5 of Article 18.

I would appreciate a letter from Your Excellency confirming that the understanding described above is also the understanding of the Swiss Federal Council.

Accept, Excellency, the renewed assurances of my highest consideration.

Shelby Cullom Davis
Ambassador of the
United States of America



EIDGENÖSSISCHES POLITISCHES DEPARTEMENT

Bern, May 25, 1973.

His Excellency
Shelby Cullom Davis
Ambassador of the United States
of America

B e r n

Excellency·

I have the honor to acknowledge receipt of your letter of May 25, 1973, which reads as follows:

"I have the honor to refer to the Treaty between the United States of America and the Swiss Confederation on Mutual Assistance on Criminal Matters signed on May 25, 1973, and in particular to Articles 18 and 20 thereof.

It is the understanding of the United States Government that questions which may be asked by representatives of the requesting State under Article 20 do not go beyond the scope of paragraph 1 of that Article insofar as they relate to the genuineness and admissibility of the documents or records. Such questions would include those relating to (1) the responsibility of the witness with respect to the making and maintaining of the documents or records; (2) whether the documents or records were made as memoranda or records of the acts, transactions, occurrences or events they purport to record; (3) whether the documents or records were made in the regular course of business; (4) whether it was the regular course of business to make the documents or records at the time of the act, transaction, occurrence or event recorded therein or within a reasonable time thereafter; (5) the meaning of the entries in the documents or records; and (6) the procedure for making and maintaining the documents or records and obtaining the information recorded therein.

The above also applies to the scope of questions under paragraph 5 of Article 18.

I would appreciate a letter from your Excellency confirming that the understanding described above is also the understanding of the Swiss Federal Council."

I have the honor to confirm that the understanding set forth in your letter accords with that of the Swiss Federal Council.

Accept, Excellency, the renewed assurances of my highest consideration.

Dr. Albert Weitnauer
Ambassador of Switzerland

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

962

Bern, May 25, 1973

**His Excellency**
        **Dr. Albert Weitnauer,**
            **Ambassador of Switzerland,**
                **Bern.**

Excellency:

I have the honor to refer to the Treaty between the
United States of America and the Swiss Confederation on
Mutual Assistance in Criminal Matters signed on May 25,
1973, and in particular to Article 5 thereof, and to bring
to your attention the understanding of the United States
Government with respect to that Article:

(A) The limitations on use set forth in Article
5 are intended only as an agreement between
Governments and, as provided in paragraph 1 of
Article 37, do not give rise to a right on the
part of any person to take any action in the
United States to suppress or exclude any evi-
dence or to obtain other judicial relief. Where
any person alleges that any authority in the
United States has used materials obtained from
Switzerland in a manner inconsistent with the
limitations of Article 5, his recourse would be
for him to inform the Central Authority of
Switzerland for consideration only as a matter
between Governments and he has no standing to
have such allegations considered in any
proceeding in the United States.  Where such
allegations are deemed by the requested State to
require explanation, an inquiry may be put to
the requesting State.  The response of that
State may, as appropriate, be in writing or an
oral exchange pursuant to the consultation pro-
cedure of paragraph 1 of Article 39.

(B) The reference in subparagraph b of paragraph
3 of Article 5 to any criminal investigation or
proceeding for which assistance may be given
includes investigations or proceedings for which
assistance is required to be or may be granted
under the Treaty, whether or not compulsory
measures would or could be utilized.

(C) The limitations on use set forth in Article 5
are not intended to restrict the use of informa-
tion which has become public any more than the
use of information which has become public would
be restricted in the requested State.

(D) The limitations on use set forth in Article 5
are not intended to apply to the submission of

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

additional requests for assistance under the
Treaty where the requests relate to offenses
which are either listed in the Schedule or which
are serious in the sense of paragraph 2 of
Article 10.

(E) The limitations on use set forth in Article 5
are not intended to apply to any use to which the
requested State specifically consents.

I would appreciate a letter from Your Excellency
confirming that the understanding described above is also
the understanding of the Swiss Federal Council.

Accept, Excellency, the renewed assurances of my
highest consideration.

Shelby Cullom Davis
Ambassador of the
United States of America



EIDGENÖSSISCHES POLITISCHES DEPARTEMENT

Bern, May 25, 1973.

His Excellency
Shelby Cullom Davis
Ambassador of the United States
of America

B e r n

Excellency,

I have the honor to acknowledge receipt of your letter
of May 25, 1973, which reads as follows:

"I have the honor to refer to the Treaty between the
United States of America and the Swiss Confederation on
Mutual Assistance in Criminal Matters signed on May 25, 1973,
and in particular to Article 5 thereof, and to bring to your
attention the understanding of the United States Government
with respect to that Article:

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

964

(A)  The limitations on use set forth in Article 5 are in-
     tended only as an agreement between Governments and, as
     provided in paragraph 1 of Article 37, do not give rise
     to a right on the part of any person to take any action
     in the United States to suppress or exclude any evidence
     or to obtain other judicial relief. Where any person
     alleges that any authority in the United States has used
     materials obtained from Switzerland in a manner incon-
     sistent with the limitations of Article 5, his recourse
     would be for him to inform the Central Authority of
     Switzerland for consideration only as a matter between
     Governments and he has no standing to have such allegations
     considered in any proceeding in the United States. Where
     such allegations are deemed by the requested State to
     require explanation, an inquiry may be put to the re-
     questing State. The response of that State may, as
     appropriate, be in writing or an oral exchange pursuant
     to the consultation procedure of paragraph 1 of Article 39.

(B)  The reference in subparagraph b. of paragraph 3 of
     Article 5 to any criminal investigation or proceeding
     for which assistance may be given includes investigations
     or proceedings for which assistance is required to be
     or may be granted under the Treaty, whether or not com-
     pulsory measures would or could be utilized.

(C)  The limitations on use set forth in Article 5 are not
     intended to restrict the use of information which has
     become public any more than the use of information which
     has become public would be restricted in the requested
     State.

(D)  The limitations on use set forth in Article 5 are not
     intended to apply to the submission of additional re-
     quests for assistance under the Treaty where the requests
     relate to offenses which are either listed in the Schedule
     or which are serious in the sense of paragraph 2 of
     Article 10.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

(E)   The limitations on use set forth in Article 5 are not
intended to apply to any use to which the requested State
specifically consents.

I would appreciate a letter from your Excellency con-
firming that the understanding described above is also the
understanding of the Swiss Federal Council."

I have the honor to confirm that the understanding set
forth in your letter accords with that of the Swiss Federal
Council.

Accept, Excellency, the renewed assurances of my highest
Consideration.

A. Weitnauer

Dr. Albert Weitnauer
Ambassador of Switzerland



**EIDGENÖSSISCHES POLITISCHES DEPARTEMENT**

Bern, May 25, 1973.

His Excellency
Shelby Cullom Davis
Ambassador of the
United States of America

**B e r n**

Excellency:

I have the honor to refer to the Treaty between the
Swiss Confederation and the United States of America on
Mutual Assistance in Criminal Matters signed on May 25, 1973,
and in particular to paragraph 2 of Article 10 thereof.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

With respect to the expression "serious offense" used in that provision, it is the understanding of the Swiss Federal Council that this standard is based on the objective gravity of the offense, unless the pertinent facts and other circumstances, such as the degree of malice and mode of perpetration, justify such characterization. In applying the objective gravity standard to certain of the offenses listed in the Schedule, the following criteria are applicable:

1.  In the absence of clear indication to the contrary, an offense will be presumed to be "serious" if:

    a.  It is specified in items 1, 2, 5, 7, 9, 10, 12, 14, 17, 22, 25, 28-30, 32 and 33. However, with respect to the offenses specified in item 30, each case will be examined individually to determine whether the nature and quantity of the materials, the conduct charged, and the other activities of the suspect or defendant warrant characterization as serious;

    b.  violence or weapons are used;

    c.  it is committed by a gang; or

    d.  it results in serious harm to the victim.

2.  In the case of property offenses, for example, items 15, 16, 18-21, 23, and 27 of the Schedule, an offense will be considered "serious" if the measurable amount involved in the offense is in excess of $1000. In the event that monetary values should undergo a material change in either country or both, the determinate amount of the offense shall, in procedures pursuant to paragraphs 1 and 2 of Article 39, be reexamined and, if necessary, be redetermined.

3.  Whether the offenses referred to in items 34 and 35 of the Schedule are "serious" will be determined by considering the underlying offenses.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

As to requests made for the purpose of prosecuting a person described in paragraph 2 of Article 6, in determining whether the condition of paragraph 2.a of Article 10 has been met, the acts of violence or other serious offenses committed by the organized criminal group shall be taken into account.

I would appreciate a letter from your Excellency confirming that the understanding described above is also the understanding of the United States Government.

Accept, Excellency, the renewed assurances of my highest consideration.

Dr. Albert Weitnauer
Ambassador of Switzerland

Bern, May 25, 1973

His Excellency
    Dr. Albert Weitnauer,
        Ambassador of Switzerland,
            Bern.

Excellency:

I have the honor to acknowledge receipt of your letter of May 25, 1973, which reads as follows:

"I have the honor to refer to the Treaty between the Swiss Confederation and the United States of America on Mutual Assistance in Criminal Matters signed on May 25, 1973, and in particular to paragraph 2 of Article 10 thereof.

"With respect to the expression 'serious offense' used in that provision, it is the understanding of the Swiss Federal Council that this standard is based on the objective gravity of the offense, unless the pertinent facts and

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

other circumstances, such as the degree of malice and mode of perpetration, justify such characterization.  In applying the objective gravity standard to certain of the offenses listed in the Schedule, the following criteria are applicable:

"1.   In the absence of clear indication to the contrary, an offense will be presumed to be 'serious' if:

"a.   It is specified in items 1, 2, 5, 7, 9, 10, 12, 14, 17, 22, 25, 28-30, 32 and 33.  However, with respect to the offenses specified in item 30, each case will be examined individually to determine whether the nature and quantity of the materials, the conduct charged, and the other activities of the suspect or defendant warrant characterization as serious;

"b.   violence or weapons are used;

"c.   it is committed by a gang; or

"d.   it results in serious harm to the victim.

"2.   In the case of property offenses, for example, items 15, 16, 18-21, 23, and 27 of the Schedule, an offense will be considered 'serious' if the measurable amount involved in the offense is in excess of $1,000.  In the event that monetary values should undergo a material change in either country or both, the determinate amount of the offense shall, in procedures pursuant to paragraphs 1 and 2 of Article 39, be reexamined and, if necessary, be redetermined.

"3.   Whether the offenses referred to in items 34 and 35 of the Schedule are 'serious' will be determined by considering the underlying offenses.

"As to requests made for the purpose of prosecuting a person described in paragraph 2 of Article 6, in determining whether the condition of paragraph 2.a of Article 10 has been met, the acts of violence or other serious offenses committed by the organized criminal group shall be taken into account.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

"I would appreciate a letter from your Excellency confirming that the understanding described above is also the understanding of the United States Government."

I have the honor to confirm that the understanding set forth in your letter accords to that of the Government of the United States of America.

Accept, Excellency, the renewed assurances of my highest consideration.

> Shelby Cullom Davis
> Ambassador of the
> United States of America

Bern, May 25, 1973·

His Excellency
    Dr. Albert Weitnauer,
        Ambassador of Switzerland,
            Bern.

Excellency:

I have the honor to refer to the Treaty between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters signed on May 25, 1973, and particularly Articles 3, 9, 10, 12, and 25 thereof.

It is the understanding of the United States Government that Swiss bank secrecy and Article 273 of the Swiss Penal Code shall not serve to limit the assistance provided for by this Treaty, except as provided by paragraph 2 of Article 10.

It is nevertheless understood that the disclosure of facts which a bank is ordinarily required to keep secret could in exceptional circumstances also constitute facts the transmission of which to the requesting State would be likely to result in prejudice to "similar essential interests" of the requested State. Similarly, the disclosure of facts which are manufacturing or business secrets could in exceptional circumstances be of such significant importance that it would result in prejudice to "similar essential interests" of the requested State. In either case the requested State would have the right under paragraph 1 of Article 3 to refuse assistance.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

I would appreciate a letter from Your Excellency confirming that the foregoing also represents the understanding of the Swiss Federal Council.

Accept, Excellency, the renewed assurances of my highest consideration.

Shelby Cullom Davis
Ambassador of the
United States of America



EIDGENÖSSISCHES POLITISCHES DEPARTEMENT

Bern, May 25, 1973.

His Excellency
Shelby Cullom Davis
Ambassador of the
United States of America

<u>B e r n</u>

Excellency,

I have the honor to acknowledge receipt of your letter of May 25, 1973, which reads as follows:

"I have the honor to refer to the Treaty between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters signed on May 25, 1973, and particularly Articles 3, 9, 10, 12, and 25 thereof.

It is the understanding of the United States Government that Swiss bank secrecy and Article 273 of the Swiss Penal Code shall not serve to limit the assistance provided for by this Treaty, except as provided by paragraph 2 of Article 10.

It is nevertheless understood that the disclosure of facts which a bank is ordinarily required to keep secret could

in exceptional circumstances also constitute facts the trans-
mission of which to the requesting State would be likely to
result in prejudice to 'similar essential interests' of the
requested State. Similarly, the disclosure of facts which are
manufacturing or business secrets could in exceptional circum-
stances be of such significant importance that it would result
in prejudice to 'similar essential interests' of the requested
State. In either case the requested State would have the right
under paragraph 1 of Article 3 to refuse assistance.

I would appreciate a letter from your Excellency con-
firming that the foregoing also represents the understanding
of the Swiss Federal Council."

I have the honor to confirm that the understanding
set forth in your letter accords with that of the Swiss Federal
Council.

Accept, Excellency, the renewed assurances of my highest
consideration.

Dr. Albert Weitnauer
Ambassador of Switzerland

Bern, May 25, 1973

His Excellency
      Dr. Albert Weitnauer,
            Ambassador of Switzerland,
                  Bern.

Excellency:

I have the honor to refer to the Treaty between the
United States of America and the Swiss Confederation on
Mutual Assistance in Criminal Matters signed on May 25,
1973, and in particular to paragraph 1 of Article 22
thereof.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

972

It is the understanding of the United States
Government that the term "procedural documents" when used
in that paragraph and elsewhere in this Treaty includes,
but is not limited to, such documents as subpoenas and
*summonses to appear or to appear and produce documents,*
and summonses to appear and answer charges, in the
requested State.

I would appreciate a letter from Your Excellency
confirming that the understanding described above is also
the understanding of the Swiss Federal Council.

Accept, Excellency, the renewed assurances of my
highest consideration.

Shelby Cullom Davis
Ambassador of the
United States of America



## EIDGENÖSSISCHES POLITISCHES DEPARTEMENT

Bern, May 25, 1973.

His Excellency
Shelby Cullom Davis
Ambassador of the United States
of America

B e r n

Excellency:

I have the honor to acknowledge receipt of your letter
of May 25, 1973, which reads as follows:

"I have the honor to refer to the Treaty between the
United States of America and the Swiss Confederation on
Mutual Assistance in Criminal Matters signed on May 25, 1973,
and in particular to paragraph 1 of Article 22 thereof.

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

It is the understanding of the United States Government that the term 'procedural documents' when used in that paragraph and elsewhere in the Treaty includes, but is not limited to, such documents as subpoenas and summonses to appear or to appear and produce documents, and summonses to appear and answer charges, in the requested State.

I would appreciate a letter from your Excellency confirming that the understanding described above is also the understanding of the Swiss Federal Council."

I have the honor to confirm that the understanding set forth in your letter accords with that of the Swiss Federal Council.

Accept, Excellency, the renewed assurances of my highest consideration.

Dr. Albert Weitnauer
Ambassador of Switzerland

Bern, May 25, 1973

His Excellency
     Dr. Albert Weitnauer,
          Ambassador of Switzerland,
               Bern.

Excellency:

I have the honor to refer to the Treaty between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters signed on May 25, 1973, and in particular to Article 15 thereof.

With respect to the obligation under Article 15 to limit the disclosure of evidence or information furnished by Switzerland, your attention is directed to the Sixth Amendment to the United States Constitution which provides that:

974

"In all criminal prosecutions, the accused shall
enjoy the right to a speedy and public trial, by
an impartial jury of the State and district
wherein the crime shall have been committed,
which district shall have been previously
ascertained by law, and to be informed of the
nature and cause of the accusation; to be con-
fronted with the witnesses against him; to have
compulsory process for obtaining witnesses in his
favor, and to have the Assistance of Counsel for
his defence."   (emphasis supplied)

From interpretations of this Amendment by Federal
courts in the United States, it would appear that any
attempt to restrict public access to testimony relating
to the guilt or innocence of an individual being prose-
cuted would be violative of the public trial provision.
This would apply to testimony taken in Switzerland
pursuant to this Treaty and offered in evidence in a
criminal trial in the United States.

Interpretations of this Amendment also indicate
that public access cannot be denied to documents intro-
duced in evidence which relate to the guilt or innocence
of the defendant without violating the public trial pro-
vision of the Constitution.  However, since the question
of denying public access to documents is not entirely
free from doubt, the United States Government will seek
to obtain a protective order, where appropriate, in an
early case in which documentary evidence is furnished by
Switzerland.  Such protective order would seek to confine
access to the documentary evidence itself to the court,
jury, prosecution, defendant, and his counsel at the
trial and appellate stages.  To the extent that the use
of a protective order is upheld by our courts, the United
States Government will apply for such orders in handling
documentary evidence furnished by Switzerland pursuant
to the Treaty as to which Switzerland makes a request
pursuant to Article 15.

Moreover, a defendant in a criminal proceeding,
should he voluntarily choose to do so, is not prohibited
from seeking to waive his constitutional right to a
public trial which, if granted, would result in limiting
public access to evidence and information obtained from
Switzerland.

Regardless of the extent to which secrecy is per-
mitted during the trial or appeal, the United States
Government will, after completion of the trial or appeal,
seek to have the court seal those parts of the official
file which consist of materials obtained by the United
States from Switzerland under this Treaty and are the
subject of an application by Switzerland pursuant to

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press

Article 15 of this Treaty.

I would appreciate a letter from Your Excellency acknowledging this communication.

Accept, Excellency, the renewed assurances of my highest consideration.

Shelby Cullom Davis
Ambassador of the
United States of America



EIDGENÖSSISCHES POLITISCHES DEPARTEMENT

Bern, May 25, 1973.

His Excellency
Shelby Cullom Davis
Ambassador of the United States
of America

Excellency:

I have taken due note of your letter of May 25, 1973, setting out what Article 15 means in some more detail. I should like to thank you for your explanation.

You have advised me that for constitutional reasons evidence or information described in paragraph 2 of Article 10 and provided by Switzerland pursuant to that paragraph, probably cannot be kept secret if it is introduced into evidence or otherwise used in a criminal trial in the United States to the extent the Swiss Government would consider appropriate.

The Swiss Government very much hopes that the efforts to be made by the Government of the United States according to your letter to obtain a higher degree of protection for such evidence or information will be successful and - as your legal system evolves - go beyond the limits you indicated.

Accept, Excellency, the renewed assurances of my highest consideration.

A. Weitnauer

Dr. Albert Weitnauer
Ambassador of Switzerland

https://doi.org/10.1017/S0020782900044016 Published online by Cambridge University Press