UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 18-CR-80160-DIMITROULEAS/MATTHEWMAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLAUDIA PATRICIA DIAZ GUILLEN and
ADRIAN JOSE VELASQUEZ FIGUEROA,

    Defendants.
_____/

FILED BY____KJZ____D.C.

Oct 24, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER FOLLOWING THIRD[1] *GARCIA* HEARING

**THIS CAUSE** is before the Court upon the following: (1) Andrew S. Feldman's Notice of Temporary Appearance [DE 83] on behalf of Defendant Adrian Jose Velasquez Figueroa ("Velasquez Figueroa"); (2) the Court's September 22, 2022 Order Following Second *Garcia* Hearing [DE 159], in which the Court accepted Mr. Feldman's permanent representation of Defendant Claudia Patricia Diaz Guillen ("Diaz Guillen") and Marissel Descalzo's continued representation of Defendant Diaz Guillen; (3) Defendant Velasquez Figueroa's recent extradition from Spain and initial appearance in this case [DE 194]; (4) the Government's Motion for a *Garcia*

---

[1] The Court previously held a *Garcia*/Rule 44(c) hearing in this case on a prior Government motion which addressed potential conflict of interest issues based on Marissel Descalzo's prior representation of a potential witness. *See* DE 65. After a full hearing, the Court entered its Order dated May 31, 2022, allowing Ms. Descalzo's representation of Diaz Guillen in this case. [DE 72]. Subsequently, on September 22, 2022, the Court held a second *Garcia*/Rule 44(c) hearing concerning whether Andrew S. Feldman, Esq. could represent Defendant Diaz Guillen due to his simultaneous representation of then-fugitive co-defendant Adrian Jose Velasquez Figueroa—Defendant Diaz Guillen's husband— who was awaiting extradition to the United States from Spain. *See* DE 143. At the second *Garcia*/Rule 44(c) hearing, the Court also addressed whether Ms. Descalzo could continue to represent Defendant Diaz Guillen in light of Ms. Descalzo's representation that she been jointly representing Defendants Velasquez Figueroa and Diaz Guillen.

1

Hearing as to Defendant Velasquez Figueroa [DE 201]; and (5) the Court's Order Granting the Government's Motion for a *Garcia* Hearing [DE 205].

The Court held a *Garcia*/Rule 44(c) hearing on October 19, 2022, during which the Court considered whether Mr. Feldman and Ms. Descalzo could continue to jointly represent Defendants Velasquez Figueroa and Diaz Guiillen in light of Defendant Velasquez Figueroa's recent extradition from Spain.[2] In other words, the Court addressed any conflict issues arising from Mr. Feldman's and Ms. Descalzo's concurrent representation of Defendants Diaz Guillen and Velasquez Figueroa given the change in procedural posture of the case. In attendance at the *Garcia*/Rule 44(c) hearing were: (1) Assistant United States Attorney Kurt K. Lunkenheimer, Esq.; (2) Department of Justice Trial Attorney Michael Culhane Harper, Esq.; (3) Defendant Velasquez Figueroa; (4) Defendant Diaz Guillen; (5) Andrew S. Feldman, Esq.; and (6) Marissel Descalzo, Esq.

## I.     **Relevant Facts**

### a.  **Procedural History Leading Up to the Third *Garcia* Hearing**

The Court assumes the parties' familiarity with this case and adopts and incorporates the extensive procedural history contained within the Court's Order Following Second *Garcia* Hearing [DE 159]. With respect to the second *Garcia*/Rule 44(c) hearing, the Court notes that the colloquy of Defendant Diaz Guillen, the acceptance of Mr. Feldman's permanent appearance on behalf of Diaz Guillen, and the acceptance of Ms. Descalzo's continued representation of Diaz Guillen, were largely in the context of Defendant Diaz Guillen's anticipated October 17, 2022 trial date [DE 79], as Defendant Velasquez Figueroa was in Spain awaiting extradition at that time.

---

[2] Although, as noted by Ms. Descalzo at the hearing, she had not entered a Notice of Appearance on behalf of Defendant Velasquez Figueroa and would not be doing so, as she will be representing Defendant Diaz Guillen at trial. Mr. Feldman, in turn, stated that will be representing Defendant Velasquez Figueroa at trial.

However, on October 5, 2022, the Government filed a Motion for Continuance of Trial Date [DE 173], noting Defendant Velasquez Figueroa's "forthcoming extradition" and requesting a brief continuance of the trial date so that Defendants Velasquez Figueroa and Diaz Guillen could be tried together. [DE 173 at 1]. In support thereof, the Government stated that Defendant Velasquez Figueroa was "required to be transported to the United States within the next several weeks, prior to November 3, 2022." *Id.* (emphasis omitted). In fact, the Government asserted Defendant Velasquez Figueroa could be extradited "as soon as next week." *Id.* Thus, on October 7, 2022, the Court granted the Motion for Continuance, rescheduling Defendant Diaz Guillen's trial for November 7, 2022. [DE 177].

Subsequently, less than one week later, Defendant Velasquez Figueroa was extradited to the United States and appeared before the Court on October 14, 2022 for his initial appearance. [DE 194]. Because of potential *Garcia*/Rule 44(c) issues, the Court did not arraign Defendant Velasquez Figueroa at that time. Instead, the parties stated they would be requesting a third *Garcia*/Rule 44(c) hearing before the Undersigned and made arrangements with the Undersigned's Courtroom Deputy for an October 19, 2022 *Garcia* Hearing. [DEs 191, 193]. Indeed, the Government formally filed a Motion for a *Garcia* Hearing [DE 201], which the Court granted thereafter. [DE 205].

In the Court's Order Granting the Government's Motion for a *Garcia* Hearing [DE 205], although the parties agreed that Defendant Diaz Guillen's presence could be waived, the Court required both Defendant Velasquez Figueroa *and* Defendant Diaz Guillen to be present at the October 19, 2022 *Garcia*/Rule 44(c) hearing. [DE 205 at 2]. This was because the change in procedural posture of the case—now potentially a joint trial between Defendants Velasquez

3

Figueroa and Diaz Guillen, who are husband and wife—necessitated further inquiry of Defendant Diaz Guillen, and a personal in-Court inquiry in the first instance of Defendant Velasquez Figueroa, who was in Spain awaiting extradition at the time of the second *Garcia*/Rule 44(c) hearing. *Id.*

      b. **October 19, 2022 *Garcia* Hearing**

On October 19, 2022, the Court conducted the *Garcia*/Rule 44(c) hearing, as scheduled. At the outset, despite Mr. Feldman and Ms. Descalzo jointly representing Defendants Velasquez Figueroa and Diaz Guillen throughout the duration of this case (and continuing to do so up until trial), Mr. Feldman stated his intent to solely represent Defendant Velasquez Figueroa during trial, and Ms. Descalzo similarly stated her intent to solely represent Defendant Diaz Guillen during trial. With that being said, the Court then proceeded to colloquy Defendant Velasquez Figueroa.

      i)       **Defendant Velasquez Figueroa**

Defendant Velasquez Figueroa was sworn and testified thereafter. While Defendant Velasquez Figueroa is not fluent in the English language, he testified that he understood everything that had occurred (and was occurring) through the aid of a Federal Court-certified Spanish interpreter. The Court questioned Defendant Velasquez Figueroa as to his competency and understanding of the proceedings. Additionally, both Mr. Feldman and Ms. Descalzo stated that there was no doubt as to Defendant Velasquez Figueroa's competence. After inquiry, the Court found Velasquez Figueroa to be competent, intelligent, clear-headed, and not under the influence of any narcotics, drugs, pills, or alcoholic beverages at the time of his testimony.

Defendant Velasquez Figueroa testified that he has a college degree in science and military art. As to the matter at hand, Defendant Velasquez Figueroa testified he understood that Mr.

4

Feldman and Ms. Descalzo sought to represent and/or had represented both him and his wife (Defendant Diaz Guillen), and that he understood the actual or potential conflicts of interest that might arise as a result. In this regard, Defendant Velasquez Figueroa confirmed that he did not wish to consult with independent counsel. Defendant Velasquez Figueroa also testified that he understood Mr. Feldman would be representing him during trial and that Ms. Descalzo would likewise be representing Defendant Diaz Guillen during trial, and acknowledged that both counsel had been representing both Defendants.

With respect to any actual or potential conflicts of interest concerning Mr. Feldman's or Ms. Descalzo's dual or joint representation of him and Defendant Diaz Guillen, Defendant Velasquez Figueroa testified he understood: (1) what he is charged with and the penalties he is facing, having had sufficient time to discuss such with counsel; (2) that Mr. Feldman and Ms. Descalzo have been jointly representing both him and Defendant Diaz Guillen; (3) that conflicts of interest pertaining to dual representation may surface; (4) that his case could be inhibited because of attorney-client privilege or other privileges such as the marital privilege; (5) that the Government could offer a lesser sentence for cooperation in this case; (6) that dual representation could get in the way of jury selection, lead to direct or cross-examination issues, or prevent post-trial sentencing offers; and (7) that dual representation would effectively make it impossible to blame shift or to argue that Defendant Diaz Guillen is more culpable. The Court carefully questioned Defendant Velasquez Figueroa on these and other issues affecting actual or potential conflicts.[3]

---

[3] After the Court questioned Defendant Velasquez Figueroa on this matter, the Court turned to Defendant Diaz Guillen, who testified that she understood these actual or potential sources of conflict in the context of a joint trial.

Ultimately, knowing these issues affecting actual or potential conflicts, Defendant Velasquez Figueroa testified that he wanted Mr. Feldman representing him going forward and at trial in front of a jury. Defendant Velasquez Figueroa also testified that he knowingly and voluntarily waived any actual or potential conflict that might arise. And, he reaffirmed his Declaration filed at DE 142-1, in which he attested that he waived any conflict stemming from a joint or dual representation.

### ii) Mr. Feldman and Ms. Descalzo

The Court next heard from Mr. Feldman and Ms. Descalzo as to how they could assure the Court that an actual or potential conflict of interest would not arise. Mr. Feldman stated that he had reviewed discovery and been involved in the case since May, and that there was no actual or potential conflict of interest. While he stated Defendants Velasquez Figueroa and Diaz Guillen had a "functional difference" in their defenses based on their respective positions, he stated that the Defendants had substantially similar overall defenses. Moreover, according to Mr. Feldman, his opening argument, closing argument, the way he tries the case, and his trial preparation would not be inhibited because of the dual representation.

Mr. Feldman also asserted that: (1) neither client would be prejudiced; (2) there would be no risk of violating his duty of confidentiality and loyalty; (3) he did not see any discovery issues which would create any conflict; (4) an issue concerning marital privilege would not arise; and (5) there was no conflict of interest over how his fees were being paid. Even further, Mr. Feldman stated that Defendants Velasquez Figueroa and Diaz Guillen were aligned in interest not only with respect to the case, but in life as well as husband and wife. Thus, Mr. Feldman was "extremely" confident that no actual or potential conflict of interest would arise. In fact, Mr. Feldman stated he

had discussed at length the potential of Defendant Velasquez Figueroa being extradited and that he would not represent a client if there was even the inkling of a conflict.

Ms. Descalzo adopted the prior arguments made by Mr. Feldman. She stated she spoke to Defendants Velasquez Figueroa and Diaz Guillen again when she learned Defendant Velasquez Figueroa was being extradited, noting that she did not perceive a conflict and had never perceived one. Further, Ms. Descalzo stated that Defendants Velasquez Figueroa and Diaz Guillen were still married and that there was no issue with marital privilege.

### iii) The Government's Concerns

The Court next questioned the Government regarding any concerns it had with the Court's *Garcia*/Rule 44(c) inquiry. The Government noted that, while the Court had conducted an extensive colloquy of Defendant Diaz Guillen during the second *Garcia* hearing, that colloquy was largely in the context of a separate trial. Thus, the Government sought assurance from Defendant Diaz Guillen that, despite Defendant Velasquez Figueroa's recent extradition and the change in procedural posture to a joint trial, she still desired to waive any actual or potential conflict that may arise in the context of a joint representation.

In response, Defendant Diaz Guillen testified that she understood the change in procedural posture of the case following Defendant Velasquez Figueroa's extradition and that she still knowingly and voluntarily waived any potential or actual conflict arising from a joint representation. In this regard, she testified she had enough time to discuss the issue with counsel, and that she understood she had the opportunity to discuss the matter with independent counsel but did not wish to do so. Additionally, Defendant Diaz Guillen: (1) reaffirmed her Declaration filed at DE 142-1 (in which she stated that she was waiving any conflicts of interest that may arise);

(2) attested that she was still married to Defendant Velasquez Figueroa and that there was no marital discord; and (3) testified that, knowing everything, she waived any actual or potential conflict of interest that could arise. She also stated she was agreeable to Mr. Feldman separately representing Defendant Velasquez Figueroa at trial.

Next, after Ms. Descalzo informed the Court of a potential Motion to Sever being filed on behalf of Defendant Velasquez Figueroa (due to Defendant Velasquez Figueroa's recent arrival), the Government expressed concern that there was an underlying conflict inherent in any Motion to Sever. In response, Mr. Feldman explained that there were three possible scenarios: (1) that the Motion to Sever is denied and the parties proceed to a joint trial on November 7, 2022; (2) that the Motion to Sever is granted and Defendant Velasquez Figueroa proceeds to trial *after* Defendant Diaz Guillen; or (3) that the Motion to Sever is denied but the trial is nonetheless continued.

With respect to the first scenario, Mr. Feldman stated that such a scenario was the purpose of the October 19, 2022 *Garcia*/Rule 44(c) hearing. As to the second scenario, Mr. Feldman contended that the Court's second *Garcia* hearing adequately addressed the matter. And as to the third scenario, Mr. Feldman stated the Defendants would still be proceeding to a joint trial and that the Court's inquiry concerning joint representation would be sufficient. Further, Mr. Feldman stated that the Motion to Sever would potentially be filed only on the basis that Defendant Velasquez Figueroa had just arrived from Spain and needed more time to prepare for trial.

Ms. Descalzo, in turn, echoed what Mr. Feldman said, reinforcing that Defendant Velasquez Figueroa would only potentially seek to sever his trial to have more time to prepare—not because there was any actual or potential conflict. Defendants Velasquez Figueroa and Diaz

Guillen then testified that they understood the severance issue and the different possibilities, attesting that they still waived any actual or potential conflicts of interest issues that may arise.

Finally, the Government noted that, if a Motion to Sever is filed and granted and Defendant Diaz Guillen proceeds to trial first, there could be the potential for a fourth *Garcia* hearing, as something could arise during Defendant Diaz Guillen's trial affecting defense counsel's representation of Defendant Velasquez Figueroa at his later trial. With this concern in mind, Defendants Velasquez Figueroa and Diaz Guillen testified that they understood an issue could arise during Defendant Diaz Guillen's trial but that they waived any actual or potential conflict of interest in connection therewith.

### iv)     The Court's Ruling

At the conclusion of the October 19, 2022 *Garcia*/Rule 44(c) hearing, the Court orally found that Mr. Feldman and Ms. Descalzo's representation of Defendants Velasquez Figueroa and Diaz Guillen in this case is permissible. The Court explained the reasons for its rulings on the record at the hearing, finding that, on balance, Defendants Velasquez Figueroa and Diaz Guillen's Sixth Amendment right to counsel prevailed. Accordingly, the Court accepted the permanent appearance of counsel from attorney Andrew S. Feldman, Esq., on behalf of Defendant Velasquez Figueroa.[4] This written Order is now being entered to memorialize and further explain the Court's findings and rulings.

---

[4] As stated earlier, while Ms. Descalzo would continue to jointly represent Defendant Velasquez Figueroa, she stated her intent *not* to enter a Notice of Appearance on behalf of Defendant Velasquez Figueroa because she intends to solely represent Defendant Diaz Guillen during trial.

## II.     Relevant Case Law

"The sixth amendment right to counsel is perhaps the most precious of constitutional rights a criminal defendant possesses. It ensures that an accused has an advocate, skilled in the art of trial advocacy, to test the evidence offered and challenge the allegations levied by the government." *United States v. Urbana*, 770 F. Supp. 1552, 1555 (S.D. Fla. 1991). However, "a court must balance the right to counsel of defendant's choice with the defendant's right to a conflict-free attorney." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994); *United States v. Kaley*, No. 07-80021-CR, 2014 WL 3734679, at *5 (S.D. Fla. June 19, 2014) (citing *Wheat v. United States*, 486 U.S. 153, 162–63 (1988)). In the pre-trial stage, a court may disqualify an attorney if it determines that either an actual or a potential conflict of interest exists. *See Ross*, 33 F.3d at 1523; *United States v. Culp*, 934 F. Supp. 394, 399 (M.D. Fla. 1996).

In deciding whether joint representation of two co-defendants in a federal criminal case should be allowed, or should lead to disqualification of defense counsel, the Court must look to Federal Rule of Criminal Procedure 44(c) and consider the applicable facts and law. Federal Rule of Criminal Procedure 44(c)(2) states in relevant part:

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed. R. Crim. P. 44(c). Moreover, *United States v. Garcia* specifically requires that courts do the following:

> scrupulously evaluate the insistence of the defendants on the right to privately retained counsel of their choice even though the district court may discern a conflict of interest in such representation. In addition, that court must also carefully evaluate the persistent efforts of the defendants to waive any imperfections in such

10

representation which may be apparent to the court. The trial court should actively participate in the waiver decision.

*United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259 (1984).

Indeed, despite the existence of an actual or potential conflict, "[a] defendant's right to a conflict-free attorney can be waived 'as long as the waiver is knowingly and intelligently made.'" *United States v. Gutierrez*, No. 10-80083, 2010 WL 3769448, at *4 (S.D. Fla. Aug. 3, 2010) (quoting *Ross*, 33 F.3d at 1524). To ascertain whether a defendant's waiver of conflict is knowingly and intelligently made, a district court must conduct a hearing and address:

> [e]ach defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. *Cf. United States v. Foster,* 469 F.2d 1 (1st Cir.1972). It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." *National Equipment Rental v. Szukhent,* 375 U.S. 311, 332, 84 S.Ct. 411, 423, 11 L.Ed.2d 354, 367–68 (1964).

*United States v. Robaina*, No. 13-20346, 2013 WL 3243368, at *6 (S.D. Fla. June 25, 2013) (quoting *Garcia,* 517 F.2d at 278). "However, a court may decline a proffer of waiver where there is an actual conflict or a showing of a 'serious potential for conflict.'" *Gutierrez*, 2010 WL 3769448, at *5 (citing *Wheat*, 486 U.S. at 162–64).

**III.   Analysis**

As a preliminary matter, the Court notes that, while it considered Mr. Feldman's and Ms. Descalzo's joint representation of Defendants Velasquez Figueroa and Diaz Guillen at the second

11

*Garcia*/Rule 44(c) hearing, the Court did so in the context of Defendant Diaz Guillen proceeding to trial while Defendant Velasquez Figueroa awaited extradition. Moreover, at that time, because of Defendant Velasquez Figueroa's then-fugitive status, the Court could not conduct a full in-person in-Court colloquy of Defendant Velasquez Figueroa. Thus, a third *Garcia*/Rule 44(c) hearing was necessary to ensure Defendants Velasquez Figueroa and Diaz Guillen knowingly and voluntarily waived all actual or potential conflicts of interest that may arise due to Mr. Feldman's and Ms. Descalzo's joint representation.

Next, the Court notes that this alleged conflict implicates Rule 4-1.7 of the Rules Regulating the Florida Bar, Southern District of Florida Local Rule 11.1(c), Federal Rule of Criminal Procedure 44(c), the Eleventh Circuit's opinion in *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the Supreme Court's opinion in *Wheat v. United States*, 486 U.S. 153 (1988), and other applicable case law, as it involves the joint representation by Mr. Feldman and Ms. Descalzo of Defendants Velasquez Figueroa and Diaz Guillen. After taking into account all of the case law, facts, and the argument by the parties, and after carefully considering the testimony of Defendants Velasquez Figueroa and Diaz Guillen, the Court finds that any actual and potential conflicts of interest due to Mr. Feldman's and Ms. Descalzo's joint representation of Defendants Velasquez Figueroa and Diaz Guillen are waivable and have, in fact, been knowingly, intelligently, and voluntarily waived by both Defendants.

Here, Defendants Velasquez Figueroa and Diaz Guillen testified that they were fully aware of the conflicts that could arise in this case due to Mr. Feldman's and Ms. Descalzo's joint representation. Further, both Defendants signed Declarations indicating as much, and reaffirmed such Declarations at the October 19, 2022 *Garcia*/Rule 44(c) hearing. Under these facts, the Court

is convinced that Mr. Feldman and Ms. Descalzo will vigorously and ethically represent Defendants Velasquez Figueroa and Diaz Guillen and not be limited in any way because of their joint representation of both Defendants, especially in light of Mr. Feldman intending to solely represent Defendant Velasquez Figueroa at trial, and Ms. Descalzo intending to solely represent Defendant Diaz Guillen at trial.

It is important to remember that Defendants Velasquez Figueroa and Diaz Guillen are married, with no marital discord. And, "[c]ases involving married couples who are criminal defendants in the same prosecution are in significant ways different than multi-defendant cases involving strangers or defendants whose only common thread is the alleged criminal activity. . . . Their interests, both in life and in [the] case, are largely aligned." *Robaina*, 2013 WL 3243368, at *10. Accordingly, the Court finds that Defendants Velasquez Figueroa and Diaz Guillen are intelligent and competent, fully understand all potential or actual conflicts which may arise in this case, and nonetheless want Mr. Feldman and Ms. Descalzo as their defense counsel in this case, even though both attorneys jointly represent Defendants and intend to separately represent Defendants during trial.

The facts of this specific case are such that no appearance of impropriety will arise by allowing Defendants Velasquez Figueroa and Diaz Guillen their counsel of choice. Additionally, the Court notes that it conducted a full inquiry of Defendants Velasquez Figueroa and Diaz Guillen (with additional inquiry of Defendant Diaz Guillen at the second *Garcia*/Rule 44(c) hearing) to ensure that they were competent, that they understood the actual and potential conflicts of interest that could arise in this case, and that they had sufficiently conferred with independent counsel (or had the opportunity to consult with independent counsel) before making their decision. The Court

also inquired about Defendants Velasquez Figueroa and Diaz Guillen's age, education, mental capacity, and other characteristics relevant to their ability to waive the conflicts of counsel (again, with this inquiry as to Defendant Diaz Guillen largely taking place at the second *Garcia*/Rule 44(c) hearing). Ultimately, after conducting the full colloquy described above, hearing Defendants Velasquez Figueroa and Diaz Guillen's testimony, and observing their demeanor and determining their credibility, the Court found Defendants Velasquez Figueroa and Diaz Guillen to be competent and credible. The Court also determined that Defendants Velasquez Figueroa and Diaz Guillen were fully aware of the actual or potential conflicts which may arise in this case and that they knowingly, intelligently, and voluntarily waived any such actual or potential conflict relating to Mr. Feldman's and Ms. Descalzo's joint representation.

In summation, Defendants Velasquez Figueroa and Diaz Guillen's right to counsel of choice is extremely important. *See United States v. Garcia*, 447 F.3d 1327, 1337 (11th Cir. 2006) (explaining that there is a presumption in favor of a defendant's right to counsel of his or her choice). The Court finds that, on balance, Defendants Velasquez Figueroa and Diaz Guillen's right to counsel of choice in this case must prevail. The Court further finds that the representation of Defendants Velasquez Figueroa and Diaz Guillen by Mr. Feldman and Ms. Descalzo (with Mr. Feldman representing Defendant Velasquez Figueroa at trial and Ms. Descalzo representing Defendant Diaz Guillen at trial) will not negatively affect the fair, efficient, and orderly administration of justice, nor will Defendants Velasquez Figueroa and Diaz Guillen's representation by their counsel of choice negatively affect the public's interest in maintaining the integrity of the judicial process and the fairness of the trial proceedings. Finally, the Court finds that Mr. Feldman's and Ms. Descalzo's representation of Defendants Velasquez Figueroa and Diaz Guillen will cause absolutely no harm to the courts, the public, or to their clients. Thus, Defendant

Velasquez Figueroa and Diaz Guillen's right to counsel of choice—Mr. Feldman and Ms. Descalzo—carries the day.

### IV. Conclusion

Based on the very specific facts of this case and based on the knowing, voluntary, and intelligent express written and oral waivers from Defendants Velasquez Figueroa and Diaz Guillen, the Court finds that Defendants Velasquez Figueroa and Diaz Guillen have knowingly, intelligently, and voluntarily waived any actual or potential conflicts of interest and that such conflicts are, indeed, waivable under the relevant case law. The Court accepts the waivers of any potential or actual conflict of interest in this case. Therefore, Mr. Feldman and Ms. Descalzo may continue to represent Defendants Velasquez Figueroa and Diaz Guillen. And, the Court accepts Mr. Feldman's Notice of Permanent Appearance on behalf of Defendant Velasquez Figueroa [DE 215].

**DONE AND ORDERED** in Chambers at West Palm Beach in the Southern District of Florida, this 24th day of October, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge